# THE UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------
IN RE DAILY FANTASY SPORTS    )
LITIGATION                    )
                              )
This Document Relates To      )    Civil Action No. 1:16-md-02677-GAO
All Matters                   )
                              )
                              )
                              )
---------------------------------------------------------------

## DRAFTKINGS, INC.'S RESPONSE REGARDING LEAD COUNSEL APPLICATIONS

Defendant DraftKings, Inc. ("DraftKings") does not take any position with respect to which plaintiff's counsel will fill the roles identified in the Court's March 11, 2016 Procedural Order No. 2. Some of the applications, however, improperly attempt to pre-argue the merits of the cases rather than simply request a leadership position, and DraftKings submits this response to correct certain inaccuracies in the applications.

**1.     Statements By Counsel For Plaintiff Nelson Steiner (Dkt. 130)**

Counsel for Mr. Steiner asserts that he should have a leadership role because the *Steiner* action is "unique," is being brought "on behalf of the State of Florida," and represents "Florida's claim." (Dkt. 130 at 1.) DraftKings takes no position on whether Mr. Steiner's counsel should be awarded a leadership role, but does note that the purported differences from other cases are not accurate and do not warrant separate treatment. Before the case was transferred, Judge Merryday of the Middle District of Florida, in connection with Plaintiff Steiner's motion to remand the case to state court, expressly rejected Steiner's argument that his case was being brought on behalf of the State of Florida. In his unsuccessful motion to remand the case, Mr. Steiner argued that there was no diversity jurisdiction because the complaint was being advanced

on behalf of the State of Florida. Judge Merryday rejected that argument, however, because defendants DraftKings and FanDuel, Inc. demonstrated that the statutes upon which Mr. Steiner purports to rely do not authorize such an action. Further, the statute on which he seeks to bring claims was repealed over 30 years ago. *See Crawley v. Clear Channel Outdoor, Inc.*, 8:10-CV-01238-T-EAK, 2011 WL 748162 (M.D. Fla. 2011) (explaining that because Fla. Stats. § 849.27 was repealed in 1974, "the authorized cause of action vanished," and "there fails to exist a statute within Chapter 849 that creates a cause of action and authorizes a particular suit.")

In the order denying the remand motion, Judge Merryday explicitly adopted defendants' arguments. (Ex. A, 1/21/16 Order at 1–2 ("Steiner argues that the State of Florida—not Steiner—is 'the real party in interest in this case' and that 'no diversity exists because a state is not a citizen.' However, after a thorough review of the motion to remand, the notice of removal, and the complaint and for the reasons stated by DraftKings and FanDuel, the motion to remand is **DENIED**." (citations omitted, emphasis in original)).) Mr. Steiner is attempting to use his leadership application to reargue these issues even though they already have been rejected by the Middle District of Florida and, therefore, are the law of the case. *See Arizona v. California*, 460 U.S. 605, 618 (1983) ("law of the case" doctrine holds "that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (law of the case doctrine "applies as much to the decisions of a coordinate court in the same case as to a court's own decisions").

  2.   **Statements By Wicksman's, Belton's, And Facenda's Counsel (Dkt. 131)**

Counsel for Wicksman, Belton, and Facenda inaccurately suggest that the terms of DraftKings' initial bonus promotion were not disclosed to customers. (Dkt. 131 at 4.) The

2

disclaimers appear right on the page where the customer makes his deposit (red arrow added):

[Screenshot of DraftKings deposit page showing deposit amount options ($25, $100, $250, $600, Other), Payment Type (Credit Card or PayPal), Credit Card Number field, Expiration Date, CVV Code, "Remember card for future use" checkbox, and a Continue button. Below is a disclaimer with a red arrow pointing to it:]

"Deposit bonus funds are not available immediately, but are released into your cash account in increments of $1 for every 100 Frequent Player Points (FPPs) that you earn by playing paid contests. You can always view your current deposit bonus information on the My Account page. For more information about deposit bonuses, please click here.

Moreover, several plaintiffs have alleged facts demonstrating that they were aware of these disclosures and how the bonus program worked. (*See*, *e.g.*, Gardner First Am. Compl. ¶¶ 25–48.) DraftKings takes no position regarding Wicksman's, Belton's and Facenda's counsel's request for leadership positions, but does not believe the inaccurate assertions regarding the nature of the initial deposit promotion should be given any weight in the matter.

### 3.   Statements By The "Weld Slate" (Dkt. 132)

The Weld Slate asserts that it has already "achieved actual results for the class, ensuring customer money was segregated and available for withdrawal by customers when Defendants' businesses were under threat of potential insolvency." (Dkt. 132 at 3.) This argument is in error. DraftKings was not threatened with insolvency and did not change practices for segregating

3

player funds. DraftKings simply provided evidence of its existing practices of segregating player funds from operating funds, which mooted the *Johnson* plaintiffs' motion for a preliminary injunction. (*See* Dkt. 132 at 7 & Ex. A.)

The Weld Slate also contends that its complaint filed in *Khirani* precipitated action by the New York Attorney General. While DraftKings disagrees with the New York Attorney General's action, there is nothing in the action that references the *Khirani* matter. Likewise, while the Weld Slate claims that the filing of the *Guttman* case encouraged a credit card payment processor (Vantiv, Inc.) to notify DraftKings and FanDuel that it would no longer handle their payments (*Id.* at 4), Vantiv already was bound by a temporary restraining order from the Suffolk County Superior Court preventing it from terminating processing services for DraftKings before *Guttman* was filed.

Again, DraftKings takes no position with respect to the Weld State's request for a leadership role, but does not believe that the foregoing statements support the application.

## CONCLUSION

While there are additional inaccuracies contained in the lead counsel applications that have been provided to the Court, DraftKings highlights the most salient ones through the foregoing corrections, in the event they may assist the Court as it exercises its sound discretion to appoint leadership positions in accordance with Procedural Order No. 2.

    Respectfully submitted,

    DraftKings, Inc.

    By their attorneys,
    GIBSON, DUNN & CRUTCHER LLP

    By: /s/ James P. Fogelman
    James P. Fogelman (*admitted pro hac vice*)

jfogelman@gibsondunn.com
333 S. Grand Ave., 54th Floor
Los Angeles, CA 90071
(213) 229-7000

MCCARTER & ENGLISH, LLP

By: /s/ Nicholas W. Allen
Nicholas W. Allen (BBO # 663409)
nallen@mccarter.com
265 Franklin Street
Boston, MA 02110
(617) 449-6500

March 22, 2016

## CERTIFICATE OF SERVICE

    I, Timothy W. Loose, hereby certify that on this 22nd day of March, the within document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), pursuant to Local Rule 5.4(C).

                           /s/ Timothy W. Loose