# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE DAILY FANTASY SPORTS LITIGATION | 1:16-md-02677-GAO |

## DEFENDANT DRAFTKINGS, INC.'S MOTION TO COMPEL ARBITRATION

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................3

ARGUMENT ............................................................................................................................6

   I.   DraftKings' Terms of Use Constitutes an Enforceable Clickwrap Agreement .................6

  II.  Incorporation of the AAA Rules' Delegation Provision in the Terms of Use Requires
      Arbitration of Any Objections to the Arbitration Provision ..............................................8

      A.  The Terms of Use's Incorporation of the AAA Rules' Delegation Provision Is
          Enforceable under Federal Law ...............................................................................8

      B.  Plaintiffs Do Not Challenge the Validity of the Delegation Provision, Which Is
          Severable, Valid, and Enforceable under Federal Law. ...........................................9

 III.  Even If the Terms of Use Did Not Incorporate the AAA Rules, Plaintiffs' Challenges to
      the Terms of Use Would Still Have to Be Arbitrated .......................................................11

      A.  Plaintiffs Do Not Specifically Challenge the Arbitration Provision, Which Is
          Severable, Valid, and Enforceable under Federal Law. .........................................11

      B.  Plaintiffs' Claims Are All Within the Scope of the Arbitration Provision .................12

 IV.  The Family Member Plaintiffs Must Arbitrate Their Claims ...........................................14

  V.  The Crossover Plaintiffs Must Arbitrate Their Claims. ..................................................16

CONCLUSION ........................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Apollo Computer, Inc. v. Berg,*
   886 F.2d 469 (1st Cir. 1989) ................................................................................8

*Awuah v. Coverall N.A., Inc.,*
   554 F.3d 7 (1st Cir. 2009) ...........................................................................2, 7, 8, 9

*Bagg v. HighBeam Research, Inc.,*
   862 F. Supp. 2d 41 (D. Mass. 2012)...................................................................6

*Brennan v. Opus Bank,*
   796 F.3d 1125 (9th Cir. 2015) ...........................................................2, 5, 9, 11

*Buckeye Check Cashing, Inc. v. Cardegna,*
   546 U.S. 440 (2005) ...............................................................................passim

*Cullinane v. Uber Techs., Inc.,*
   No. 14-14750, 2016 WL 3751652 (D. Mass. July 11, 2016)............................2, 6, 8

*Dean Witter Reynolds, Inc. v. Byrd,*
   470 U.S. 213 (1985) ...............................................................................1

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.,*
   9 F.3d 1060 (2d Cir. 1993)..................................................................16

*Farnsworth v. Towboat Nantucket Sound, Inc.,*
   790 F.3d 90 (1st Cir. 2015) .................................................................10, 12

*Fteja v. Facebook, Inc.,*
   841 F. Supp. 2d 829 (S.D.N.Y. 2012) ...............................................7

*Gov't Emps. Ins. Co. v. Grand Med. Supply, Inc.,*
   No. 11-cv-05339, 2012 WL 25775773 (E.D.N.Y. July 4, 2012) .................3, 17, 18

*Harold H. Huggins Realty, Inc. v. FNC, Inc.,*
   575 F. Supp. 2d 696 (D. Md. 2008).....................................................8

*Hoffman v. Finger Lakes Instrumentation, LLC,*
   789 N.Y.S. 2d 410 (N.Y. Sup. Ct. 2005).............................................3, 17, 18

*Hubbert v. Dell Corp.,*
   359 Ill. App. 3d 976 (Ill. App. Ct. 2005)..............................................8

*JLM Indus., Inc. v. Stolt-Nielson, SA,*
   387 F.3d 163 (2d Cir. 2004)...............................................................18

*Karnazes v. Expedia, Inc.*,
    No. B250142, 2014 WL 6696279 (Cal. Ct. App. Nov. 26, 2014)............................................15

*Kellman v. Whyte*,
    129 A.D.3d 418 (N.Y. App. Div. 2015) ......................................................................................17

*Kubala v. Supreme Prod. Servs, Inc.*,
    830 F.3d 199 (5th Cir. 2016) ........................................................................................5, 9, 11

*Laughton v. CGI Tech. & Sols., Inc.*,
    602 F. Supp. 2d 262 (D. Mass. 2009) .........................................................................................13

*MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*,
    268 F.3d 58 (2d Cir. 2001) ..........................................................................................................16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .......................................................................................................................13

*Net2Phone, Inc. v. Superior Court*,
    109 Cal. App. 4th 583 (Cal. Ct. App. 2003).........................................................................2, 15

*Preston v. Ferrer*,
    552 U.S. 346 (2006) ............................................................................................................10, 12

*Prima Paint Corp v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) ............................................................................................................10, 12

*Ragone v. Atl. Video*,
    No. 07-cv-06084, 2008 WL 4058480 (S.D.N.Y. Aug. 29, 2008) ............................................17

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2012) ...............................................................................................................passim

*Shearson/Am. Express, Inc. v. McMahon*,
    482 U.S. 220 (1987) ......................................................................................................................1

*Small Justice LLC v. Xcentric Ventures LLC*,
    No. 13-cv-11701, 2015 WL 1431071 (D. Mass. Mar. 27, 2015).................................................6

*St. Fleur v. WPI Cable Sys./Mutron*,
    879 N.E.2d 27 (Mass. 2008)........................................................................................................7

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011)........................................................................................7

*Terminix Int'l Co. v. Palmer Ranch LP*,
    432 F.3d 1327 (11th Cir. 2005) ..............................................................................................5, 9

*THI of N.M. v. Spradlin*,
   893 F. Supp. 2d 1172 (D.N.M. 2012),
   *aff'd*, 532 F. App'x 813 (10th Cir. 2013) ...........................................................................2, 15

*Walker v. Collyer*,
   9 N.E.3d 854 (Mass. App. Ct. 2013) ......................................................................................16

**Rules**

AAA Consumer Arbitration Rules (Sept. 1, 2014),
   *available at* https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTAGE2021425&
   revision=latestreleased ..............................................................................................................5

Defendant DraftKings, Inc. ("DraftKings") respectfully moves this Court, pursuant to the Federal Arbitration Act ("FAA") (9 U.S.C. § 1 *et seq.*), for an order compelling individual arbitration of all claims against DraftKings by all plaintiffs named in the First Amended Master Class Action Complaint and Jury Demand, dated September 2, 2016 (ECF No. 269) ("Master Complaint"), with the sole exception of plaintiff Nelson C. Steiner[1] (collectively, "Plaintiffs").

