UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: DAILY FANTASY SPORTS LITIGATION | MDL No. 16-02677-GAO |

**PAYMENT PROCESSOR DEFENDANTS' REPLY TO OPPOSITION TO MOTION TO COMPEL ARBITRATION**

**I.      INTRODUCTION**

Plaintiffs, in an effort to avoid arbitration of their claims against Paysafecard.com USA, Inc., and Vantiv, Inc. ("Payment Processors"), attempt to convince this Court: (1) to depart from the standard adopted in this Circuit for evaluating whether to estop a non-signatory from refusing arbitration; (2) that Plaintiffs' claims are somehow unrelated to the legal instruments that require arbitration and that expressly provide for the services that Payment Processors allegedly performed; (3) that, despite express references in the terms of use, Plaintiffs could not reasonably have known of Payment Processors' alleged involvement in the daily fantasy sports services; and (4) that – contrary to well established precedent – this Court can consider the doctrine of "unclean hands" in denying Payment Processors' Motion to Compel Arbitration.

None of those contentions is well founded. In fact, under the two-factor "intertwined" test adopted by this Circuit, Payment Processors are entitled to estop Plaintiffs from denying them arbitration. The claims asserted by Plaintiffs arise from and are based on conduct that took place entirely within the ambit of the terms of use between Plaintiffs and FanDuel, LLC ("FanDuel"), and DraftKings, Inc. ("DraftKings") (collectively "DFS Defendants'"), respectively. Those terms of use include provisions addressing deposits and

1

withdrawals,[1] disclose the existence of the payment processing services ("**commercial transactions**")[2] alleged to have been provided by Payment Processors on DFS Defendants' behalf and, in one case, expressly refer to "[**t**]**he company processing credit card payments for DraftKings**."[3]

For all of those reasons, and explained in more detail below, this Court should grant Payment Processors' Motion to Compel Arbitration.

## II.   PLAINTIFFS MISSTATE THE STANDARD NECESSARY TO INVOKE EQUITABLE ESTOPPEL

The First Circuit recognizes that a signatory to an arbitration agreement is estopped from avoiding arbitration with a non-signatory "when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Sourcing Unlimited, Inc. v. Asimco Int'l, Inc.*, 526 F.3d 38, 47 (1st Cir. 2008) (quoting *InterGen N.V. v. Grina*, 344 F.3d 134, 145 (1st Cir. 2003)).  Plaintiffs attempt to rewrite the standards that a movant must meet to compel arbitration by arguing that Payment Processors cannot invoke estoppel here because they are not expressly identified in the DFS Defendants' terms of use and that it would not have been "reasonable" for Plaintiffs to have been aware of Payment Processors' alleged involvement in providing aspects of the DFS Defendants' services.

Plaintiffs' contentions are both legally and (based on their own allegations and the face of the respective terms of use) factually incorrect.

---

[1] DraftKings' Terms of Use, "Payment and Withdrawal of Prizes" at p. 34, Exhibit B to Decl. of Behnam Dayanim, ECF No. 320-2; FanDuel's Terms of Use, § 4.5 at pp. 9-10, Exhibit A to Decl. of Behnam Dayanim, ECF No. 320-2.
[2] DraftKings Terms of Use, "Arbitration, Consent to Jurisdiction in Massachusetts, Attorney's Fees," at pp. 38-39, Exhibit B.
[3] DraftKings Terms of Use, "Refund Policy" at pp. 29-30, Exhibit B.

### A. A Non-Signatory Defendant Need Not Be Expressly Identified in an Arbitration Agreement to Compel Arbitration under a Theory of Equitable Estoppel

State and federal courts agree that a defendant who is a non-signatory to an arbitration agreement between the plaintiff and another defendant may compel arbitration of the plaintiff's claims. Plaintiffs appear to contend first that, because the DFS Defendants' contracts with Plaintiffs did not **expressly** identify Payment Processors, equitable estoppel is not available.[4]

That simply is not the standard. As the court in *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 119, 128 (2d Cir. 2010), explained, although the non-signatory defendant, " is . . . not mentioned, expressly or by implication, in . . . the arbitration agreement, or in any of the other documents relating to Ragone's initial employment that are contained in the record," the court nonetheless held that the plaintiff was estopped from avoiding arbitration because the claims brought against the signatory and non-signatory defendants were the "same dispute." *See also, e.g., In re A2P SMS Antitrust Litig.,* 972 F. Supp. 2d 465, 479 (S.D.N.Y. 2013) (estopping plaintiffs from avoiding arbitration even where non-signatory defendant was not "specifically mention[ed]" in or "linked textually" to the contract containing the arbitration clause).[5]

Moreover, although Payment Processors were not identified by name in the DFS Defendants' respective contracts, **the services they are alleged to have provided** were expressly covered.

