**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE DAILY FANTASY SPORTS LITIGATION | 1:16-md-02677-GAO |

**DEFENDANT DRAFTKINGS, INC.'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...........................................................................................................................3

   I.   Plaintiffs Formed a Binding Contract with DraftKings When They Checked the Box Stating, "I Agree to the Terms of Use."..........................................................................3

   II.   Plaintiffs' Illusoriness and Illegality Arguments Challenge the Validity of the Terms of Use and Must Be Arbitrated. ......................................................................................4

   III.   The Terms of Use Contain a Clear and Unmistakeable Delegation Provision....................5

   IV.   Plaintiffs' Challenges to the Validity of the Arbitration Provision Must Be Arbitrated and Are Baseless....................................................................................................................9

   V.   DraftKings' Terms of Use Bind the Family Member Plaintiffs. .....................................14

   VI.   FanDuel's Terms of Use Bind the Crossover Plaintiffs....................................................15

CONCLUSION ......................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
    133 S. Ct. 2304 (2013) ...................................................................................13

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ......................................................................................1, 13

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) .........................................................................................4

*Awuah v. Coverall N. Am., Inc.* ("*Awuah I*"),
    554 F.3d 7 (1st Cir. 2009) .........................................................................5, 6, 7, 9

*Awuah v. Coverall N. Am., Inc.* ("*Awuah II*"),
    703 F.3d 36 (1st Cir. 2012) ..........................................................................1, 2, 4

*Bekele v. Lyft, Inc.*,
    No. CV 15-11650, 2016 WL 4203412 (D. Mass. Aug. 9, 2016) ...........................2, 3

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2005) ......................................................................................2, 5

*Cormier v. Cent. Mass. Chapter of Nat. Safety Council*,
    620 N.E.2d 784 (Mass. 1993)...........................................................................11

*Cullinane v. Uber Techs., Inc.*,
    No. CV 14-14750, 2016 WL 3751652 (D. Mass. July 11, 2016) ...................1, 4, 13

*Damato v. Time Warner Cable, Inc.*,
    No. 13-CV-994, 2013 WL 3968765 (E.D.N.Y. July 31, 2013) ...........................5, 13

*DeLuca v. Bear Stearns & Co.*,
    175 F. Supp. 2d 102 (D. Mass. 2001)..................................................................5

*Denney v. Jenkens & Gilchrist,*|
    412 F. Supp. 2d 293 (S.D.N.Y. 2005) ................................................................15

*Domenichetti v. Salter School, LLC*,
    No. CIV. A. 12-11311, 2013 WL 1748402 (D. Mass. Apr. 19, 2013)......................5

*Escobar-Noble v. Luxury Hotels Int'l of Puerto Rico, Inc.*,
    680 F.3d 118 (1st Cir. 2012) ............................................................................11

*Fallo v. High-Tech Inst.*,
   559 F.3d 874 (8th Cir. 2009) ................................................................7

*Farnsworth v. Towboat Nantucket Sound, Inc.*,
   790 F.3d 90 (1st Cir. 2015) ...............................................................2, 5

*Feeney v. Dell, Inc.*,
   993 N.E.2d 329 (Mass. 2013) ...........................................................13

*Garten v. Kurth*,
   265 F.3d 136 (2nd Cir. 2001) ...........................................................12

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991) .............................................................................3

*Glazer v. Lehman Bros.*,
   394 F.3d 444 (6th Cir. 2005) ...............................................................7

*Gov't Emps. Ins. Co. v. Grand Med. Supply, Inc.*,
   No. 11 Civ. 5339, 2012 WL 2577577 (E.D.N.Y. July 4, 2012) ...............15

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
   561 U.S. 287 (2010) ............................................................................6

*Henry v. Mansfield Beauty Acad., Inc.*,
   233 N.E.2d 22 (Mass. 1968) ..............................................................11

*Hill v. Anheuser-Busch InBev Worldwide, Inc.*,
   No. CV 14-6289, 2014 WL 10100283 (C.D. Cal. Nov. 26, 2014) ............8

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   252 F.R.D. 83 (D. Mass. 2008) ............................................................2

*Jacobs v. U.S. Fid. & Guar. Co.*,
   627 N.E.2d 463 (Mass. 1994) ..............................................................8

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
   387 F.3d 163 (2d Cir. 2004) ...............................................................15

*Kennedy v. Josephthal & Co.*,
   814 F.2d 798 (1st Cir. 1987) ..............................................................12

*Kristian v. Comcast Corp.*,
   446 F.3d 25 (1st Cir. 2006) ................................................................11

*Laughton v. CGI Tech. & Solutions, Inc.*,
   602 F. Supp. 2d 262 (D. Mass. 2009) ...................................................8

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
    514 U.S. 52 (1995) ..............................................................................................10

*PacifiCare Health Sys., Inc. v. Book*,
    538 U.S. 401 (2003) ............................................................................................11

*Paul Revere Variable Annuity Ins. Co. v. Kirschhofer*,
    226 F.3d 15 (1st Cir. 2000) ................................................................................10