## PRELIMINARY STATEMENT

The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2005). The Supreme Court has directed that courts must "rigorously enforce agreements to arbitrate." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). The FAA "leaves no place for the exercise of discretion by the district court" and instead "mandates that district courts *shall* direct the parties to proceed to arbitration" on all issues that are covered by an enforceable arbitration agreement. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

DraftKings' Terms of Use contains an arbitration provision. The arbitration provision requires all disputes between DraftKings and its customers to be resolved in binding, non-class arbitration under the rules of the American Arbitration Association ("AAA"). The AAA Rules, which are incorporated by reference into the Terms of Use, contain a delegation provision that requires arbitration of any objections to the "existence, scope or validity" of the arbitration provision. Under established federal law, incorporating the AAA Rules by reference into the Terms of Use requires the arbitrator, not the Court, to decide all threshold issues of arbitrability.

---

[1] *See* Defendant DraftKings, Inc.'s Statement Regarding Plaintiffs for Whom It Will Not Move to Compel Arbitration, dated Nov. 2, 2016 (ECF No. 311).

*Awuah v. Coverall N.A., Inc.*, 554 F.3d 7, 10 (1st Cir. 2009); *Brennan v. Opus Bank*, 796 F.3d 1125, 1133-34 (9th Cir. 2015).  Thus, if the Terms of Use are binding on a Plaintiff, that Plaintiff has agreed to arbitrate the merits of his claims *and* any objections to arbitration.[2]  Here, DraftKings' Terms of Use—or, in the case of FanDuel users suing DraftKings, FanDuel's Terms of Use, which also incorporate the AAA Rules—are binding on all Plaintiffs.

*First*, Plaintiffs who registered on DraftKings (the "DraftKings Player Plaintiffs") were required to agree to DraftKings' arbitration provision before registering to participate in DraftKings' contests by checking a box stating "I agree to the Terms of Use and Privacy Policy." An individual is not allowed to register, enter a contest, or deposit money without affirming that he or she agrees to the Terms of Use.  This type of clickwrap agreement is valid and enforceable under Massachusetts law.  *Cullinane v. Uber Techs., Inc.*, No. 14-14750, 2016 WL 3751652, at *5 (D. Mass. July 11, 2016).

*Second*, the remaining Plaintiffs must also arbitrate their claims against DraftKings even though they did not personally register with DraftKings.  The Plaintiffs who assert claims against DraftKings on behalf of their family members who registered with DraftKings (the "Family Member Plaintiffs") are bound by their family members' agreement to the arbitration and delegation provisions in DraftKings' Terms of Use.  *See THI of N.M. v. Spradlin*, 893 F. Supp. 2d 1172, 1190-91 (D.N.M. 2012), *aff'd*, 532 F. App'x 813 (10th Cir. 2013); *Net2Phone, Inc. v. Superior Court*, 109 Cal. App. 4th 583, 589 (Cal. Ct. App. 2003).  Similarly, Plaintiffs who assert civil conspiracy claims against DraftKings arising from their use of FanDuel's website (the "Crossover Plaintiffs") are bound by FanDuel's Terms of Use—which, like DraftKings'

---

[2] Even if DraftKings' Terms of Use did not incorporate the AAA Rules by reference, the DraftKings Player Plaintiffs would *still* be bound to arbitrate their substantive claims *and* the challenges they bring to the Terms of Use because their challenges are to the Terms of Use as a whole, not to the arbitration provision.  *See infra* Part III; *Buckeye*, 546 U.S. at 445-47.

Terms of Use, incorporates by reference the AAA Rules—to arbitrate their claims and any objections to arbitration. *See Hoffman v. Finger Lakes Instrumentation, LLC*, 789 N.Y.S. 2d 410, 415 (N.Y. Sup. Ct. 2005); *Gov't Emps. Ins. Co. v. Grand Med. Supply, Inc.*, No. 11-cv-05339, 2012 WL 2577577, at *3 (E.D.N.Y. July 4, 2012).[3]

All Plaintiffs fall into at least one of the three categories defined above: DraftKings Player Plaintiffs, Family Member Plaintiffs, and Crossover Plaintiffs.  Thus, all Plaintiffs are required to arbitrate their claims and any objections to the "existence, scope or validity" of the arbitration provisions in DraftKings' (or FanDuel's) Terms of Use.

## BACKGROUND

DraftKings provides an online platform for individuals to enter Daily Fantasy Sports ("DFS") contests with friends, family, or other fantasy sports enthusiasts.  Prior to entering a DFS contest, an individual is *required* to register an account.  Declaration of Tim Dent in Support of DraftKings, Inc.'s Motion to Compel Arbitration, dated Nov. 16, 2016 ("Dent Decl.") ¶ 10.  During the registration process, each customer must affirmatively agree to the Terms of Use, which govern the website and the parties' relationship, by clicking a box stating, "I agree to the Terms of Use and Privacy Policy."  *Id.* ¶ 13.  When a customer clicks the box, a checkmark (✓) appears in the box, indicating the customer's acceptance of, and agreement to, DraftKings' Terms of Use and Privacy Policy.  *Id.* ¶¶ 14-15.  Immediately adjacent to the "I agree" check box is a direct hyperlink to DraftKings' Terms of Use.  *Id.*  After providing all of the requested personal information and clicking the "I agree" box agreeing to DraftKings' Terms of Use, the customer's final step in the registration process is clicking the "sign up" button.  *Id.* ¶ 15.

---

[3] The Crossover Plaintiffs who also registered with DraftKings are bound by *both* FanDuel's Terms of Use *and* DraftKings' Terms of Use to arbitrate their civil conspiracy claims against DraftKings.