- Both terms of use expressly address and include "deposits" and "withdrawals."[6]

---

[4] Mem. of P. & A. in Opp'n to Payment Processor Defs.' Mot. to Compel Arb. ("Opp'n"), ECF No. 331, at 5.

[5] As Payment Processors explained in their opening Memorandum, the First Circuit has approvingly recognized and often utilized Second Circuit precedent on this issue. *See* Mem. of P. & A. in Supp. of Payment Processor Defs.' Mot. to Compel Arb. ("PPM"), ECF No. 320-1, at 5 n.12.

[6] DraftKings' Terms of Use, "Payment and Withdrawal of Prizes" at p. 34, Exhibit B; FanDuel's Terms of Use, § 4.5 at pp. 9-10, Exhibit A.

- The arbitration provision in DraftKings' Terms of Use encompasses "[a]ny and all disputes, claims or controversies arising out of or relating to this Agreement, the breach thereof, or any use of the Website (**including all commercial transactions conducted through the Website**)."[7] Those Terms of Use further refer to "[**t]he company processing credit card payments for DraftKings**."[8]

- FanDuel's Terms of Use state that users must arbitrate "all claims arising out of or relating to . . . **your use of the Service."**[9] "Service," in turn, includes "[t]he Site, the mobile app, **and any other features, tools, materials, or other services (including co-branded or affiliated services**)."[10]

Plaintiffs characterize Payment Processors as providing a "player banking service" through the DFS Defendant sites.[11] Without this service, there could be no game-play on the DFS Defendants' sites, and these functions are expressly included within the scope of each DFS Defendant's terms of use. As such, they more than meet the threshold required to invoke equitable estoppel.

### B.   Payment Processors Easily Meet the "Intertwined" Test

As Payment Processors explained in their initial Memorandum, the First Circuit has directed that equitable estoppel be applied and arbitration required "when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Sourcing Unlimited*, 526 F.3d at 47 (quoting *Grina*, 344 F.3d at 145).[12] A court will "'estop a signatory from avoiding arbitration with a nonsignatory when [1]

---

[7] DraftKings Terms of Use, "Arbitration, Consent to Jurisdiction in Massachusetts, Attorney's Fees" (emphasis added) at pp. 38-39, Exhibit B.
[8] *Id.* at "Refund Policy" (emphasis added) at pp. 29-30, Exhibit B.
[9] FanDuel Terms of Use, § 15.2 at pp. 20-21, Exhibit A (emphasis added).
[10] *Id.* at § 1 (emphasis added).
[11] Opp'n at 10; First Am. Compl. ECF No. 269, ¶¶ 101, 102, 790.

4

**the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement** that the estopped party has signed,' and [2] **the signatory and nonsignatory parties share a close relationship**." *Johnson v. Polaris Sales, Inc.*, 257 F. Supp. 2d 300, 306-7 (D. Me. 2003) (citations and emphases altered).

Where the same factual and legal issues apply to a signatory plaintiff's claims against both a signatory defendant and a non-signatory defendant, parallel arbitration and judicial proceedings are disfavored, and federal courts will estop the plaintiff from avoiding arbitration. *See Paul Revere Variable Annuity Ins. Co. v. Thomas*, 66 F. Supp. 2d 217, 225 (D. Mass. 1999) (compelling arbitration against non-signatory defendants by reasoning that the plaintiffs' claims against defendants "are all governed by the same set of facts and implicate the same legal arguments"); *Paradise v. Eagle Creek Software Servs., Inc.*, 989 F. Supp. 2d 132, 143 (D. Mass. 2013) (compelling arbitration against non-signatory where claims against signatory and non-signatory defendant were "inextricably intertwined").

Payment Processors easily meet this test.