*Pla-Fit Franchise, LLC v. Patricko, Inc.*,
    No. 13-CV-489, 2014 WL 2106555 (D.N.H. May 20, 2014) ..................................1

*Preston v. Ferrer*,
    552 U.S. 346 (2008) ...............................................................................................2

*Prima Paint Corp v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) ............................................................................................2, 5

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010) .............................................................................................2, 5

*Ryan v. Delbert Servs. Corp.*,
    No. 5:15-CV-05044, 2016 WL 4702352 (E.D. Pa. Sept. 8, 2016)........................8, 9

*Saravia v. Dynamex, Inc.*,
    310 F.R.D. 421 (N.D. Cal. 2015) ........................................................................13

*Stechler v. Sidley, Austin Brown & Wood*,
    382 F. Supp. 2d 580 (S.D.N.Y. 2005) .................................................................15

*Walker v. Collyer*,
    9 N.E.3d 854 (Mass. App. Ct. 2013) ...................................................................14

*Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*,
    51 F. Supp. 3d 713 (N.D. Ill. 2014).....................................................................8

**Statutes**

Ga. Code Ann. § 13-8-3(b) .........................................................................................14

Ky. Rev. Stat. Ann. § 372.040.....................................................................................14

N.M. Stat. Ann. § 44-5-3 .............................................................................................14

Tenn. Code Ann. § 29-19-105 .....................................................................................14

**Rules**

AAA Consumer Arbitration Rules (Sept. 1, 2014), *available at*
https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTAGE2021425&revision=latest
released ...................................................................................................................................1

## PRELIMINARY STATEMENT

The "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"[1]  Plaintiffs' opposition provides no argument or evidence justifying departure from this directive.[2]  DraftKings' motion should be granted.

The law is clear that each Plaintiff formed an agreement with DraftKings, and manifested assent to that agreement, when they clicked the "I agree to the Terms of Use" box on the DraftKings registration page. DK Mot. 8.  Indeed, "every court to consider the issue has held clickwrap licenses enforceable."[3]

As part of this contract, Plaintiffs agreed to arbitrate any disputes with DraftKings and further agreed that any such disputes would be governed by the rules of the American Arbitration Association ("AAA Rules").  The AAA Rules provide that "any objections with respect to the existence, scope or validity of the arbitration agreement" be decided by the arbitrator.[4]

Plaintiffs provide no evidence disputing the fact that each Plaintiff clicked the "I agree" box when they registered for DraftKings.  Nor do they dispute that the Terms of Use to which each Plaintiff agreed contained an arbitration clause incorporating the AAA Rules.  Under

---

[1] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011).

[2] The First Circuit has not adopted a categorical standard for motions to compel arbitration, so "the required standard will vary depending upon whether the court must look beyond the complaint to resolve the dispute.  If the answer is apparent on the face of the complaint, the Rule 12(b)(6) standard will suffice.  If the court must consult evidence to resolve the issue, the summary judgment standard must be employed."  *Pla-Fit Franchise, LLC v. Patricko, Inc.*, No. 13-CV-489, 2014 WL 2106555, at *3 (D.N.H. May 20, 2014).  Plaintiffs fail to rebut the presumption in favor of arbitration under either standard: they cannot show, on the face of the TAC, that they did not assent to the Terms of Use or that the delegation provision is invalid; and they have submitted no evidence to support their arguments.

[3] *Cullinane v. Uber Techs., Inc.*, No. CV 14-14750, 2016 WL 3751652, at *6 (D. Mass. July 11, 2016); *see Awuah v. Coverall N. Am., Inc.* ("*Awuah II*"), 703 F.3d 36, 44 (1st Cir. 2012).

[4] AAA Consumer Arbitration Rules (Sept. 1, 2014), *available at* https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTAGE2021425&revision=latestreleased, at 17.

Supreme Court and First Circuit precedent, these admissions require granting this motion.[5]

Seeking to avoid their contractual obligations, Plaintiffs raise a series of arguments that conflate issues of *formation* of a contract with issues of the *validity* of that contract. Under controlling precedent, only issues of formation are properly before this Court, as Plaintiffs agreed to arbitrate all other issues through a delegation provision that they do not validly challenge. Of Plaintiffs' numerous objections, the only challenge to contract *formation* is that Plaintiffs lacked notice or understanding of the terms to which they agreed. Opp. 12-15. But "Massachusetts courts have routinely concluded that clickwrap agreements—whether they contain arbitration provisions or other contractual terms—provide users with reasonable communication of an agreement's terms," and "it has long been the rule that typically, one who signs a written agreement is bound by its terms whether he reads and understands them or not." *Bekele v. Lyft, Inc.*, No. CV 15-11650, 2016 WL 4203412, at *6-7 (D. Mass. Aug. 9, 2016) (quoting *Awuah II*, 703 F.3d at 44) (quotation marks and alterations omitted).[6]

Plaintiffs' remaining challenges are either (1) objections to the validity of the Terms of Use, which must be arbitrated because the arbitration provision is severable from the rest of the agreement as a matter of federal law; or (2) objections to the "existence, scope, or validity of the arbitration agreement," which must be arbitrated due to the delegation provision.[7] Plaintiffs'

---

[5] *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2005); *see also Preston v. Ferrer*, 552 U.S. 346, 352-54 (2008); *Prima Paint Corp v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967); *Farnsworth v. Towboat Nantucket Sound, Inc.*, 790 F.3d 90, 96 (1st Cir. 2015).