If an individual does not click the box to indicate that he or she agrees to DraftKings' Terms of Use, he or she will not be allowed to register an account, enter a contest, or deposit money. *Id.* In fact, if an individual clicks "sign up" without checking the agreement box, DraftKings rejects registration and provides a message stating that the individual cannot register without agreeing to DraftKings' Terms of Use and Privacy Policy prior to registration. *Id.* Even after registration, the Terms of Use are continually accessible via a direct hyperlink entitled "Terms of Use" that is displayed at the bottom of every page of DraftKings' website. *Id.* ¶ 8.

From July 17, 2014[4] to the present, DraftKings' Terms of Use have included an arbitration provision, under which DraftKings and its customers agree that any and all disputes, claims or controversies arising out of or relating to the Terms of Use or the customer's use of DraftKings' website must be resolved in a binding, non-class arbitration under the AAA Rules. Dent Decl. ¶¶ 5-7.[5] The arbitration provision states, in part:

> Any and all disputes, claims or controversies arising out of or relating to this Agreement, the breach thereof, or any use of the Website (including all commercial transactions conducted through the Website ("Claims"), except for claims filed in a small claims court that proceed on an individual (non-class, non-representative) basis, shall be settled by binding arbitration before a single arbitrator appointed by the American Arbitration Association ("AAA") in accordance with its then governing rules and procedures, including the Supplementary Procedures for Consumer-Related Disputes, where applicable.
>
> * * *
>
> This arbitration undertaking is made pursuant to and in connection with a transaction involving interstate commerce, and shall be governed by and construed and interpreted in accordance with the Federal Arbitration Act at 9 U.S.C. Section 1, et seq. This arbitration provision shall survive termination of this Agreement. Subject to the limitations set forth below, the arbitrator shall have authority to

---

[4] DraftKings incorporated the arbitration provision into the Terms of Use on July 15, 2014, but the revised Terms of Use were first posted on DraftKings' website starting on July 17, 2014. Dent Decl. ¶ 5.

[5] The Terms of Use also permit an individual (*i.e.*, non-class) action in small claims court. Dent Decl. ¶ 6.

award legal and equitable relief available in the courts of the Commonwealth of Massachusetts, provided that:

The arbitrator shall not have authority to award punitive damages; and

Any and all claims shall be arbitrated on an individual basis only, and shall not be consolidated or joined with or in any arbitration or other proceeding involving a Claim of any other party.  You and DraftKings agree that the arbitrator shall have no authority to arbitrate any Claim as a class action or in any other form other than on an individual basis.

*Id.* ¶ 6.

Rule 14 of the AAA's Consumer Arbitration Rules,[6] which are explicitly incorporated by reference into DraftKings' Terms of Use, provides that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."[7]  Thus, the incorporation of Rule 14—referred to as a "delegation provision"—requires DraftKings' customers to arbitrate *not only* their legal "disputes, claims or controversies," but *also* threshold issues of arbitrability including "any objections with respect to the existence, scope or validity" of the arbitration agreement.[8]  Because all Plaintiffs are bound by the delegation provision,[9] the Court should refer their cases to arbitration for decision on their claims and any objections to arbitration.

---

[6] The Supplementary Procedures for Consumer-Related Disputes are now called the Consumer Arbitration Rules.

[7] AAA Consumer Arbitration Rules (Sept. 1, 2014), *available at* https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTAGE2021425&revision=latestreleased.

[8] As discussed *infra* Part II.A, the Supreme Court has held that such a delegation provision is treated as "an additional, antecedent agreement" and that "the FAA operates on this additional arbitration agreement just as it does on any other."  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2012).  Therefore, by assenting to the Terms of Use, DraftKings users also agree that their challenges to the validity of the arbitration agreement must be decided by the arbitrator—an agreement the Supreme Court and other courts have upheld.  *Id.* at 72; *see also Brennan*, 796 F.3d at 1133-34; *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332-33 (11th Cir. 2005); *Kubala v. Supreme Prod. Servs, Inc.*, 830 F.3d 199, 201-02 (5th Cir. 2016).

[9] FanDuel's Terms of Use contain a similar arbitration agreement and also incorporate by reference the AAA Consumer Arbitration Rules.  Thus, FanDuel users who assented to the arbitration provision are bound to arbitrate any disputes relating to the Terms of Use to which they agreed with FanDuel, as well as any "objections with respect to the existence, scope or validity" of their arbitration agreement with FanDuel.  As explained *infra* Part V, FanDuel's arbitration and delegation provisions require the Court to send to arbitration the claims made by FanDuel players against DraftKings, even if those players did not register with DraftKings.

## **ARGUMENT**

### I.    **DRAFTKINGS' TERMS OF USE CONSTITUTES AN ENFORCEABLE CLICKWRAP AGREEMENT.**

As described above, before an individual can register for an account, the individual must first agree to DraftKings' Terms of Use, including the arbitration provision therein, by clicking the "I agree to the Terms of Use and Privacy Policy" button.  Dent Decl. ¶ 13.  Immediately adjacent to the "I agree" button is a direct hyperlink to DraftKings' Terms of Use.  *Id.* ¶ 14.  If the customer does not click the "I agree" box, he will not be allowed to register an account, enter a contest, or deposit money.  *Id.* ¶ 15.  In fact, if an individual clicks "sign up" without checking the "I agree" box, DraftKings would reject registration and provide a message stating that he cannot register an account without agreeing to its Terms of Use and Privacy Policy.  *Id.*

This type of clickwrap agreement is enforceable under Massachusetts law.[10]  The recent *Cullinane v. Uber Technologies, Inc.* case is directly on point.  In *Uber*, this District held that Uber's "browse-through wrap" agreement, in which the terms of use were accessible to new users via a direct hyperlink, was a valid contract and bound Uber's users to Uber's terms of use, including the arbitration provision included in the terms.  *Cullinane*, 2016 WL 3751652, at *5.  As the *Uber* court explained,  "Courts view the clicking of an 'I agree' or 'I accept' box (or similar mechanism) as a requirement that the user manifest assent to the terms and conditions expressly before she uses the website or services covered by the agreement."  *Id.*; *accord Small Justice LLC v. Xcentric Ventures LLC*, No. 13-cv-11701, 2015 WL 1431071, at *4 (D. Mass. Mar. 27, 2015); *Bagg v. HighBeam Research, Inc.*, 862 F. Supp. 2d 41, 45 (D. Mass. 2012); *Swift*