> 1. **The Claims Against All Defendants Involve the Same Areas of Law and Same Set of Facts and Arise from the Same Legal Instruments**

Plaintiffs' claims throughout the First Amended Complaint inevitably depend upon or turn on the existence or provisions of the contracts (the DFS Defendants' terms of use). Plaintiffs' own allegations make that plain. Plaintiffs allege a number of "shared questions" regarding the Payment Processors.[13]  Those questions include:

---

[12] *See* PPM at 4-5.  Plaintiffs claim that *Sourcing Unlimited* and another decision (*Restoration Pres. Masonry, Inc. v. Grove Europe Ltd.*, 325 F.3d 54 (1st Cir. 2003)) cited by Payment Processors in their PPM differ from the facts in this case.  Opp'n at 5 n.6.  Payment Processors do not disagree; these cases have been cited solely to demonstrate the First Circuit's acceptance of the ability of a non-signatory defendant to compel arbitration and because they articulate the applicable legal test for determining when doing so is warranted.
[13] First. Am. Compl. at ¶ 511.

- "Whether Defendants [a term that includes Payment Processors and DFS Defendants] fraudulently induced Plaintiffs and the proposed classes into using their website [and, hence, entering into the respective terms of use] under false pretenses, through material misrepresentations or material omissions; and

- "Whether and to what extent consumers were harmed by Defendants' actions," including allegedly false representations made in the respective terms of use.[14]

Furthermore, all of the services Payment Processors allegedly provided Plaintiffs were contracted for as part of, and would have been performed pursuant to, the DFS Defendants' terms of use, which expressly referred to those types of services.[15]

Plaintiffs attempt to dismiss those points of congruence by contending that their claims "do[] not require the examination of any provisions of the contracts providing for arbitration,"[16] invoking a Ninth Circuit decision, *Rajagopalan v. Noteworld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013), for the proposition that equitable estoppel is available only if the plaintiff is claiming that the defendant "or any other party breached the terms of the contract."

In the first instance, the *Noteworld* formulation does not reflect the two-factor test articulated by this Circuit. *See, e.g., Sourcing Unlimited*, 526 F.3d at 47; *Polaris Sales*, 257 F.Supp.2d at 306-7.[17]

---

[14] *Id.* at (d), (e).

[15] *See, e.g.,* FanDuel Terms of Service at § 4.5, at pp. 9-10, Exhibit A; DraftKings Terms of Use at "Payment and Withdrawal of Prizes" at p. 34, Exhibit B; "Refund Policy" at pp. 29-30, Exhibit B; "Arbitration, Consent to Jurisdiction in Massachusetts, Attorney's Fees" at pp. 38-39, Exhibit B.

[16] Opp'n at 10.

[17] Plaintiffs similarly invoke another case, *Denney v. Jenkens & Gilchrist,* 412 F. Supp. 2d 293, 297 (S.D.N.Y. 2005), as requiring "exceptional circumstances" before estoppel will be applied. However, that language standing alone is misleading. The very next section of that decision (not quoted by Plaintiffs) articulates the very same two-factored test invoked by the court in *Polaris Sales. Id.* (stating that a "non-signatory may compel arbitration on an estoppel theory, where (i)

Even if that were not the case, Payment Processors also satisfy the *Noteworld* test. Plaintiffs here **have asserted** breach of contract against "other part[ies]," *Noteworld*, 718 F.3d at 847 – namely, the DFS Defendants.[18]  Moreover, Plaintiffs also have alleged unjust enrichment against Payment Processors themselves.  Claims of unjust enrichment inherently require consideration of whether there exists a valid agreement between the parties or pursuant to which a party can claim an entitlement.  See *Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 931 (1st Cir. 2014); *cf. Envisionet Computer Services v. Microportal.com, Inc.*, 2001 WL 179882, at *10 (D. Me. Feb. 14, 2001) (noting that "the bar is raised" for claims of unjust enrichment if the defendant is a third-party beneficiary to a contract); *Taylor Woodrow Blitman Const. Corp. v. Southfield Gardens Co.*, 534 F. Supp. 340, 347 (D. Mass. 1982) (reasoning that for plaintiffs to bring unjust enrichment claims where "a third person benefits from a contract between two others" plaintiffs must show that they do not have "an adequate remedy at law" such as under their contract).  That, in turn, requires evaluation of the substance and validity of the agreements (the terms of use) and Payment Processors' defenses – an evaluation that, as explained in Section III, *infra*, is precluded when considering a motion to compel arbitration.

---

there is a close relationship between the parties and controversies involved and (ii) the signatory's claims against the non-signatory are "'intimately founded in and intertwined with the underlying'" agreement containing the arbitration clause").  That is precisely the standard Payment Processors believe should be applied.