[6] If *actual* notice were the standard for assent, the individualized inquiry into whether each Plaintiff had notice of the contract's terms would preclude class treatment of Plaintiffs' claims. *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 97 (D. Mass. 2008).(no class certification due to issues of actual knowledge).

[7] Plaintiffs assert that the Terms of Use are internally inconsistent (Opp. 1); illusory (Opp. 7-10); and void for illegality (Opp. 10-12), and that the arbitration provision is inconsistent with a separate forum selection clause (Opp. 22-23); inconsistent with Plaintiffs' rights under RICO (Opp. 23-25); fraudulent (Opp. 25-27); and illusory (Opp. 28-29). Plaintiffs' attempt to recast general challenges to the Terms of Use as challenges to the delegation or arbitration provision must also be rejected. DK Mot. 9-12; *see Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010); *Farnsworth*, 790 F.3d at 96; *see also Buckeye*, 546 U.S. at 444; *Prima Paint*, 388 U.S. at 404.

policy-based arguments, *e.g.*, Opp. 21, fail.  As the Supreme Court has held, "generalized attacks

on arbitration" as a dispute resolution process "are far out of step with our current strong

endorsement of the federal statutes favoring this method of resolving disputes."[8]  Because

Plaintiffs assented to delegation and arbitration provisions and do not validly challenge those

provisions, DraftKings' motion should be granted.

## ARGUMENT

### I.      PLAINTIFFS FORMED A BINDING CONTRACT WITH DRAFTKINGS WHEN THEY CHECKED THE BOX STATING, "I AGREE TO THE TERMS OF USE."

Plaintiffs formed a binding clickwrap agreement with DraftKings when they clicked the

"I agree to the Terms of Use" box on DraftKings' registration page.  DK Mot. (ECF No. 317)

Part I.  Plaintiffs do not dispute that they clicked the "I agree" box, but instead raise a series of

arguments ranging from a wholesale attack on the legality of the Terms of Use to a claim that the

agreement was illusory.  Of these myriad challenges, the only challenges that go to contract

formation are arguments that clicking the "I agree" box did not form a contract because: (1)

Plaintiffs were not required to read the Terms of Use before clicking the box; (2) the arbitration

clause was not conspicuous in the Terms of Use; and (3) the Terms of Use are themselves

"ambiguous, confusing and self-conflicting."  Opp. 2-3, 7.  Each of these arguments is foreclosed

by First Circuit law.

Indeed, even Plaintiffs' cases hold that clickwrap agreements are valid and provide users

with reasonable notice of the terms of the agreement.  *Bekele*, 2016 WL 4203412, at *6

("[C]lickwrap agreements … provide users with reasonable communication of an agreement's

terms.") (citing cases).  The *Cullinane* case, cited repeatedly by Plaintiffs (Opp. 1, 6, 12, 14, 15),

---

[8] *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991) (citations, quotation marks, alterations omitted).

expressly rejected the argument that users must read an online agreement in order to assent: "Whether or not plaintiffs had *actual* notice of the terms of the Agreement, all that matters is that plaintiffs had *reasonable* notice of the terms." *Cullinane*, 2016 WL 3751652, at *7 (quoting *Awuah II*, 703 F.3d at 44)). The *Cullinane* Court similarly rejected arguments that notice was inadequate because the Terms of Service could be viewed only through a hyperlink and the arbitration provision was not conspicuous and appeared many pages into the Terms of Service because "[a] reasonable user who cared to pursue the issue would have inquiry notice of the terms of the Agreement challenged by the plaintiffs." *Id.* at *7 & n.7.

Simply stated, Plaintiffs' challenges to formation have been squarely rejected by courts in this Circuit. Plaintiffs' other challenges go to validity and must be decided by the arbitrator.

## II.   PLAINTIFFS' ILLUSORINESS AND ILLEGALITY ARGUMENTS CHALLENGE THE VALIDITY OF THE TERMS OF USE AND MUST BE ARBITRATED.

Plaintiffs advance two challenges to the validity of the Terms of Use: they claim the contract is (1) illusory, due to provisions reserving DraftKings' right to disallow contestants from joining "head to head" contests and its right to amend the Terms of Use; and (2) void, based on the false claim that the contract's "purpose was to engage in illegal gambling." Both of these are objections to validity—not formation—so their merit (or lack thereof) is not for this Court to address.[9]

The Supreme Court has made clear that the severability doctrine requires enforcement of an arbitration provision ***even within a contract that is void***: "First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.

---

[9] Furthermore, the merits of Plaintiffs' illegality objection go to the heart of the merits of their underlying dispute, on which this Court should not opine on this motion. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649-50 (1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.").

Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye*, 546 U.S. at 445-46.  *Buckeye* held that a challenge to the entire contract as void for illegality must be decided by an arbitrator, not a court, because an arbitration provision is severable and enforceable even if the contract in which it is contained is illegal.  And "cases that apply the Supreme Court's precedents [] overwhelmingly reach the conclusion that the issue of illusoriness of the whole contract must be resolved by the arbitrator." *Damato v. Time Warner Cable, Inc.*, No. 13-CV-994, 2013 WL 3968765, at *6 (E.D.N.Y. July 31, 2013) (compelling arbitration).[10]

Plaintiffs identify no authority to the contrary—all but two of the cases they cite are not even arbitration cases.  Of those, *DeLuca v. Bear Stearns & Co.*, 175 F. Supp. 2d 102 (D. Mass. 2001), held that the Plaintiffs ***were*** required to arbitrate their claims.  And *Domenichetti v. Salter School, LLC*, No. CIV. A. 12-11311, 2013 WL 1748402 (D. Mass. Apr. 19, 2013), declined to compel arbitration because the arbitration clause at issue was found in an employee handbook, which the employer *conceded* was "not a contractual agreement between the parties."  *Id.* at *6.

## III.   THE TERMS OF USE CONTAIN A CLEAR AND UNMISTAKEABLE DELEGATION PROVISION.

Plaintiffs' challenges to the validity of the Terms of Use must be decided by an arbitrator because the arbitration provision to which they agreed is severable from the remainder of the contract.  That arbitration provision incorporates AAA Rules, which "say that the arbitrator should decide whether the arbitration clause is valid."  *Awuah v. Coverall N. Am., Inc.* ("*Awuah I*"), 554 F.3d 7, 10 (1st Cir. 2009); DK Mot. 8-11.

Plaintiffs attempt to circumvent the delegation provision by arguing that the provision

---

[10] *See Rent-A-Center*, 561 U.S. at 70; *Prima Paint*, 388 U.S. at 404; *Farnsworth*, 790 F.3d at 96.

was not "clear and unmistakable" because (1) it was incorporated by reference, rather than copied directly into the Terms of Use (Opp. 16-17); (2) the AAA Rules have changed over time (Opp. 17); (3) it conflicts with other provisions (Opp. 18-21); and (4) it is obscured by boilerplate (Opp. 21). Each of these arguments ignores controlling case law and should be rejected.

*Incorporation by reference.* Plaintiffs cite numerous cases from other Circuits to argue that "a vague, ambiguous reference to the AAA rules does not satisfy the clear-and-unmistakable standard." (Opp. 17). Plaintiffs, however, fail to inform the Court that in *Awuah*, the First Circuit considered and directly rejected that argument.[11] In *Awuah*, as here, the contract incorporated the AAA Rules by reference, and the delegation provision did not appear directly in the contract itself. *Awuah I*, 554 F.3d at 9. Nonetheless, the court held that the AAA Rules' statement "that the arbitrator may 'rule on his or her own jurisdiction' including any objection to the 'existence, scope or validity of the arbitration agreement[]' [] is about as 'clear and unmistakable' as language can get, meeting the standard we have followed." *Id.* at 11.[12]

*Amendments to AAA Rules.* Plaintiffs' contention that the delegation provision is unenforceable because the AAA Rules have been amended over time also lacks merit because the delegation provision has existed in *all* versions of the AAA Rules since DraftKings implemented its arbitration provision in July 2014. The delegation provision upheld in *Awuah* was incorporated by a clause stating that "'arbitration shall be in accordance with the *then*

---

[11] Plaintiffs' claim that enforcing a delegation provision incorporated by reference "would be in direct contravention of the high standard holdings of *First Options* and *Shank/Balfour Beatty*" (Opp. 17) is nonsensical given that *Awuah* was decided *after* those cases and in fact cites the *First Options* decision. *Awuah I*, 554 F.3d at 10.

[12] Plaintiffs' attempt to discredit *Awuah* because it was issued "pre-*Granite Rock*" is unavailing because *Granite Rock* involved a formation challenge (which, for the reasons discussed above, Plaintiffs have not validly made) and had nothing to do with the enforceability of a delegation provision. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 304 (2010) ("This formation date question requires judicial resolution.").

*current* Rules of the American Arbitration Association'"[13]—nearly identical language to DraftKings' Terms of Use.[14]

  ***Conflicts.***  Plaintiffs contend that the delegation provision is inconsistent with the Terms of Use's forum selection clause specifying Massachusetts courts and its severability clause preserving other provisions of the Terms of Use if any provision is deemed invalid by a court. Opp. 20.  As discussed *supra* Part II, supposed conflicts with other contract provisions do not nullify the enforceability of the delegation provision because, like the arbitration provision, it is severable under federal law from the remainder of the contract and must be analyzed on its own.

  Plaintiffs badly misinterpret a pre-*Rent-A-Center* Sixth Circuit case to argue that "[t]he severability rule does not require the Court to treat the arbitration provision and delegation clause as distinct contracts—separate from the remainder of the Terms of Use."  Opp. 19.  That case simply stands for the unremarkable proposition that although arbitration provisions must be "examined 'separate' from the overall contract at issue for the limited purpose of determining arbitrability," such provisions do not require separate consideration to be enforceable.[15] Moreover, the Supreme Court eliminated any doubt as to severability in *Rent-A-Center*, holding: "An agreement to arbitrate a gateway issue is simply an ***additional, antecedent agreement*** the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."  561 U.S. at 70 (emphasis added).