---

[10] For purposes of this motion, the parties agree that DraftKings' Terms of Use are to be interpreted in accordance with Massachusetts law.  Stipulation and Proposed Scheduling Order, dated Sept. 28, 2016 (ECF No. 283) ¶ 5.  However, Supreme Court precedent is clear that federal law applies to the delegation and arbitration provisions.  As explained at Parts II.B, III.A, *infra*, the delegation and arbitration provisions are severable, valid, and enforceable under federal law.  *Rent-A-Center*, 561 U.S. at 68-72; *Buckeye*, 546 U.S. at 445-47.

*v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) ("clickwrap

presentations providing a user with access to the terms of service and requiring a user to

affirmatively accept the terms, even if the terms are not presented on the same page as the

acceptable button, are sufficient").

Plaintiffs' arguments that they should not be bound to the Terms of Use because they are

purportedly difficult to read and understand (Compl. ¶¶ 453-55) are insufficient to nullify the

DraftKings Player Plaintiffs' agreement to the Terms of Use.  As explained by the First Circuit

in rejecting a nearly identical argument, "[i]n Massachusetts courts, it has long been the rule that

typically, one who signs a written agreement is bound by its terms whether he reads and

understands them or not."  *Awuah*, 703 F.3d at 44 (quoting *St. Fleur v. WPI Cable Sys./Mutron*,

879 N.E.2d 27, 35 (Mass. 2008)); *see Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839

(S.D.N.Y. 2012) (enforcing arbitration provision in clickwrap agreement and explaining that

"[w]hether or not the consumer bothers to look [at the terms] is irrelevant").[11]

---

[11] While they are irrelevant to this motion, Plaintiffs' allegations regarding their ability to read and understand the Terms of Use are belied by a simple examination of the Terms of Use.  DraftKings' Terms of Use have always been presented in a standard size, easy-to-read font.  The arbitration provision appears in a standalone section of the Terms of Use that is delineated by its own subheading, written in capital letters and in a larger, bold font.

Plaintiffs' suggestion that their express agreement to the Terms of Use was somehow invalid is also belied by the Master Complaint's affirmative allegations that the DraftKings Player Plaintiffs "entered into contracts and 'Terms of Use' with" DraftKings. Compl. ¶ 667.  In fact, the DraftKings Player Plaintiffs bring claims for breach of the Terms of Use, which expressly rely on the existence of an agreement between the parties for recovery.  Compl. ¶¶ 666-89; *see also id.* ¶¶ 623, 637, 639, 693-95, 709, 711 (alleging the existence of a contract).  While the Master Complaint goes on to allege that the Terms of Use as a whole are unenforceable, as explained in Parts II.B, III.A, *infra*, if a plaintiff has assented to the delegation and arbitration provisions (as the Master Complaint admits by alleging the existence of a contract), those provisions are severable from the rest of the Terms of Use under federal law.  Thus, they must be enforced, and any challenges to the Terms of Use must be decided by the arbitrator.

In addition, DraftKings' records show that several DraftKings Player Plaintiffs continued to use DraftKings' website after they commenced this litigation against DraftKings. Dent Decl. ¶ 19.  These plaintiffs admit they had notice of the delegation and arbitration provisions because the provisions are referenced in their Master Complaint.  The fact that a substantial number of the DraftKings Player Plaintiffs have *continued* to play on DraftKings *despite* challenging the validity of the Terms of Use undermines the unconscionability allegations made in the Master Complaint, although these allegations are irrelevant for purposes of this motion.

Moreover, allegations that certain of the DraftKings Player Plaintiffs agreed to the Terms of Use prior to the inclusion of an arbitration provision (on July 17, 2014) fail.  Compl. ¶ 448. Although the Master Complaint alleges that seven DraftKings Player Plaintiffs registered and deposited money on DraftKings' site prior to July 17, 2014, Compl. ¶¶ 42 (Triantafylidis), 51 (Hodge), 54 (Turner), 67 (McDaid), 76 (Martinelli), 80 (Hinojosa), 81 (Grundy), DraftKings' records show that all of these Plaintiffs registered *after* July 17, 2014.  Dent Decl. ¶¶ 17-18. These Plaintiffs, like the others, affirmatively assented to and agreed to be bound by the Terms of Use when they checked the "I agree" box on the DraftKings registration page.[12]

## II.   INCORPORATION OF THE AAA RULES' DELEGATION PROVISION IN THE TERMS OF USE REQUIRES ARBITRATION OF ANY OBJECTIONS TO THE ARBITRATION PROVISION.

### A.   The Terms of Use's Incorporation of the AAA Rules' Delegation Provision Is Enforceable under Federal Law.

Both DraftKings' and FanDuel's Terms of Use expressly incorporate the AAA Rules and thereby incorporate the AAA Rules' delegation provision.  The First Circuit "has said expressly that the validity of an arbitration clause is itself a matter for the arbitrator where the agreement so provides."  *Awuah*, 554 F.3d at 11 (citing *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473-74 (1st Cir. 1989)).  *Awuah* is directly on point.  There, like here, the agreement contained an