[18] First Am. Compl. at ¶¶ 666-673.

## 2. Plaintiffs Themselves Allege the Requisite Close Relationship Among Defendants

Plaintiffs, in their efforts to argue that this second factor has not been met, contend "that a nonsignatory related to a signatory merely as an alleged coconspirator may [not] invoke the otherwise unrelated signatory's arbitration clause."[19]

Payment Processors never have asserted a contrary position; however, Plaintiffs themselves allege that Payment Processors are more than "merely . . . an alleged coconspirator" of DFS Defendants. Plaintiffs allege that Payment Processors "knowingly provid[ed] the 'player banking services' facilitating and processing payment between the customer and the DFS Defendants."[20] The Payment Processors' services, **as alleged by Plaintiffs**, are part of the services offered on the DFS Defendants' websites and are expressly addressed in both DFS Defendants' terms of use.

Plaintiffs invoke two principal decisions in support of their proposition that the relationship alleged here is insufficient for purposes of the "intertwined" test. Neither supports Plaintiffs' position.

The first, *Ross v. American Express Co.*, 547 F.3d 137 (2d Cir. 2008), actually supports Payment Processors' motion. Plaintiffs assert that under *Ross,* an alleged coconspirator who is a non-signatory to an arbitration agreement between a coconspirator and the plaintiffs may not compel the plaintiffs to arbitrate.[21] That characterization is misleading.

In *Ross*, MasterCard, Visa, and Diners Club cardholders brought conspiracy claims against American Express ("Amex"), alleging that Amex had conspired with the other card networks and their issuing banks to inflate foreign currency transaction fees. *Ross*, 547 F.3d at

---

[19] Opp'n at 12.
[20] *Id.* at 10.
[21] *See* Opp'n at 12-13.

8

139. The Second Circuit ruled that Amex could not compel arbitration pursuant to the cardholders' agreements with their issuing banks since Amex was a competitor of the other card networks and issuing banks and "had no role in the[] formation or performance" of the cardholder agreement. *Id.* at 146.

In other words, Amex played no role in the services provided to the cardholders pursuant to their agreements with their own issuers and had no relationship with either the cardholders or the issuing banks or networks. See *id.* at 140 ("the only connection Amex claims to Plaintiff cardholders is its alleged antitrust conspiracy"); *id.* at 148 ("[P]laintiffs do not allege that they have . . . had any contact whatsoever with Amex, and the latter makes no claim to the contrary. . . . Amex . . . performs no function whatsoever relating to the[] operation [of the cardholder agreements]") The *Ross* court did **not** hold that coconspirators can **never** invoke the theory of equitable estoppel, but rather that there must be a relationship between the signatory and non-signatory defendants independent of their status as alleged co-conspirators.

Plaintiffs' further reliance on *Butto v. Collecto, Inc.*, 845 F. Supp. 2d 491 (E.D.N.Y. 2012), is similarly misplaced.[22] The decision involved claims brought by cellular-phone customers alleging violation of the Fair Debt Collection Practices Act by a debt collection company retained by their wireless carriers to collect unpaid bills. *Id.* at 493. The customers' agreements with their carriers included arbitration provisions, and the collection company sought to estop plaintiffs from refusing arbitration of their claims. *Id*. As in *Ross,* the non-signatory debt collector had no involvement in the performance of the carriers' obligations under their agreements. See *id.* at 498 (noting that "[p]laintiffs made no allegation that [the collection

---

[22] Opp'n at 14.

company] acted in concert with the wireless providers" and citing *Ross, supra* at 141, for the proposition that "allegations of concerted misconduct" alone cannot suffice).

Unlike the defendants in *Ross* and *Butto*, here Payment Processors are not alleged to have been strangers to the relationship between Plaintiffs and DFS Defendants, but were purportedly involved in providing an aspect of the services thereunder. As such, based on Plaintiffs' own characterization, Payment Processors possess the requisite close relationship with DFS Defendants to compel arbitration.

        3.    **Plaintiffs' Attempts to Distinguish the Authorities on which Payment Processors Have Relied Merely Strengthen Payment Processors' Arguments.**

Plaintiffs' attempts to distinguish a number of authorities invoked by Payment Processors are unpersuasive. To the contrary, Plaintiffs' efforts to refute those cases reinforce their relevance and the strength of Payment Processors' argument.