  Courts have expressly held that contractual references to "courts" do not invalidate delegation provisions.  *See Fallo v. High-Tech Inst.*, 559 F.3d 874, 879 (8th Cir. 2009) (reference

---

[13] *Awuah I*, 554 F.3d at 9 (emphasis added).

[14] *See* Dent Decl. Ex. C at 12 (arbitrations shall be "in accordance with [the AAA's] then governing rules and procedures, including the Supplementary Procedures for Consumer-Related Disputes").

[15] *Glazer v. Lehman Bros.*, 394 F.3d 444, 452-53 (6th Cir. 2005) ("*Prima Paint* clearly requires courts to separately examine arbitration clauses.").

to "court costs" did not conflict with intent to delegate because "a party may seek to have the arbitrator's order confirmed, modified or vacated in a court").[16]   These cases accord with the FAA's mandate that courts "resolve any doubts concerning the scope of arbitrable issues in favor of arbitration," *Laughton v. CGI Tech. & Solutions, Inc.*, 602 F. Supp. 2d 262, 264 (D. Mass. 2009), and the requirement under Massachusetts law that courts "give[] a reasonable meaning to all of the provisions of a contract," *Jacobs v. U.S. Fid. & Guar. Co.*, 627 N.E.2d 463, 464 (Mass. 1994).   References to courts are unremarkable because the Terms of Use state that some claims are *not* subject to arbitration—namely, disputes in small claims court.  Dent. Decl. Ex. C at 12.

**Boilerplate.**   Finally, Plaintiffs' argument that the delegation clause is unenforceable because of "the difficulties a consumer would have in locating the delegation clause in the AAA rules" (Opp. 21) fails.  *Ryan v. Delbert Services Corporation*, on which Plaintiffs rely, did find a delegation provision unenforceable, but not because it was obscured among boilerplate—to the contrary, the court noted that "boilerplate in consumer contracts is routinely enforceable— modern commerce depends upon it."  No. 5:15-CV-05044, 2016 WL 4702352, at *5 (E.D. Pa. Sept. 8, 2016).  Rather, the court found the provision unenforceable because of a "choice of no law" clause providing that "the arbitrator … would only 'apply the laws of the Cheyenne River Sioux Tribal Nation.'"  *Id.* at *4.  This "wholesale waiver of federal and state law thus doom[ed] both the delegation provision and the arbitration clause, but for different reasons.  … As applied to the delegation provision, it would prevent Ryan from challenging the validity of an arbitration agreement that forbids the assertion of her statutory rights, effectively allowing Delbert to insulate an unenforceable arbitration clause from attack."  *Id.* at *5 (citations, quotation marks,

---

[16] *See also Hill v. Anheuser-Busch InBev Worldwide, Inc.*, No. CV 14-6289, 2014 WL 10100283, at *4-5 (C.D. Cal. Nov. 26, 2014); *Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 51 F. Supp. 3d 713, 720 (N.D. Ill. 2014).

and alternations omitted).[17]  By contrast, DraftKings' Terms of Use are governed by Massachusetts law, and there is nothing preventing an arbitrator from applying that law to Plaintiffs' challenges to the arbitration agreement or the Terms of Use as a whole.

Plaintiffs' complaint that the AAA Rules were not separately provided to users is undercut by *Awuah*, where the First Circuit upheld a delegation provision incorporated only by reference to the AAA Rules with no requirement that the rules be provided.  *Awuah I*, 554 F.3d at 9.  Plaintiffs do not challenge this holding other than to argue that *Awuah* was decided "pre-*Granite Rock*," which, as explained above, had nothing to do with a delegation provision.

Plaintiffs' remorse about the contract to which they agreed cannot justify their after-the-fact challenges to the delegation provision—none of which was mentioned in their complaint, and none of which has a valid basis in law.

## IV.    PLAINTIFFS' CHALLENGES TO THE VALIDITY OF THE ARBITRATION PROVISION MUST BE ARBITRATED AND ARE BASELESS.

Plaintiffs challenge the arbitration provision itself on several grounds: (1) conflict with the forum selection clause; (2) conflict with RICO; (3) fraud; and (4) illusoriness.  All of these are threshold arbitrability challenges that Plaintiffs agreed, *via* the delegation provision, to arbitrate.  *See supra* Part III.  The delegation provision makes this case different from *every* case Plaintiffs cite in this section of their brief: none of the courts considering arbitrability challenges did so where the parties had agreed to delegate threshold issues to an arbitrator.  This Court should not disregard the valid delegation provision and consider the merits of these challenges simply because Plaintiffs have briefed them.  But even if the delegation provision did not exist,

---

[17] Also contrary to Plaintiffs' position, *Ryan* emphasized that "the fact that the arbitration clause cannot be enforced does not necessarily mean that the delegation clause contained in the arbitration clause is unenforceable as well. Under *Rent-A-Center*, the delegation provision must be severed from the arbitration provision and considered on its own merits, free from any defect that may taint the larger arbitration clause or the contract as a whole." *Id.* at *4.

none of Plaintiffs' objections to the arbitration provision would hold water.