---

[12] A DraftKings user who registered before the arbitration and delegation provisions were incorporated into the Terms of Use on July 17, 2014 but continued to use the website thereafter would have accepted the revised Terms of Use by continuing to use DraftKings' website after the Terms of Use were revised.  DraftKings' Terms of Use have always put users on notice that DraftKings "reserves the right to amend these Terms of Use at any time and without notice" and made clear that it is the customer's "responsibility to review these Terms of Use for any changes" and that if a customer "continue[s] to use the Services after we change the Terms of Use, you accept all changes."  Dent Decl. ¶ 4.  The updated Terms of Use were accessible via direct hyperlink at the bottom of every page on DraftKings' website.  *Id.* ¶ 8.  DraftKings' inclusion of the notice provision in the Terms of Use and its link to the updated Terms of Use on every page of its website satisfy the "basic inquiry as to enforceability," which "boils down to basic contract theory of notice and informed assent with respect to the terms in question."  *Cullinane*, 2016 WL 3751652, at *5; *see also Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 575 F. Supp. 2d 696, 706-08 (D. Md. 2008) (holding that posting updated terms of service prominently on the site for 30 days was sufficient notice to bind customers to updated terms); *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 983-84 (Ill. App. Ct. 2005).

express arbitration provision and also incorporated the AAA Rules, including a delegation provision, by reference.  The First Circuit held that incorporation of the AAA Rules by reference—even though the delegation provision was not expressly written into the contract—required the court to immediately refer the case to arbitration for the arbitrator to address the plaintiff's objection that the arbitration provision was unenforceable.  *Id.*  As the court explained, the AAA Rules contain a delegation provision that requires the arbitrator to decide the threshold issue of the validity of the arbitration provision.  *Id.*

Under *Awuah*, DraftKings' incorporation by reference of the AAA's Consumer Arbitration Rules into its Terms of Use is "about as 'clear and unmistakable' as language can get," *id.*, leaving no doubt that the delegation provision requires arbitration of any objections to the "existence, scope or validity" of the arbitration provision.  *Accord Brennan*, 796 F.3d at 1133-34 (reference to AAA Rules); *Terminix*, 432 F.3d at 1332-33 (reference to AAA Rules).[13]

**B.    Plaintiffs Do Not Challenge the Validity of the Delegation Provision, Which Is Severable, Valid, and Enforceable under Federal Law.**

The Master Complaint makes several generalized objections to the validity of the Terms of Use.  *See* Compl. ¶¶ 457-80.  But the Supreme Court precedent is clear that these generalized objections to the contract as a whole must be decided in arbitration.

---

[13] One year after the First Circuit decided *Awuah*, the Supreme Court confirmed that the First Circuit's decision in *Awuah* was correct.  In *Rent-A-Center*, 561 U.S. 63, the Supreme Court explained that "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70.  The Court therefore held that a delegation provision in an employment contract required the plaintiff's challenge to the arbitration agreement on grounds of unconscionability to be decided by the arbitrator.  *Id.* at 72.  Decisions in other circuits before and after *Rent-A-Center* confirm that the reference to the AAA Rules in a contract is a valid delegation and requires arbitration of all "objections to the existence, scope or validity" of the arbitration provision. *See Brennan*, 796 F.3d at 1133-34 (AAA Rules); *Terminix*, 432 F.3d at 1332-33 (AAA Rules); *see also Kubala*, 830 F.3d at 201-02.

Under federal law, an arbitration agreement is severable from the remainder of the contract in which it is contained.[14]  Thus, unless the party seeking to avoid arbitration presents a challenge that is specific to the arbitration provision itself, the Court must send the entire case to the arbitrator to decide any general challenges to the contract's validity.  *See Buckeye*, 546 U.S. at 444 (challenge to a contract between a customer and a check cashing agency on the ground that the contract was usurious and illegal must be decided by the arbitrator); *Prima Paint Corp v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) (challenge to a contract on the ground of fraudulent inducement must be decided by the arbitrator).[15]

In *Rent-A-Center*, the Supreme Court held that a delegation provision "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional agreement just as it does on any other."  561 U.S. at 70.  Therefore, under *Buckeye* and *Prima Paint*, a delegation provision under which the parties agree to arbitrate issues of arbitrability is also a separate agreement, severable as a matter of federal law, from both the arbitration agreement *and* the rest of the contract in which it is contained or referenced.  *Id.* at 71-72.  Consequently, in *Rent-A-Center*, the Court held that the plaintiff's challenge to an arbitration agreement on the ground that it was unconscionable must be decided

---

[14] DraftKings' Terms of Use expressly notify customers that each provision is severable: "If any provision of these Terms of Use is deemed invalid by a court of competent jurisdiction, the invalidity of such provision shall not affect the validity of the remaining provisions of these Terms of Use, which shall remain in full force and effect."  Dent. Decl. Ex. A, B, C.

[15] *Accord Preston v. Ferrer*, 552 U.S. 346, 352-54 (2006) (challenge to contract on grounds that contract was illegal because defendant was an unlicensed talent agent was general challenge for arbitrator to decide); *Farnsworth v. Towboat Nantucket Sound, Inc.*, 790 F.3d 90, 96 (1st Cir. 2015) (challenge to contract on grounds of duress was a general challenge for arbitrator to decide).  In *Buckeye*, the Court recognized that the *Prima Paint* rule "permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void."  546 U.S. at 448.  The Court justified its holding on the basis that it is "equally true" that the opposite rule would "permit[] a court to deny effect to an arbitration provision in a contract that the court later finds to be enforceable.  *Prima Paint* resolved this conundrum—and resolved it in favor of the separate enforceability of arbitration provisions."  *Id.*

by the arbitrator because the agreement contained a severable delegation provision.  *Id.* at 72-74;
*see Kubala*, 830 F.3d at 201-02; *Brennan*, 796 F.3d at1133-34.

The Master Complaint asserts three types of challenges to the Terms of Use: (1) that the
Terms of Use "do not constitute a valid, mutual agreement because the promises made by
DraftKings are illusory," Compl. ¶¶ 457-68; (2) that the forum selection clause in the Terms of
Use conflicts with the arbitration provision, *id.* ¶¶ 469-74; and (3) that the Terms of Use are
procedurally and substantively unconscionable, *id.* ¶¶ 475-80.  But these challenges are general
challenges to the validity of the Terms of Use as a whole.  Plaintiffs do not contend that the
delegation provision itself is invalid.  Under *Rent-A-Center*, the existence of a valid delegation
provision ends this Court's inquiry:  Plaintiffs have agreed that their challenges to the validity of
the Terms of Use—and their substantive claims—must be decided by an arbitrator.[16]

**III.  EVEN IF THE TERMS OF USE DID NOT INCORPORATE THE AAA RULES,
PLAINTIFFS' CHALLENGES TO THE TERMS OF USE WOULD STILL HAVE
TO BE ARBITRATED.**

**A.  Plaintiffs Do Not Specifically Challenge the Arbitration Provision, Which Is
Severable, Valid, and Enforceable under Federal Law.**

Even if DraftKings' delegation provision was found to be unenforceable—and there are

no grounds for such a finding—Plaintiffs' cases should still be sent to arbitration because

---

[16] Although DraftKings disputes the merits of Plaintiffs' objections to the Terms of Use as a whole, because those
issues must be referred to an arbitrator DraftKings does not address them here.