Plaintiffs first attempt to distinguish *Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58 (2d Cir. 2005), in which the court compelled arbitration of claims against Deutsche Bank, a non-signatory defendant. Plaintiffs must distinguish *Denney*, because it directly refutes Plaintiffs' contention that equitable estoppel requires the nonsignatory defendant to have been expressly named or its function mentioned in the contract containing the arbitration provision. A comparison of the facts in *Denney* with those here demonstrates why the decision is both relevant and compelling.

In *Denney*, plaintiffs alleged RICO, unjust enrichment, breach of contract and similar claims against the BDO accounting firm, Deutsche Bank, and other defendants arising out of allegedly illegal tax shelter transactions. *Denney*, 412 F.3d at 61. Several of the plaintiffs had entered into agreements with BDO to provide various consulting services relating to the tax shelters. *Id.* at 62. Even though Deutsche Bank was not a party to the agreements, Plaintiffs

argue that the plaintiffs in that case "should reasonably have understood that effecting the scheme necessarily required the efforts of accountants, lawyers, and bankers."[23] In Plaintiffs' words, "the accounting defendants [in *Denney*] seemed to have been offering a package deal with the requisite services to be delivered by a cast of specialists including the bank."[24] Put another way, Plaintiffs accept the outcome of *Denney* because those plaintiffs should have known that third parties would be involved in providing the services.

Yet, here, without any principled distinction, Plaintiffs contend that they "had no such expectations regarding the DFS Defendants' relationship with [Payment Processors] or any other third-party." [25]

But just as a tax shelter administered by accountants "necessarily" requires bankers, daily fantasy sports administered by DFS websites necessarily requires payment processors. That requirement was evident to Plaintiffs in a number of respects. Plaintiffs were undoubtedly aware that it was necessary to transfer funds to the DFS Defendants, and both DFS Defendants' terms of use are replete with references to deposits and payments, and, more generally, to third-party services or features that required third-party vendors.[26] Even more directly, DraftKings' Terms of Use identifies "[t]**he company processing credit card payments for DraftKings**," leaving no doubt as to the existence of a third party providing that service.[27] The ability to deposit funds

---

[23] Opp'n at 17.
[24] *Id.*
[25] *Id.* at 18.
[26] *See, e.g.,* FanDuel Terms of Use § 3 at pp. 4-6, Exhibit A; § 4.1 at p. 6, Exhibit A; § 4.5 at pp. 9-10, Exhibit A, (discussing deposits and payments); and § 4.7 at p. 10, Exhibit A (referencing FanDuel's "service providers[] and business partners[]").
[27] DraftKings Terms of Use, "Refund Policy" at pp. 29-30, Exhibit B; *see also id.* at "DK Player Reserve" at pp. 34-35, Exhibit B, (referring to delays in withdrawals caused by "a payment processor, credit card issuer, or by the custodian of a financial account").

11

with the DFS Defendants was part of the "package deal" those DFS Defendants offered in nearly the same fashion apparent in *Denney.*

Plaintiffs' efforts to distinguish several others of the cases cited by Payment Processors all seem to turn on the premise that, unlike in those cases, Payment Processors are not "agents" or "affiliates" of the signatory defendants.[28] But the "intertwined" test articulated by this Circuit does not require legal "agency" or corporate "affiliation," and Payment Processors do not rely on either concept for purposes of their motion.

Here, Plaintiffs allege that Payment Processors provided "banking" and related services to Plaintiffs on behalf of the DFS Defendants, a function that was disclosed to Plaintiffs and that, as already discussed, was part of the overall package of services offered by or on behalf of DFS Defendants. That more than suffices to demonstrate a sufficiently "close relationship."

### III.     "UNCLEAN HANDS" IS NOT A BASIS TO DENY ARBITRATION

Plaintiffs further ask this Court to take the unprecedented step of barring Payment Processors from invoking equitable estoppel simply because they have been accused of wrongdoing in a complaint and, hence, have "unclean hands." Payment Processors are aware of no court within this Circuit that has embraced that position, and it is no wonder.

> It is well settled that under the [Federal Arbitration Act], a district court's consideration of a motion to compel arbitration is limited to determining whether the parties entered into a valid agreement to arbitrate, and does not reach the merits of the parties' claims. . . . **The doctrine of unclean hands does not stand as a defense that may be properly considered independent of the merits of the plaintiff's claim**.