**Conflict.** Plaintiffs claim the arbitration provision "cannot be reconciled" with the forum selection clause, which provides that disputes "shall be decided exclusively by a court of competent jurisdiction located in Suffolk County, Massachusetts." Opp. 22. This is the same challenge Plaintiffs invoke with respect to the delegation provision, and it fails for the same reasons: first, the severability doctrine requires that the arbitration provision be enforced as a separate agreement; and second, no conflict exists because (1) arbitral rulings may be challenged in court and (2) claims may be brought in small claims court. *See* Part III, *supra*. Even if a conflict did exist, Plaintiffs are incorrect that the doctrine of *contra proferentem* requires that the adjudicator (here, an arbitrator) disregard the well-established principle that ambiguities in arbitration agreements must be resolved in favor of arbitration. Opp. 23; *see Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) ("[A]mbiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.") (citations and quotation marks omitted). *Paul Revere Variable Annuity Insurance Co. v. Kirschhofer*, on which Plaintiffs rely, held at most that both canons of construction should be considered. 226 F.3d 15, 25 (1st Cir. 2000). However, invalidating the arbitration provision would violate the "cardinal principle of contract construction: that a document should be read to give effect to all its provisions and to render them consistent with each other." *Mastrobuono*, 514 U.S. at 63.

**RICO Rights.** Plaintiffs argue that the arbitration provision prevents them from vindicating their right to treble damages under RICO. Opp. 23. As an initial matter, a "vindication of statutory rights" challenge does not raise a question of arbitrability unless the proponent can "show both that a direct conflict exists and that the conflict, without doubt, must be resolved in his favor. If an ambiguity exists, the arbitrator—not the court—must decide the

question." *Escobar-Noble v. Luxury Hotels Int'l of Puerto Rico, Inc.*, 680 F.3d 118, 124 (1st Cir. 2012) (citations omitted).  Therefore, *even in the absence of a delegation provision*, this challenge must be arbitrated if there is *any* ambiguity as to whether a conflict exists.  *Id.*

The only damages limitation in DraftKings' arbitration provision is that "[t]he arbitrator shall not have authority to award punitive damages."  Dent Decl. Ex. C at 13.[18]  In *PacifiCare Health Systems, Inc. v. Book*, the Supreme Court rejected the argument that an arbitration provision's prohibition on punitive damages conflicted with RICO's treble damages—the exact challenge Plaintiffs raise here.  538 U.S. 401, 405 (2003).  The Court held that "the preliminary question whether the remedial limitations at issue here prohibit an award of RICO treble damages is not a question of arbitrability," *id.* at 407, because there is ambiguity as to whether a punitive damages prohibition would preclude treble damages under RICO, which are "remedial in nature," *id.* at 405-06.  The Court cautioned that "we should not, on the basis of 'mere speculation' that an arbitrator might interpret these ambiguous agreements in a manner that casts their enforceability into doubt, take upon ourselves the authority to decide the antecedent question of how the ambiguity is to be resolved."  *Id.* at 406-07.

Plaintiffs' other case, *Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006), Opp. 24, is inapposite.  Indeed, *Kristian* noted that the case was "[u]nlike the situation in *PacifiCare*" because the contract at issue explicitly excluded treble damages, creating a direct conflict with RICO.  *Kristian*, 446 F.3d at 45.

---

[18] Although Plaintiffs quote purportedly conflicting language from a separate section in the Terms of Use entitled "Limitation of Liability" (Opp. 24), that provision is severable from the arbitration provision for purposes of assessing arbitrability and, in any case, applies to "AN ACTION OF CONTRACT, NEGLIGENCE, [OR] STRICT LIABILITY TORT"—not to a statutory claim. Dent Decl. Ex. C at 11.  The scope of this provision accords with Massachusetts law, which permits a contractual party to limit liability resulting from negligence but not from the violation of a statutory duty.  *See Cormier v. Cent. Mass. Chapter of Nat. Safety Council*, 620 N.E.2d 784, 786 (Mass. 1993); *Henry v. Mansfield Beauty Acad., Inc.*, 233 N.E.2d 22, 24 (Mass. 1968).  Because this limitation of liability does not apply to Plaintiffs' RICO claims, it cannot prevent Plaintiffs from vindicating any statutory right.

*Fraud.*  Plaintiffs' argument that DraftKings used its arbitration provision to further a scheme to defraud consumers is facially absurd.  In *Garten v. Kurth*, on which Plaintiffs rely, even allegations that the defendant made threats "regarding his experience with arbitration and the costs to Plaintiffs of proceeding in arbitration" were not "sufficient to establish a 'substantial relationship' between the arbitration provision and the fraud."  265 F.3d 136, 143-44 (2nd Cir. 2001) (compelling arbitration).  Plaintiffs do not offer a single "particularized fact" in support of an alleged scheme; indeed, they do not allege any conduct other than the actions DraftKings and FanDuel have taken to defend this lawsuit.  Seeking to prevent Plaintiffs from evading their contractual obligations—including the contractual obligations of Plaintiffs who chose to bring claims against *DraftKings* arising out of their use of *FanDuel's* website and therefore subject to its Terms of Use—is not a fraudulent scheme.