To the extent Plaintiffs argue that their challenge regarding the forum selection clause is a challenge to the
arbitration provision itself, that challenge would be meritless.  Plaintiffs suggest that their claims are not subject to
arbitration because the Terms of Use state that "[a]ny claim or dispute between you and DraftKings that arises in
whole or in part from the Terms of Use, the Website or any Contest shall be decided exclusively by a court of
competent jurisdiction located in Suffolk County, Massachusetts."  *See* Compl. ¶¶ 449-50.  But the arbitration
provision makes clear that this forum selection applies to claims that are *not* subject to arbitration—*i.e.*, individual
claims brought in small claims court.  *See* n.5, Dent Decl. ¶ 6 ("For any Claims that are *not subject to arbitration*:
(a) the exclusive jurisdiction and venue for proceedings involving Claims shall be the courts of competent
jurisdiction sitting within Suffolk County, Massachusetts." (emphasis added)).  There is therefore no conflict
between the Terms of Use's arbitration requirement and its forum selection clause.

Plaintiffs fail to specifically challenge the validity of the arbitration provision.  *See Farnsworth*, 790 F.3d at 96; *see also Buckeye*, 546 U.S. at 444; *Prima Paint*, 388 U.S. at 404.

As explained above, even when a delegation provision is *not* included in the contract, "[t]he Supreme Court has differentiated between two types of challenges to the validity of arbitration agreements: (1) challenges to the validity of an entire contract which contains an arbitration clause, and (2) challenges to the validity of the specific agreement to resolve the dispute through arbitration."  *Farnsworth*, 790 F.3d at 96.  "In a line of cases beginning with [*Prima Paint*], the Court has held that challenges of the first type are for the arbitrator to decide, whereas challenges of the second type are for the courts to decide."  *Id.*  That is because "an arbitration provision is severable from the remainder of the contract."  *Id.* at 96.[17]  Just as Plaintiffs do not specifically challenge the delegation provision, (*see supra* Part II.B), Plaintiffs do not specifically challenge the validity of the arbitration provision, which is severable, valid, and enforceable under *Prima Paint* and its progeny.  Therefore, even if the Terms of Use did not include the delegation provision, *Prima Paint* would require the Court to refer Plaintiffs' cases to arbitration to decide their general challenges to the Terms of Use based on alleged lack of mutuality of obligation, Compl. ¶¶ 457-68, conflict between the arbitration provision and the forum selection clause, *id.* ¶¶ 469-74, and unconscionability, *id.* ¶¶ 475-80.

**B.      Plaintiffs' Claims Are All Within the Scope of the Arbitration Provision.**

Pursuant to the delegation provision, any objections to the scope of the arbitration provision in the Terms of Use must be decided by the arbitrator, not by the Court.  If the Court

---

[17] *See Buckeye*, 546 U.S. at 448 (challenge to a contract between a customer and a check cashing agency on the ground that it was usurious and illegal must be decided by the arbitrator); *Prima Paint*, 388 U.S. at 404 (challenge to a contract on the ground of fraudulent inducement of the entire contract must be decided by the arbitrator); *see also Preston*, 552 U.S. at 352-54 (challenge to contract on grounds that it was illegal because the defendant was an unlicensed talent agent was general challenge for arbitrator to decide); *Farnsworth*, 790 F.3d at 96 (challenge to contract on grounds of duress was general challenge for arbitrator to decide).

determines that all of the DraftKings Player Plaintiffs are bound by the delegation provision, that determination ends the inquiry and requires that this motion be granted.  However, even if the scope of DraftKings' arbitration provision was properly before this Court, Plaintiffs would still have no basis to argue that their claims are not subject to arbitration.  DraftKings' arbitration provision requires arbitration of "[a]ny and all disputes, claims or controversies arising out of or relating to this Agreement, the breach thereof, or any use of the Website (including all commercial transactions conducted through the Website)."  Dent Decl. ¶ 6.

The Court must "resolve any doubts concerning the scope of arbitrable issues in favor of arbitration."  *Laughton v. CGI Tech. & Sols., Inc.*, 602 F. Supp. 2d 262, 264 (D. Mass. 2009) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).  Here, however, the Master Complaint leaves no doubt that Plaintiffs' claims "aris[e] out of or relat[e] to [the Terms of Use], the breach thereof, or any use of the Website," Dent Decl. ¶ 6:

A. <u>Deceptive Practices</u>.  Plaintiffs assert deceptive acts or practices claims under various state consumer protection statutes "in connection with their participation of [*sic*] Defendant DraftKings' website," Compl. ¶ 568.

B. <u>Negligence and Misrepresentation</u>.  Plaintiffs assert negligent misrepresentation claims based on their "contractual relationship" with DraftKings, *id.* ¶ 623, negligence claims based on the "duties" DraftKings allegedly "owed" to "users and paying customers of their sites," *id.* ¶ 630, and fraud and misrepresentation claims based on DraftKings' alleged inducement of Plaintiffs "to enter into a contract" with DraftKings, *id.* ¶ 637.

C. <u>Unjust Enrichment</u>.  Plaintiffs assert unjust enrichment claims based on allegations that they were in a "special relationship with" and "were in privity with" DraftKings, *id.* ¶ 652.