*Wolff v. Westwood Mgmt., LLC*, 503 F. Supp.2d 274, 283 (D.D.C. 2007) (emphasis added) (citations omitted), *aff'd*, 558 F.3d 517 (D.C. Cir. 2009); *see also, e.g., Riley v. BMO*

---

[28] *See* Opp'n at 18-19 (discussing *Ragone v. Atl. Video at Manhattan Ctr.,* 595 F.3d 115 (2d Cir. 2010), *Myrick v. GTE Main Street, Inc.,* 73 F. Supp. 2d 94 (D. Mass. 1999) and *Paul Revere Variable Annuity Ins. Co.*, 66 F. Supp. 2d 217 (D. Mass. 1999)).

12

*Harris Bank, N.A.,* 61 F. Supp. 3d 92, 102-103 (D.D.C. 2014) ("Plaintiff only makes an unclean-hands argument with respect to the loan agreement as a whole, not the arbitration provision specifically. Such an argument is also for the arbitrator to decide in the first instance."); *Achey v. BMO Harris Bank, N.A.*, 64 F. Supp. 3d 1170, 1178 (N.D. Ill. 2014) (holding same); *Gunson v. BMO Harris Bank, N.A.* 43 F. Supp. 3d 1396, 1404 (S.D. Fla. 2014) (holding same); *Jones v. Halliburton Co.*, 625 F. Supp. 2d 339, 349 (S.D. Tex. 2008) (holding same).

As one court has noted, "if any claim of wrongful conduct in a complaint could be used to demonstrate the defendant's unclean hands, no defendant could ever use equitable estoppel—or any other equitable doctrine—to enforce an arbitration agreement. Such a result is unsupported by logic or the law." *In re A2P SMS Antitrust Litig.,* 972 F. Supp. 2d at 483 (emphasis added).

Not surprisingly, none of the authorities invoked by Plaintiffs is to the contrary. None relies solely on allegations made in a complaint, and none applies unclean hands in a situation involving equitable estoppel of arbitration, rather than other forms of equitable relief. *See Texaco P.R. Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 880 (1st Cir. 1995) (restitution); *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 910-911 (1st Cir. 1989) (laches); *Dunkin' Donuts Inc. v. Panagakos*, 5 F. Supp. 2d 57, 62 (D. Mass. 1998) (estopped from asserting waiver of contractual right to terminate agreement).

Plaintiffs simply cannot offer any valid basis that would support application of the doctrine to preclude arbitration.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, and those contained in their Memorandum in Support of Motion to Compel Arbitration and in DFS Defendants' contemporaneous pleadings, Payment Processors respectfully request that this Court grant their Motion to Compel Arbitration.

Dated: January 30, 2017
Washington, District of Columbia

Respectfully submitted,

| | |
|---|---|
| By: */s/ Behnam Dayanim* | By: */s/ George R. Calhoun, V* |
| Behnam Dayanim (*pro hac vice*) | George R. Calhoun, V (*pro hac vice*) |
| Kathleen Sheridan (*pro hac vice*) | Ifrah PLLC |
| Noah Simmons (*pro hac vice*) | 1717 Pennsylvania Ave., N.W. |
| bdayanim@paulhastings.com | Washington, DC  20006 |
| kathleensheridan@paulhastings.com | Tel: (202) 524-4140 |
| noahsimmons@paulhastings.com | george@ifrahlaw.com |
| Paul Hastings LLP | |
| 875 15th Street, N.W. | David S. Godkin (BBO#196530) |
| Washington, DC  20005 | James E. Kruzer (BBO#670827) |
| Telephone: (202) 551-1700 | Birnbaum & Godkin, LLP |
| Facsimile:  (202) 551-1705 | 280 Summer Street |
| | Boston, MA  02210 |
| David S. Godkin (BBO#196530) | Tel: (617) 307-6100 |
| James E. Kruzer (BBO #670827) | godkin@birnbaumgodkin.com |
| Birnbaum & Godkin, LLP | kruzer@birnbaumgodkin.com |
| 280 Summer Street | |
| Boston, MA 02210 | *Attorneys for Defendant Vantiv, Inc.* |
| Tel: (617) 307-6100 | |
| godkin@birnbaumgodkin.com | |
| kruzer@birnbaumgodkin.com | |

*Attorneys for Defendant Paysafecard.com USA, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 30, 2016.

*/s/ Behnam Dayanim*
Behnam Dayanim (*pro hac vice*)