Plaintiffs' contention that DraftKings fraudulently induced them to enter into the arbitration provision is similarly baseless.  To establish fraudulent inducement, Plaintiffs must show that DraftKings "made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage."  *Kennedy v. Josephthal & Co.*, 814 F.2d 798, 805 (1st Cir. 1987) (citations omitted).  Plaintiffs do not identify *any* representation that DraftKings made regarding its Terms of Use, let alone the arbitration provision specifically. Plaintiffs' claim that the arbitration provision was difficult to understand cannot establish fraudulent inducement or prevent enforcement of the agreement.  *See supra* Part I.

*Illusoriness.*  Plaintiffs argue that arbitration is not a "real" remedy because arbitration is expensive, noting that "DraftKings does not provide any cost-shifting mechanism" and "requires the arbitration to take place in Suffolk County, Massachusetts."  Opp. 28-29.  Again, Plaintiffs'

supporting cases do not involve delegation provisions.  But even setting that aside, Plaintiffs cannot meet the standard for illusoriness because they do not even argue—let alone establish— that arbitration would deprive them of their right to pursue their claims.  In *American Express Co. v. Italian Colors Restaurant*, the Supreme Court explained that "the FAA's command to enforce arbitration agreements trumps any interest in ensuring the prosecution of low-value claims."  133 S. Ct. 2304, 2312 (2013) (quoting *Concepcion*, 563 U.S. at 351).  The Court held that, even though pursuing claims individually might cost $1 million for a maximum recovery of $38,549, plaintiffs were bound to arbitrate because "the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy."  *Id.*[19]  Moreover, DraftKings provides the option of small claims court as opposed to arbitration for such purportedly low-value claims.

Neither case on which Plaintiffs rely applies here.  The dicta in *Awuah* that Plaintiffs cite simply noted that an arbitration provision could be invalid if the plaintiff made a showing that the costs outweigh the expected recovery.  That supposition, however, was expressly foreclosed by the Supreme Court's later decisions in *Amex* and *Concepcion*.[20]  Plaintiffs' other case, *Saravia v. Dynamex, Inc.*, 310 F.R.D. 421 (N.D. Cal. 2015), cited neither *Concepcion* nor *American Express* and involved the AAA **Commercial** Arbitration Rules, which have a more onerous cost structure than the AAA Rules at issue here.  *Damato*, 2013 WL 3968765, at *12.

Finally, Plaintiffs' implication that the arbitration provision prevents them from pursuing claims on a class-wide basis rings hollow, as their claims are not amenable to class certification

---

[19] *Accord Cullinane*, 2016 WL 3751652, at *10; *Feeney v. Dell, Inc.*, 993 N.E.2d 329, 330-31 (Mass. 2013).

[20] Even when the *Awuah* standard was still good law, the First Circuit noted that "the standard for such a showing of illusoriness would also be high—all formal dispute resolution involves costs and inconvenience."  Plaintiffs offer no evidence that arbitration is an illusory remedy under this standard, especially given that the AAA's Consumer Arbitration Rules impose fewer costs than filing a case in federal court.  *Damato*, 2013 WL 3968765, at *12.

because individualized inquiries predominate.  Plaintiffs assert dozens of different—and conflicting—legal theories that defeat any semblance of commonality.  For example, they assert claims for breach of the Terms of Use (Compl. ¶¶ 667-73) while simultaneously alleging that the Terms of Use are void as illegal (*e.g.*, *id.* ¶ 709).  These fundamental conflicts, and the fact that Plaintiffs' claims hinge on individual reliance on DraftKings' advertisements and statements, undercut any argument that Plaintiffs are entitled to class treatment.  *See supra* n.6.

## V.   DRAFTKINGS' TERMS OF USE BIND THE FAMILY MEMBER PLAINTIFFS.

The Family Member Plaintiffs seek to recover losses arising from the use of DraftKings' website by relatives who were registered DraftKings users, invoking "a right to relief based on their status as family members."  Opp. 31.[21]  Plaintiffs themselves assert that this "right of relief" derives from alleged "gambling contracts"—*i.e.*, the Terms of Use agreement, which their relatives signed—which they claim was "void at formation because its purpose was to engage in illegal gambling" (Opp. 10-12).[22]  The Family Member Plaintiffs' attempt to benefit from a contract (by recovering losses) while eschewing the contract's obligations is precisely what "direct benefits" estoppel prevents.  *Walker v. Collyer*, 9 N.E.3d 854, 861-63 (Mass. App. Ct. 2013).  Plaintiffs' exploitation of the Terms of Use could not be more direct: they seek to assume the contractual right to recover the signatory's losses.  *Id.* at 863.  These Plaintiffs must also be bound to the contract's obligations; their claims must be arbitrated.[23]

---

[21] Those relatives are themselves named Plaintiffs seeking recovery for their own losses.  Because the relevant laws permit family members to sue *only* if the loser does not, the Family Member Plaintiffs' claims fail on their face.  *See* Ga. Code Ann. § 13-8-3(b); Ky. Rev. Stat. Ann.§ 372.040; N.M. Stat. Ann. § 44-5-3; Tenn. Code Ann. § 29-19-105.