D. <u>Civil Conspiracy</u>.  Plaintiffs assert civil conspiracy claims against DraftKings and FanDuel alleging that the two companies "affirmatively agree[d] to allow competitors' employees to play on their own sites" to "beat players" like Plaintiffs, "conceal[ed]" this from Plaintiffs, and "allow[ed] their employees to profit, continue to attract new players to their websites, and otherwise profit," *id.* ¶¶ 662-64.

E. <u>Breach of Contract</u>.  Plaintiffs assert breach of contract claims against DraftKings based on the allegation that "Plaintiffs entered into contracts and 'Terms of Use' with [DraftKings]," *id.* ¶ 667.

F.  Violations of State Gambling Statutes.  Plaintiffs assert claims for violations of state gambling statutes, which allege that DraftKings "collect[ed] [] on illegal contracts" for which "Plaintiffs and members of the proposed class paid consideration for gambling on [DraftKings'] website," *id.* ¶ 711.

G.  RICO.  Plaintiffs assert RICO claims for which their alleged injury is premised on the fact that Plaintiffs "personally participated in sports gambling by placing bets on sporting events through DraftKings," *id.* ¶ 810.

*Rent-A-Center* and *Prima Paint* also require Plaintiffs to arbitrate their declaratory judgment claims against DraftKings.  The Master Complaint seeks a declaratory judgment that DraftKings' Terms of Use are void and unenforceable because DraftKings' Terms of Use "purport to eliminate all liability of Defendant for any violations of the law whatsoever."  *Id.* ¶¶ 674-89.  The New Jersey Subclass alleges violations of New Jersey's Truth-in-Consumer Contract, Warranty and Notice Act on the same basis.  *Id.* ¶¶ 838-45.  But, as explained in Parts II.B, III.A, *supra*, these general challenges are not specific to the delegation provision or arbitration provision.  Thus, an arbitrator—not the Court—must address the merits of these claims.

## IV.    THE FAMILY MEMBER PLAINTIFFS MUST ARBITRATE THEIR CLAIMS.

Four family members of DraftKings Player Plaintiffs bring claims under state statutes that, the Master Complaint alleges, permit a party to a "gambling contract" to recover his or her losses.  If the party to the contract does not seek to recover those losses within a certain period of time, Plaintiffs allege that these statutes permit another person, such as a family member, to step into the gambler's shoes to recover the gambler's losses.  Compl. ¶¶ 712-18 (Georgia law), 719-30 (Kentucky law), 731-37 (Tennessee law), 738-47 (New Mexico law).[18]

---

[18] DraftKings denies all allegations that its DFS contests constitute illegal gambling or that DraftKings' contracts with its consumers are gambling contracts.  However, because the legality of DraftKings' contests and the validity of its Terms of Use as a whole are not at issue on this motion, DraftKings does not address those allegations here.

By definition, the Family Member Plaintiffs' causes of action arise directly from the alleged 'gambling contracts' between their family member and DraftKings.  Indeed, the Family Member Plaintiffs bring exactly the same claims as their DraftKings Player Plaintiff relatives, who also seek to recover the same losses.[19]  The Family Member Plaintiffs are bound to arbitrate their claims against DraftKings for two independent reasons.

*First*, the Family Member Plaintiffs are bound to arbitrate their claims against DraftKings because their claims are "derivative of" the rights of their family members, who are signatories to the arbitration provision in DraftKings' Terms of Use.  *See THI*, 893 F. Supp. 2d at 1190-91.  If their family members had not agreed to DraftKings' Terms of Use and deposited money on DraftKings, the Family Member Plaintiffs would have no cause of action against DraftKings to recover their family members' "gambling" losses.  Rather, any causes of action by the Family Member Plaintiffs arise from their right to step into the "gambler's" shoes.  The court's reasoning in *THI* is instructive.  There, the court held that the decedent's next of kin was required to arbitrate the decedent's wrongful death claim because the decedent signed an arbitration agreement and the next of kin's claim was "derivative of a decedent's rights."  *Id.* at 1190; *accord Net2Phone*, 109 Cal. App. 4th at 589 (non-signatory who "purports to assert the rights of those who *are* parties to the contract" and would "succeed in altering the terms of the contract" if it prevailed is bound by forum selection clause because it "stands in the shoes of those whom it purports to represent"); *Karnazes v. Expedia, Inc.*, No. B250142, 2014 WL 6696279, at *4 (Cal. Ct. App. Nov. 26, 2014) (non-signatory bound by forum selection clause because, "but for [the

---

[19] *E.g.*, Compl. ¶ 747 (Count XXIII, Brought by Family Member Boast Under New Mexico Law) ("Plaintiff Family Member Boast and New Mexico Family Class members bring this suit to recover said losses incurred by DFS Player Boast and other New Mexico DFS players as a result their payment of money or delivery of money or other things of value to Defendants for DFS Player Boast's and other New Mexico DFS players use and as a result of such money or thing of value being converted to the use of Defendants.").

signatory's] winning Sweepstakes entry and agreement to be bound by the official rules, including the forum selection clause, [the non-signatory], as [the signatory's] selected travel companion, would not be a party to this action").

*Second*, the Family Member Plaintiffs are bound by equitable estoppel to arbitrate their claims against DraftKings. *See Walker v. Collyer*, 9 N.E.3d 854, 861-62 (Mass. App. Ct. 2013) (citing *MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001); *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993)). When a non-signatory to an arbitration agreement (here, each Family Member Plaintiff) "knowingly exploit[s] an agreement with an arbitration clause" (here, the alleged "gambling contract" between the family member and DraftKings), the signatory to the arbitration agreement (here, DraftKings) may enforce the arbitration agreement against the non-signatory. *Walker*, 9 N.E.2d at 861-62 (quoting *MAG Portfolio*, 268 F.3d at 61). The Family Member Plaintiffs' claims depend on and arise from the existence of the alleged "gambling contracts" between their family members and DraftKings—contracts which contain an arbitration provision. Because the Family Member Plaintiffs are knowingly exploiting the agreement to bring their claims, the Family Member Plaintiffs are bound by the arbitration provision in the agreement.