[22] Compl. ¶¶ 714-15 ("To state a claim against Defendants under O.C.G.A. §13-8-3, Family Member Hodge must allege that a 'gambling contract,' which was supported by a 'gambling consideration,' existed between the parties. … [T]here was a "gambling contract" *between Defendants, on the one hand, and DFS Player Hodge*" (emphasis added)); *see also id.* ¶¶ 723, 727 (Kentucky), ¶¶ 734, 737 (Tennessee), ¶¶ 741, 747 (New Mexico).

[23] DraftKings does not dispute that this Court may consider the question of whether the Family Member Plaintiffs are bound to the Terms of Use in the first instance (*see* Opp. 30 n.16), but that is a question of formation, not arbitrability.  All arbitrability and merits issues must be arbitrated.

## VI.    FANDUEL'S TERMS OF USE BIND THE CROSSOVER PLAINTIFFS.[24]

The Crossover Plaintiffs "assert civil conspiracy claims against DraftKings arising from their use of FanDuel's website." Opp. 33 n.17.  This admission alone establishes that "the merits of [the] issue between the parties [i]s bound up with a contract binding one party and containing an arbitration clause" such that Plaintiffs must be estopped from resisting arbitration. *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004) (citations omitted).  In *JLM*, the court had "no difficulty" finding that the plaintiffs' claim that they entered into contracts "containing allegedly inflated price terms" caused by the conduct of non-signatories was "undeniably intertwined" with those contracts. *Id.* at 178.  Similarly, the Crossover Plaintiffs' claim that they incurred losses on FanDuel's website caused by DraftKings' conduct is undeniably intertwined with FanDuel's Terms of Use, which undisputedly govern Plaintiffs' use of that website.[25]  These claims—and the Crossover Plaintiffs' relationship to DraftKings— would not exist but for their contract with FanDuel.[26]  Indeed, Plaintiffs allege that FanDuel's contests were the very target of the purported conspiracy. *E.g.*, Compl. ¶ 413.

## CONCLUSION

For the foregoing reasons and the reasons discussed in DraftKings' opening brief, this Court should compel arbitration as to all Plaintiffs.

---

[24] Plaintiffs do not (and cannot) rebut the fact that Crossover Plaintiffs who are also DraftKings users are independently bound to arbitrate by DraftKings' Terms of Use.  DK Mot. 18.

[25] Plaintiffs' reliance on *Denney v. Jenkens & Gilchrist*, 412 F. Supp. 2d 293 (S.D.N.Y. 2005), and *Stechler v. Sidley, Austin Brown & Wood*, 382 F. Supp. 2d 580 (S.D.N.Y. 2005), is misplaced because both (1) predate the Second Circuit's decision in *Sokol Holdings*, and (2) rely heavily on *JLM Industries*—which supports estoppel.

[26] *See Gov't Emps. Ins. Co. v. Grand Med. Supply, Inc.*, No. 11 Civ. 5339, 2012 WL 2577577, at *4 (E.D.N.Y. July 4, 2012) (compelling arbitration because contract was "the sole reason that plaintiffs have any relationship with" non-signatory).

Dated: January 30, 2017

Respectfully submitted,

/s/ Damien Marshall

Damien Marshall (*pro hac vice*)
Leigh M. Nathanson (*pro hac vice*)
Benjamin Margulis (*pro hac vice*)
Thomas H. Sosnowski
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
(212) 446-2300
dmarshall@bsfllp.com
lnathanson@bsfllp.com
bmargulis@bsfllp.com
tsosnowski@bsfllp.com

Ingrid S. Martin
COLLORA LLP
100 High Street
Boston, MA 02110
(617) 371-1022
imartin@collorallp.com

*Attorneys for Defendant DraftKings, Inc.*

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Defendant DraftKings, Inc. respectfully requests oral argument on this motion.  Oral argument would enable DraftKings to address any questions that the Court may have regarding arguments raised by the parties in their briefing.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I, Damien Marshall, hereby certify pursuant to Local Rule 7.1(a)(2) that counsel for Defendant DraftKings, Inc. conferred with counsel for Plaintiffs on numerous occasions in person and via telephone in an attempt to resolve the issue presented by this motion, but were unable to do so.  Further, in an attempt to narrow the scope of this motion, and in line with this Court's request, counsel for Defendant DraftKings, Inc. filed a Statement Regarding Plaintiffs for Whom DraftKings Will Not Move to Compel Arbitration (ECF No. 311).

/s/ Damien Marshall

## CERTIFICATE OF SERVICE

I, Damien Marshall, hereby certify that on this 30th day of January 2017, this document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), pursuant to Local Rule 5.4(C).

/s/ Damien Marshall