The Family Member Plaintiffs are therefore bound by the delegation and arbitration provisions in the Terms of Use to which their family members agreed. Indeed, it would be incongruous to hold that the DraftKings Player Plaintiffs are bound to arbitrate their claims but that their family members, who are bringing the exact same claims under the exact same legal theories against DraftKings, are somehow not bound to arbitrate their claims.

## V.   THE CROSSOVER PLAINTIFFS MUST ARBITRATE THEIR CLAIMS.

The Master Complaint asserts civil conspiracy claims on behalf of FanDuel customers against DraftKings alleging that DraftKings' employees joined and unfairly manipulated the

outcome of FanDuel contests.  *See* Compl. ¶¶ 660-65.  But FanDuel Customers are bound by

FanDuel's Terms of Use, which, like DraftKings' Terms of Use, incorporate by reference the

AAA Rules.  Thus, the Crossover Plaintiffs are bound to arbitrate any objections they have to the

"existence, scope or validity" of their arbitration agreement with FanDuel.[20]

Even if FanDuel's Terms of Use had not incorporated the AAA Rules, the Crossover

Plaintiffs would be equitably estopped from avoiding arbitration of their civil conspiracy claims.

Under New York law, which governs the Crossover Plaintiffs' arbitration agreements with

FanDuel (*see* ECF No. 283 ¶ 6), a non-signatory to an arbitration agreement (here, DraftKings)

may compel a signatory (the Crossover Plaintiff) to arbitrate his claims when *either* (1) the

signatory's claims arise out of the written agreement containing the arbitration provision; *or* (2)

the signatory's claims raise allegations of interdependent and concerted misconduct by both the

non-signatory and one or more of the signatories to the contract.  *See Hoffman*, 789 N.Y.S. 2d at

415; *see also Kellman v. Whyte*, 129 A.D.3d 418, 418 (N.Y. App. Div. 2015); *Ragone v. Atl.

Video*, No. 07-cv-06084, 2008 WL 4058480, at *4 n.5 (S.D.N.Y. Aug. 29, 2008); *Gov't Emps.

Ins. Co.*, 2012 WL 2577577 at *3.

The Crossover Plaintiffs' civil conspiracy claims against DraftKings and FanDuel satisfy

both conditions.  *First*, the Crossover Plaintiffs' claims arise out of and relate directly to their

written agreement with FanDuel (the Terms of Use).  That is because the gravamen of the

Crossover Plaintiffs' claims is that they lost money through their use of FanDuel's website

(which they used pursuant to FanDuel's Terms of Use) due to allegedly concerted conduct

between FanDuel and DraftKings.  *See Ragone*, 2008 WL 4058480, at *9 (granting motion to

---

[20] FanDuel's Terms of Use permits customers to opt out of the arbitration provision.  Thus, certain FanDuel users
may not be bound by the arbitration provision if such users opted out.

compel arbitration because plaintiff's claims against non-signatory "arise out of her employment and termination" with the signatory); *Gov't Emps. Ins. Co.*, 2012 WL 2577577, at *4 (granting motion to compel arbitration because the agreement containing the arbitration provision was "the sole reason that plaintiffs have any relationship with" the non-signatory (citing *JLM Indus., Inc. v. Stolt-Nielsen, SA*, 387 F.3d 163, 178 (2d Cir. 2004) (finding agreement and claims intertwined where plaintiff's entry into the agreement gave rise to the claimed injury))).

*Second*, the Crossover Plaintiffs' claims raise allegations of interdependent and concerted misconduct by a non-signatory to FanDuel's arbitration agreement (DraftKings) and a signatory (FanDuel). This is itself sufficient to permit DraftKings to enforce the arbitration agreement that the Crossover Plaintiffs signed. *See Hoffman*, 789 N.Y.S.2d at 185 (granting motion to compel arbitration because the signatory's claims were based on "substantially interdependent and concerted misconduct by both" the defendant and a signatory to the agreement).

Furthermore, Crossover Plaintiffs who were also registered users of DraftKings (including three who allegedly opted out of FanDuel's arbitration provisions) are independently bound to arbitrate their civil conspiracy claims by DraftKings' Terms of Use. To the extent that a Crossover Plaintiff objects to arbitration of his civil conspiracy claims, such Crossover Plaintiff is bound to arbitrate the objection under the delegation provision. *See* Parts II-III, *supra*.

## CONCLUSION

Because Plaintiffs are bound by the delegation and arbitration agreements in DraftKings' Terms of Use, this Court should order all of Plaintiffs' claims, as well as Plaintiffs' objections to the existence, scope, or validity of the arbitration agreement, to arbitration.

Dated: November 16, 2016

Respectfully submitted,

/s/ Damien Marshall
_____

Damien Marshall (*pro hac vice*)
Leigh M. Nathanson (*pro hac vice*)
Benjamin Margulis (*pro hac vice*)
Thomas H. Sosnowski
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
(212) 446-2300
dmarshall@bsfllp.com
lnathanson@bsfllp.com
bmargulis@bsfllp.com
tsosnowski@bsfllp.com

Ingrid S. Martin
COLLORA LLP
100 High Street
Boston, MA 02110
(617) 371-1022
imartin@collorallp.com

*Attorneys for Defendant DraftKings, Inc.*

**REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7.1(d), Defendant DraftKings, Inc. respectfully requests oral argument on this motion.  Oral argument would enable DraftKings to address any questions that the Court may have regarding arguments raised by the parties in their briefing.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

I, Damien Marshall, hereby certify pursuant to Local Rule 7.1(a)(2) that counsel for Defendant DraftKings, Inc. conferred with counsel for Plaintiffs on numerous occasions in person and via telephone in an attempt to resolve the issue presented by this motion, but were unable to do so.  Further, in an attempt to narrow the scope of this motion, and in line with this Court's request, counsel for Defendant DraftKings, Inc. filed a Statement Regarding Plaintiffs for Whom DraftKings Will Not Move to Compel Arbitration (ECF No. 311).

/s/ Damien Marshall

**CERTIFICATE OF SERVICE**

I, Damien Marshall, hereby certify that on this 16th day of November, 2016, this document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), pursuant to Local Rule 5.4(C).

/s/ Damien Marshall