# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: DAILY FANTASY SPORTS LITIGATION | 1:16-md-02677-GAO |

## DEFENDANT FANDUEL, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

DAVID F. McDOWELL
DMcDowell@mofo.com
BENJAMIN DAVID WILLIAMS
BWilliams@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Suite 6000
Los Angeles, CA 90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

KAI S. BARTOLOMEO
Kbartolomeo@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive Suite 100
San Diego, CA 92130-2040
Telephone: (858) 720-5100
Facsimile: (858) 720-5125

Attorneys for Defendant
FanDuel, Inc.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 1

    A.    The Parties Entered into a Valid, Binding Agreement to Arbitrate. ...................... 1

        1.    Plaintiffs Assented to the Terms. ............................................................... 1

        2.    Plaintiffs' "Formation" Arguments of "Illegality" and "Illusoriness" Are Enforcement Defenses for the Arbitrator to Decide. ....................................................................................................... 6

    B.    The Parties Delegated Gateway Issues of Arbitrability to the Arbitrator. ............. 8

        1.    Plaintiffs' "Textual" Argument Has No Merit. .......................................... 9

        2.    Plaintiffs' "Format" Argument Also Fails. .............................................. 11

    C.    Plaintiffs' Challenges to the Arbitration Provision Are for the Arbitrator. ......... 11

    D.    Non-Signatory Plaintiffs Also Are Obligated to Arbitrate Their Claims. ........... 13

        1.    Family Member Plaintiffs. ....................................................................... 13

        2.    DraftKings Plaintiffs. .............................................................................. 14

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*5381 Partners LLC v. Shareasale.com, Inc.*,
   No. 12-CV-4263(JFB)(AKT), 2013 WL 5328324 (E.D.N.Y. Sept. 23, 2013) ........................2

*Al-Sullami v. Broskie*,
   40 A.D.3d 1021 (N.Y. App. Div. 2007) .................................8

*Artache v. Goldin*,
   133 A.D.2d 596 (N.Y. App. Div. 1987) .................................6

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) .................................5, 11

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) .................................6

*Awuah v. Coverall N. Am., Inc.*,
   554 F.3d 7 (1st Cir. 2009) .................................8

*Baldeo v. Darden Rests., Inc.*,
   No. 04-CV-2185(JG), 2005 WL 44703 (E.D.N.Y. Jan. 11, 2005) .........................11

*Barrasso v. Macy's Retail Holdings, Inc.*,
   No. 1:15-cv-13098-ADB, 2016 WL 1449567 (D. Mass Apr. 12, 2016) .................................7

*Bassett v. Elec. Arts Inc.*,
   No. 13-CV-04208(MKB)(SMG), 2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015) ..................2

*Berkson v. Gogo LLC*,
   97 F. Supp. 3d 359 (E.D.N.Y. 2015) .................................4, 5

*Brum v. City of Niagara Falls*,
   145 A.D.2d 928 (N.Y. App. Div. 1988) .................................6

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006) .................................6, 7

*Cobarruviaz v. Maplebear, Inc.*,
   143 F. Supp. 3d 930 (N.D. Cal. 2015) .................................10

*Cogent Computer Sys., Inc. v. Turbochef Techs., Inc.*,
   Civ. A. 06-280S, 2008 WL 219343 (D.R.I. Jan. 24, 2008) .................................1

*Contec Corp. v. Remote Sol., Co., Ltd.*,
  398 F.3d 205 (2d Cir. 2005)....................................................................................9, 15

*Crawford v. Beachbody, LLC*,
  No. 14cv1583-GPC(KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014)................................2

*Cullinane v. Uber Techs., Inc.*,
  C.A. No. 14-14750-DPW, 2016 WL 3751652 (D. Mass. July 11, 2016),
  *appeal filed*, No. 16-2023 (1st Cir. Aug. 16, 2016).........................................................4, 5, 8

*Curry v. Volt Info. Scis., Inc.*,
  07 CIV. 7158 (DLC), 2008 WL 719214 (S.D.N.Y. Mar. 18, 2008).........................................7

*Damato v. Time Warner Cable, Inc.*,
  No. 13-CV-994(ARR)(RML), 2013 WL 3968765 (E.D.N.Y. July 31, 2013).........................7

*David L. Threlkeld & Co., Inc. v. Metallgesellschaft, Ltd.*,
  923 F.2d 245 (2d Cir. 1991)...........................................................................................7

*Defillipis v. Dell Fin. Servs.*,
  No. 3:14-CV-00115, 2016 WL 394003 (M.D. Pa. Jan. 29, 2016)...........................................2

*Denney v. Jenkens & Gilchrist*,
  412 F. Supp. 2d 293 (S.D.N.Y. 2005)...............................................................................15

*Escobar-Noble v. Luxury Hotels Int'l of Puerto Rico, Inc.*,
  680 F.3d 118 (1st Cir. 2012) ..........................................................................................12

*In re Facebook Biometric Info. Privacy Litig.*,
  Case No. 15-cv-03747-JD, 2016 WL 2593853 (N.D. Cal. May 5, 2016) ................................2

*Fallo v. High-Tech Inst.*,
  559 F.3d 874 (8th Cir. 2009) ...........................................................................................9

*In re Flintlock Constr. Servs., LLC. v. Weiss*,
  122 A.D.3d 51 (N.Y. App. Div. 2014) ...............................................................................7

*Fteja v. Facebook, Inc.*,
  841 F. Supp. 2d 829 (S.D.N.Y. 2012)..........................................................................2, 3, 4

*Grand Wireless, Inc. v. Verizon Wireless, Inc.*,
  748 F.3d 1 (1st Cir. 2014)..............................................................................................11

*Hill v. Anheuser-Busch InBev Worldwide, Inc.*,
  No. CV 14-6289 PSG, 2014 WL 10100283 (C.D. Cal. Nov. 26, 2014)..................................9

*Katz v. Feinberg*,
  167 F. Supp. 2d 556 (S.D.N.Y. 2001)................................................................................9

*Katz v. Feinberg*,
  290 F.3d 95 (2d Cir. 2002)......................................................................................9

*Kristian v. Comcast Corp.*,
  446 F.3d 25 (1st Cir. 2006) ................................................................................13

*Lismore v. Société Générale Energy Corp.*,
  11 CIV. 6705 AJN, 2012 WL 3577833 (S.D.N.Y. Aug. 17, 2012)..........................9

*Lloyd Cap. Corp. v. Pat Henchar, Inc.*,
  603 N.E.2d 246 (N.Y. 1992)...................................................................................6

*Machado v. System4 LLC*,
  28 N.E.3d 401 (Mass. 2015) ................................................................................14

*McKenna Long & Aldridge, LLP v. Ironshore Specialty Ins. Co.*,
  Nos. 14-cv-6633(KBF), 14-cv-6675(KBF), 2015 WL 144190 (S.D.N.Y. Jan.
  12, 2015) .............................................................................................................13

*Meyer v. Kalanick*,
  No. 15 Civ. 9796, 2016 WL 4073071 (S.D.N.Y. July 29, 2016), *appeals filed*,
  Nos. 16-2750 & 16-2752 (2d Cir. Aug. 5, 2016)................................................5, 6

*Mohamed v. Uber Techs., Inc.*,
  Nos. 15-16178, 15-16181, *et al.*, --- F.3d ----, 2016 WL 7470557 (9th Cir.
  Dec. 21, 2016).......................................................................................................8

*Money Mailer, LLC v. Brewer*,
  No. C15-1215RSL, 2016 WL 1393492 (W.D. Wash. Apr. 8, 2016), *appeal
  filed*, No. 16-35386 (9th Cir. May 6, 2016) ......................................................9, 10

*MQDC, Inc. v. Steadfast Ins. Co.*,
  No. 12-CV-1424(ERK)(MDG), 2013 WL 6388624 (E.D.N.Y. Dec. 6, 2013) .........7

*Neuman v. Pike*,
  456 F. Supp. 1192 (S.D.N.Y. 1978), *aff'd in part, rev'd in part*, 591 F.2d 191
  (2d Cir. 1979)........................................................................................................6

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ...............................................................................2

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016)...................................................................................1

*PacifiCare Health Sys., Inc. v. Book*,
  538 U.S. 401 (2003)........................................................................................12, 13

*Pla-Fit Franchise, LLC v. Patricko, Inc.*,
   No. 13-CV-489, 2014 WL 2106555 (D.N.H. May 20, 2014).....................................1

*Rent–A–Center, W., Inc. v. Jackson*,
   561 U.S. 63 (2010)............................................................................................7

*Salehpoor v. Shahinpoor*,
   358 F.3d 782 (10th Cir. 2004) .........................................................................3

*Schachter v. Lester Witte & Co.*,
   52 A.D.2d 121 (N.Y. App. Div. 1976), *aff'd*, 364 N.E.2d 840 (N.Y. 1977) ...........6

*Schnabel v. Trilegiant Corp.*,
   697 F.3d 110 (2d Cir. 2012)..............................................................................3

*Selden v. Airbnb, Inc.*,
   No. 16-cv-00933 (CRC), 2016 WL 6476934 (D.D.C. Nov. 1, 2016) ...............3, 14

*SOHC, Inc. v. Zentis Sweet Ovations Holding LLC*,
   No. 14-CV-2270(JMF), 2014 WL 5643683 (S.D.N.Y. Nov. 4, 2014)...................7

*Southland Corp. v. Keating*,
   465 U.S. 1 (1984)..............................................................................................7

*Standardbred Owners Ass'n, Inc. v. Yonkers Raceway, Inc.*,
   220 N.Y.S.2d 649 (N.Y. App. Div. 1961) .........................................................7

*Starke v. Gilt Groupe, Inc.*,
   13 Civ. 05497(LLS), 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014)................1, 2, 4

*United States v. Hair*,
   178 F. App'x 879 (11th Cir. 2006) ...................................................................3

*Vargas v. Delivery Outsourcing, LLC*,
   Case No. 15-cv-03408-JST, 2016 WL 946112 (N.D. Cal. Mar. 14, 2016) ...........9

*Veale v. Town of Marlborough*,
   No. CIV. 92-355-SD, 1994 WL 263700 (D.N.H. Apr. 11, 1994) ...........................6

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
   489 U.S. 468 (1989)...........................................................................................5

*Wal-Mart Stores, Inc. v. Helferich Pat. Licensing, LLC*,
   51 F. Supp. 3d 713 (N.D. Ill. 2014) ...................................................................9

*Walker Mem'l Baptist Church v. Saunders*,
   35 N.E.2d 42 (N.Y. 1941)...................................................................................6

*Whitt v. Prosper Funding LLC*,
    No. 1:15-cv-136-GHW, 2015 WL 4254062 (S.D.N.Y. July 14, 2015)....................................2

*Zaltz v. JDATE*,
    952 F. Supp. 2d 439 (E.D.N.Y. 2013) ................................................................................2, 4

**Other Authority**

N.Y. Prac., Contract Law § 7:2 (Apr. 2015).....................................................................................6

2015 N.Y. Senate Bill No. 8153, 238th Legislative Session (Jun. 14, 2016) ................................6

## INTRODUCTION

Plaintiffs offer up every attorney-created argument imaginable in an effort to avoid the clear terms of their agreement with FanDuel.  Cutting through the noise, Plaintiffs' arguments collapse under the core, undisputed facts and controlling case law.  Plaintiffs do not dispute how FanDuel's registration process works—the type of process that federal courts have approved time and again.  They do not dispute that they each completed that registration process.  And, crucially, Plaintiffs do not dispute what the Terms say.  Neither Plaintiffs' assertions nor their citations to outlier, distinguishable cases change the fact that they entered into a valid contract with FanDuel that requires them to arbitrate their claims.  The Court should reject Plaintiffs' arguments and compel arbitration.

## ARGUMENT

**A.**     **The Parties Entered into a Valid, Binding Agreement to Arbitrate.**

**1.**     **Plaintiffs Assented to the Terms.**

FanDuel's evidence shows that the parties formed a valid contract, which included an agreement to arbitrate Plaintiffs' claims.[1]  Where one party disputes whether it had actual notice[2] of an online agreement's terms, "New York courts find that binding contracts are made when the user takes some action demonstrating that they have at least constructive knowledge of the terms . . . , from which knowledge a court can infer acceptance."  *Starke v. Gilt Groupe, Inc.*, 13 Civ. 05497(LLS), 2014 WL 1652225, at *2 (S.D.N.Y. Apr. 24, 2014) (quoting *Hines v.*

---

[1] In deciding motions to compel arbitration, courts usually apply a standard similar to that used for summary judgment, which requires a court to "consider all relevant, admissible evidence submitted by the parties," including affidavits.  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002); *Cogent Computer Sys., Inc. v. Turbochef Techs., Inc.*, Civ. A. 06-280S, 2008 WL 219343, at *5 (D.R.I. Jan. 24, 2008); *but see Pla-Fit Franchise, LLC v. Patricko, Inc.*, No. 13-CV-489, 2014 WL 2106555, at *3 (D.N.H. May 20, 2014).

[2] Remarkably, Plaintiffs have submitted *no* evidence and do not allege that they lacked actual notice of FanDuel's Terms.  Indeed, Plaintiffs' submission of various arbitration opt-out notices FanDuel received from customers (and produced to Plaintiffs) implicitly acknowledges that at least some of FanDuel's website users *did* have actual notice of FanDuel's Terms.  (*See* Opp. at 30, and Ex. A, ECF Nos. 332 and 332-1.)  That some customers exercised their rights to opt out of arbitration under FanDuel's Terms demonstrates that those Terms were prominent, conspicuous, accessible, and understandable, as FanDuel demonstrates below.

*Overstock.com, Inc.*, 380 F. App'x 22, 25 (2d Cir. 2010)); *see also Whitt v. Prosper Funding LLC*, No. 1:15-cv-136-GHW, 2015 WL 4254062, at *4 (S.D.N.Y. July 14, 2015).  Acceptance requires that the offer's terms be "reasonably communicated to the party resisting enforcement." *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012) (citation and quotation marks omitted).

There is nothing unusual about this case.  FanDuel's users had to acknowledge and agree to the Terms before they were permitted to participate in FanDuel's contests.  Those Terms were presented to users next to a button they had to click before continuing.  This is a common and enforceable method of manifesting assent and, by extension, creating contracts online.  *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176-77 (9th Cir. 2014) (applying New York law and citing *Fteja* approvingly).  Indeed, numerous courts have found that website registration processes just like FanDuel's—where hyperlinked terms are presented next to a button that the user must click before continuing—demonstrate assent to those terms.  *See, e.g., Starke*, 2014 WL 1652225, at *2-3 (arbitration clause binding where consumer clicked "Shop Now" button next to statement informing him he would be bound by website's terms); *5381 Partners LLC v. Shareasale.com, Inc.*, No. 12-CV-4263, 2013 WL 5328324, at *6 (E.D.N.Y. Sept. 23, 2013) (noting that several courts enforce agreements where hyperlinked terms are "apparent to the average user"); *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 453 (E.D.N.Y. 2013) (expressing "strong[] agree[ment] with the *Fteja* court's analysis," and finding assent where a reference to website's terms "appear[ed] on the same screen as the button a prospective user must click in order to move forward in the registration process").[3]

---

[3] These are by no means isolated cases.  (*See, e.g.,* Mot. at 9 n.11, ECF No. 318 (citing cases)); *see also In re Facebook Biometric Info. Privacy Litig.*, Case No. 15-cv-03747-JD, 2016 WL 2593853, at *8 (N.D. Cal. May 5, 2016) (finding assent where plaintiff had "only to click a 'Sign Up' box with language under it that purported to put him on notice that clicking on it also constituted assent to the user agreement," the terms of which were presented by hyperlink); *Defillipis v. Dell Fin. Servs.*, No. 3:14-CV-00115, 2016 WL 394003, at *10 (M.D. Pa. Jan. 29, 2016) (hyperlink to terms next to a box customer had to click to create account provided sufficient notice); *Bassett v. Elec. Arts Inc.*, No. 13-CV-04208, 2015 WL 1298644, at *4 (E.D.N.Y. Feb. 9, 2015) (noting that "[f]ederal courts have consistently enforced clauses contained in clickwrap agreements" that could be viewed only by following a conspicuous hyperlink); *Crawford v. Beachbody, LLC*, No. 14cv1583-GPC, 2014 WL 6606563, at *3 (S.D. Cal.

There is no reason to depart from repeated sound decisions by other courts based on common, well-known methods for contracting online.  As one district court put it, "it is not too much to expect that an internet user" familiar with the "mechanics of the internet . . . would understand that the hyperlinked phrase 'Terms of Use' is really a sign that says 'Click Here for Terms of Use,'" which prompts the consumer "to examine terms of sale that are located somewhere else."  *Fteja*, 841 F. Supp. 2d at 839; *see also Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 127 (2d Cir. 2012) (modern consumers "are regularly and frequently confronted with non-negotiable contract terms, particularly when entering into transactions using the Internet").  And as another court recently observed, "[t]he act of contracting for consumer services online is now commonplace in the American economy."  *Selden v. Airbnb, Inc.*, No. 16-cv-00933 (CRC), 2016 WL 6476934, at \*5 (D.D.C. Nov. 1, 2016).  Thus, "[a]ny reasonably-active adult consumer will almost certainly appreciate that by signing up for a particular service, he or she is accepting the terms and conditions of the provider.  Notifications to that effect—be they check boxes or hyperlinks—abound."  *Id.*

Here, FanDuel's evidence—unrebutted by any evidence from Plaintiffs[4]—shows that FanDuel's Terms were prominently displayed via conspicuous hyperlinks, positioned in a key area of FanDuel's website.  The simple registration screen, which all users encountered at enrollment, contained only about 50 words, and the full terms were available by a bold-font hyperlink[5] placed on the same page as, and just below, the lone "Play Now" button all users had

---

Nov. 5, 2014) (forum selection clause binding where consumer clicked on button marked "Place Order" and hyperlink to the website's terms was just above the "Place Order" button).

[4] Plaintiffs rely, not on admissible evidence such as affidavits or authenticated exhibits, but on the mere *allegations* from their Complaint and unverified assertions of counsel.  (*See* Opp. at 2–5 (citing the operative Complaint as the only support for various "factual" assertions); *id*. at 10 (citing unauthenticated screenshots from Plaintiffs' Complaint).)  This does not meet the summary judgment standard that Plaintiffs' own opposition argues should apply.  *See Salehpoor v. Shahinpoor*, 358 F.3d 782, 786 (10th Cir. 2004) (non-moving party must go beyond mere allegations in its pleadings and provide admissible evidence).

[5] Though Plaintiffs take issue with the color of FanDuel's hyperlinked terms (Opp. at 10), they cite nothing that holds that counsel's subjective belief about what color a hyperlink should be is the standard for conspicuousness.  Indeed, that is not the test.  *See United States v. Hair*, 178 F. App'x 879, 882 n.3 (11th Cir. 2006) (a hyperlink is "usually highlighted or underlined," and "sends users who click on it directly to a new location").  FanDuel's hyperlink was displayed in a way that starkly sets it off from the surrounding text and was placed near the only

sd-693420

to click.  (*See* Kidder Decl. ¶ 8 and Exs. A, B, ECF Nos. 318-1, 318-2, 318-3.)  The sentence "[b]y signing up, you confirm that you are at least 18 years of age and agree to the **Terms of Use**" was visible without scrolling and was set off from the rest of the screen by ample negative space and contrasting colors.  (*Id.*)  One click of the mouse brought the users to the full Terms, which informed users at the very top that the agreement is "SUBJECT TO BINDING ARBITRATION."  (*Id.*, Exs. C, D, ECF Nos. 318-4, 318-5.)

By completing registration and clicking the "Play Now" button, Plaintiffs undeniably took "some action demonstrating that they have at least constructive knowledge of the terms of the agreement."  *Starke*, 2014 WL 1652225, at *2 (citation and quotation marks omitted); *see also Zaltz*, 952 F. Supp. 2d at 453; *Fteja*, 841 F. Supp. 2d at 835, 841.  Under the great weight of authority, this is enough for this Court to find that Plaintiffs assented to FanDuel's Terms.

Indeed, FanDuel's registration page is similar to, or even clearer than, the analogous pages in other cases.  For example, in *Starke*, because the registration screen directed plaintiff "exactly where to click in order to review th[e] terms, [] his decision to click the "Shop Now" button represent[ed] his assent to them."  2014 WL 1652225, at *3.  The same is true of FanDuel's analogous registration page.  (*Compare* App'x at 2 [*Starke*] *with* Kidder Decl. Exs. A, B; *see also* App'x at 3 [*Fteja*].)[6]

Plaintiffs rely on two anomalous, easily distinguishable cases for their contention that a contract was never formed.  Other courts have already questioned one of those cases, *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359 (E.D.N.Y. 2015), cited throughout Plaintiffs' opposition.  One court repudiated the case for the way it "obliquely disregards the customary contract analysis applied by the vast majority of courts" in determining whether website users had reasonable

---

button Plaintiffs could click to continue.  (Kidder Decl. ¶¶ 6–8, Exs. A, B.)  FanDuel's presentation of the Terms easily satisfies the conspicuousness requirement.

[6] The registration pages in *Starke* and *Fteja* are reproduced in the accompanying appendix from the PACER dockets of those two cases.  *See Starke*, No. 1:13-cv-05497(LLS) (S.D.N.Y. Mar. 19, 2014), ECF No. 14-1 *and Fteja*, No. 1:11-cv-00918-RJH (S.D.N.Y. Apr. 18, 2011), ECF No. 17 at 22; *see also* FanDuel's Request for Judicial Notice, filed concurrently with this reply brief.

notice of a contract's terms.  *Cullinane v. Uber Techs., Inc.*, C.A. No. 14-14750-DPW, 2016 WL

3751652, at *7 (D. Mass. July 11, 2016), *appeal filed*, No. 16-2023 (1st Cir. Aug. 16, 2016).[7]

Accepting *Berkson*'s faulty reasoning would render "otherwise legally compliant arbitration

agreements for online contracts all but impossible to enforce" by unwisely eroding "the

substance of current arbitration rules."  *Id.  Berkson* is "not the rule in the majority of

jurisdictions," including New York and Massachusetts, *see id.*, and runs counter to the "liberal

federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339

(2011) (citation and quotation marks omitted).

  *Berkson* is also factually different.  There, the defendant's website contained two "sign

in" buttons on the same registration page: one in the upper right-hand corner—untethered to

hyperlinked terms of use—and another at the bottom of the page, just below the hyperlinked

terms.  97 F. Supp. 3d at 373-74.  Unlike FanDuel's lone "Play Now" button, users in *Berkson*

could have clicked *either* "sign in" button to continue with registration.  *See id.*  It could not "be

taken for granted that [plaintiff] clicked on the 'SIGN IN' button on the lower left hand corner of

the website" (which was positioned near the hyperlinked terms) versus the "sign in" button in the

upper right-hand corner (which was not).  *Id.* at 373-74, 404.

  Plaintiffs' reliance on *Meyer* fares no better.  *See Meyer v. Kalanick*, No. 15 Civ. 9796,

2016 WL 4073071 (S.D.N.Y. July 29, 2016), *appeals filed*, Nos. 16-2750 & 16-2752 (2d Cir.

Aug. 5, 2016).  First, that case's holding likewise fails to recognize the liberal federal policy

favoring arbitration, *Concepcion*, 563 U.S. at 339, and fails to give the "due regard [that] must be

given to" that federal policy, *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,

489 U.S. 468, 476 (1989).  While the holding should be disregarded on that basis alone, the

---

[7] In *Cullinane*, the court found plaintiffs had reasonable notice of the terms of Uber's online agreement, such that a contract was formed, where a hyperlink to the terms appeared in bold, contrast lettering on the last page of the online registration screen, next to a phrase that read "By creating an Uber account, you agree to the Terms of Service & Privacy Policy."  2016 WL 3751652, at *2 (citation and quotation marks omitted).  The court noted the "language surrounding the button leading to the [terms] is unambiguous in alerting the user that creating an account will bind her to the [terms]."  *Id.* at *8.

decision is also distinguishable on its facts.  Unlike here, *Meyer*'s terms of use were not directly hyperlinked from the registration page.  *Meyer*, 2016 WL 4073071, at *4.  And the arbitration provision was mentioned only on the seventh page of a nine-page agreement, *id.* at *5, whereas FanDuel's terms include an all-caps arbitration notice on the Term's very first line.  (Mot. at 3; Kidder Decl. Exs. C & D.)

FanDuel's evidence, and the weight of authority in this jurisdiction and others, demonstrate that a binding contract was formed.

### 2.    Plaintiffs' "Formation" Arguments of "Illegality" and "Illusoriness" Are Enforcement Defenses for the Arbitrator to Decide.

Plaintiffs challenge FanDuel's Terms on two other grounds: illegality and illusoriness. Both of these arguments go to enforceability, not formation,[8] and concern the *validity* of the Terms *as a whole*.  As such, the issues are for the arbitrator to decide.  *See generally* S*chachter v. Lester Witte & Co.*, 52 A.D.2d 121, 124 (N.Y. App. Div. 1976), *aff'd*, 364 N.E.2d 840 (N.Y. 1977) (holding enforceability defenses such as "fraud, duress and lack of mutuality are, in view of the broad arbitration clause, for the arbitrator").[9]

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), unequivocally holds that

---

[8] "Illegality is a defense to the enforcement of a contract."  28 N.Y. Prac., Contract Law § 7:2 (Apr. 2015); *see also Artache v. Goldin*, 133 A.D.2d 596, 599-600 (N.Y. App. Div. 1987) (holding that illegal parts of contract are severable from other parts); *Brum v. City of Niagara Falls*, 145 A.D.2d 928, 928-29 (N.Y. App. Div. 1988) ("There is a presumption that a contract is legal.  If a party thinks otherwise it may cancel the contract and, if sued, plead illegality as an affirmative defense."); *Lloyd Cap. Corp. v. Pat Henchar, Inc.*, 603 N.E.2d 246, 247 (N.Y. 1992) ("Illegal contracts are, as a general rule, unenforceable.").

[9] The legality of FanDuel's contests is a quintessentially merits issue—and one of the core issues in Plaintiffs' Complaint.  Courts should not "rule on the potential merits of the underlying claims" on a motion to compel arbitration.  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649-50 (1986).  Plaintiffs' contention that FanDuel's contests have already been ruled illegal under New York law is wrong.  The *temporary injunction* they refer to in their opposition was not a final merits determination on the legality of FanDuel's contests.  *See Walker Mem'l Baptist Church v. Saunders*, 35 N.E.2d 42, 47 (N.Y. 1941); *Neuman v. Pike*, 456 F. Supp. 1192, 1205 (S.D.N.Y. 1978), *aff'd in part, rev'd in part*, 591 F.2d 191 (2d Cir. 1979) (preliminary injunction "is not a final judgment."); *Veale v. Town of Marlborough*, No. CIV. 92-355-SD, 1994 WL 263700, at *3 (D.N.H. Apr. 11, 1994) ("[A] decision on a preliminary injunction does not amount to a final judgment on the merits.").  Indeed, recent New York legislation clarifies the legality of FanDuel's contests.  *See* 2015 N.Y. Senate Bill No. 8153, 238th Legislative Session (Jun. 14, 2016) ("the legislature declares that interactive fantasy sports do not constitute gambling in New York state").

where a party challenges the validity of the contract as a whole, and not just the arbitration clause, that challenge must go to the arbitrator. *Id.* at 449; *accord Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010). Similarly, "cases that apply the Supreme Court's precedents [] overwhelmingly reach the conclusion that the issue of illusoriness of the whole contract must be resolved by the arbitrator." *Damato v. Time Warner Cable, Inc.*, No. 13-CV-994(ARR), 2013 WL 3968765, at *6 (E.D.N.Y. July 31, 2013).[10]

Plaintiffs ask the Court to disregard Supreme Court precedent and other FAA cases, arguing that New York state law (not the FAA and not *Buckeye*) applies. Plaintiffs are wrong. Where, as here, the arbitration clause is within a contract "involving interstate transactions" (a reality Plaintiffs do not and cannot deny), those clauses are enforceable as a matter of federal law under the FAA. *Southland Corp. v. Keating*, 465 U.S. 1, 15-16, (1984); *see also David L. Threlkeld & Co., Inc. v. Metallgesellschaft, Ltd.*, 923 F.2d 245, 249 (2d Cir. 1991) ("[FAA] applies in federal court to diversity suits which relate to contracts involving interstate or international commerce."); *Barrasso v. Macy's Retail Holdings, Inc.*, No. 1:15-cv-13098-ADB, 2016 WL 1449567, at *4 n.3 (D. Mass Apr. 12, 2016) (same). The mere fact that the parties included a choice-of-law provision does *not* put the contract out of the FAA's, or *Buckeye*'s, reach: The FAA applies "even when a contract includes a general New York choice-of-law provision." *SOHC, Inc. v. Zentis Sweet Ovations Holding LLC*, No. 14-CV-2270(JMF), 2014 WL 5643683, at *3 n.3 (S.D.N.Y. Nov. 4, 2014); *see also MQDC, Inc. v. Steadfast Ins. Co.*, No. 12-CV-1424(ERK)(MDG), 2013 WL 6388624, at *3 (E.D.N.Y. Dec. 6, 2013) (FAA applies "even where the contract expressly states that state law governs disputes arising under the

---

[10] Plaintiffs challenge the contract as a whole, not just the arbitration agreement. (*See, e.g.*, Opp. at 16 (noting several provisions Plaintiffs allege are illusory).) Plaintiffs' "challenge must be decided by the arbitrator." *Damato*, 2013 WL 3968765, at *4; *Curry v. Volt Info. Scis., Inc.*, 07 CIV. 7158 (DLC), 2008 WL 719214, at *2 (S.D.N.Y. Mar. 18, 2008).

agreement."); *In re Flintlock Constr. Servs., LLC v. Weiss*, 122 A.D.3d 51, 54 (N.Y. App. Div. 2014) (same).[11]

## B.   The Parties Delegated Gateway Issues of Arbitrability to the Arbitrator.

Having entered into a valid agreement with FanDuel, Plaintiffs must abide by its terms, including their agreement to delegate all gateway issues of arbitrability to the arbitrator. *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 10 (1st Cir. 2009) (arbitrator decides whether the dispute is arbitrable as well as challenges "to the validity of the contract itself," where the "parties have themselves 'clearly and unmistakably [so] agreed'"). Plaintiffs now seek to avoid *that* provision by arguing that delegation was not "clear and unmistakable." (*See* Opp. at 17-23.) As discussed in FanDuel's motion, the delegation provision couldn't be clearer. First, it expressly states that:

> The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of these Terms, including, but not limited to any claim that all or any part of these Terms are void or voidable, or whether a claim is subject to arbitration.

(Kidder Decl. ¶ 9, Ex. D § 15.2.) Second, it incorporates the Commercial Rules of the American Arbitration Association, which make clear that the arbitrator decides arbitrability. (*See* Mot. at 16.) Each of these features is sufficient *independently* to constitute a clear and unmistakable delegation. *Mohamed v. Uber Techs., Inc.*, Nos. 15-16178, 15-16181, *et al.*, --- F.3d ----, 2016 WL 7470557, at *4-5 (9th Cir. Dec. 21, 2016) (as amended after denial of petition for rehearing en banc) (express delegation); *Awuah*, 554 F.3d at 9-11 (incorporation of AAA rules); *Cullinane*, 2016 WL 3751652, at *8-9. Together, they are insurmountable.

Plaintiffs do not dispute the express language of the delegation provision; nor do they contest the legal effect of incorporating the AAA's Commercial Rules. Instead, they assert that

---

[11] None of Plaintiffs' cases is to the contrary. *Standardbred Owners Ass'n, Inc. v. Yonkers Raceway, Inc.*, 220 N.Y.S.2d 649 (N.Y. App. Div. 1961), was decided 45 years before *Buckeye*, and nothing in that decision indicates that the contract involved interstate commerce or was otherwise subject to the FAA. The same is true of *Al-Sullami v. Broskie*, 40 A.D.3d 1021 (N.Y. App. Div. 2007). Neither was the question of whether an arbitrator decides arbitrability at issue in that case. *See id.*

other language in the Terms renders delegation ambiguous (Plaintiffs' "textual" argument) and that the presentation of the terms wasn't enough to put Plaintiffs on notice (Plaintiffs' "format" argument).  Both arguments fail.

### 1.     Plaintiffs' "Textual" Argument Has No Merit.

Plaintiffs contend that the clear, express language of the delegation provision is rendered ambiguous and unenforceable by the presence of a *separate* "severability" clause found *outside the arbitration provision* and that references a "court of competent jurisdiction."  Courts across the country routinely hold that separate references to "courts," like the one in the severability provision here, do not render clear and unmistakable delegation clauses ambiguous.  *See Fallo v. High-Tech Inst.*, 559 F.3d 874, 879 (8th Cir. 2009) (a reference to "court costs" in a governing law provision did not conflict with a clear and unmistakable intent to delegate because "a party may seek to have the arbitrator's order confirmed, modified or vacated in a court . . . ."); *Hill v. Anheuser-Busch InBev Worldwide, Inc.*, No. CV 14-6289 PSG, 2014 WL 10100283, at *4-5 (C.D. Cal. Nov. 26, 2014) (finding a clear and unmistakable intent to delegate, despite a provision stating that "a court [could] determine[] [whether] any provision of the [agreement] [was] invalid or unenforceable"); *Wal-Mart Stores, Inc. v. Helferich Pat. Licensing, LLC*, 51 F. Supp. 3d 713, 720-21 (N.D. Ill. 2014); *see also Contec Corp. v. Remote Sol., Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005); *Lismore v. Société Générale Energy Corp.*, 11 CIV. 6705 AJN, 2012 WL 3577833, at *5 (S.D.N.Y. Aug. 17, 2012) (compelling arbitration).

Every one of the cases Plaintiffs cite is distinguishable.  *Katz v. Feinberg*, 290 F.3d 95, 97 (2d Cir. 2002), concerned a "broadly worded arbitration clause committing resolution of all disputes to arbitration," not an express delegation provision.  As the district court decision noted, "[t]he arbitration clause and Section 2(b) of the Purchase Agreement are both silent about whether questions of arbitrability are within the province of the arbitrators."  *Katz v. Feinberg*, 167 F. Supp. 2d 556, 564 (S.D.N.Y. 2001).  Moreover, the agreement expressly committed the dispute at issue to a decision-maker other than an arbitrator.  *Katz*, 290 F.3d at 96.  Clearly, *Katz*

9

is not this case.  Similarly, *Money Mailer, LLC v. Brewer*, No. C15-1215RSL, 2016 WL 1393492, at *2 (W.D. Wash. Apr. 8, 2016), and *Vargas v. Delivery Outsourcing, LLC*, Case No. 15-cv-03408-JST, 2016 WL 946112, at *6 (N.D. Cal. Mar. 14, 2016), did not involve an express delegation provision (and, in any event, *Money Mailer* is now on appeal).[12]  *Cobarruviaz v. Maplebear, Inc.*, 143 F. Supp. 3d 930, 939-40 (N.D. Cal. 2015), also involved a delegation provision far less explicit than FanDuel's, and the matter was complicated further by the fact that the parties had taken inconsistent positions as to whether the delegation provision applied.

Moreover, the severability provision is entirely consistent with delegation.  The provision states, "If any provision of the Terms is found by a court of competent jurisdiction to be invalid, the parties nevertheless agree that the court should endeavor to give effect to the parties' intentions as reflected in the provision, and the other provisions of the Terms remain in full force and effect."  (Kidder Decl., Ex. C ¶ 16.)  Given this wording, and its placement as part of the "General Information," the "plain meaning" envisions instances in which a "court of competent jurisdiction" would be evaluating the validity or enforceability of the Terms in their entirety.  For example, a court would evaluate whether the Terms expressly permit the parties to bypass arbitration for certain types of claims (e.g., qualifying suits in small claims court, certain intellectual property claims).  Likewise, consumers who opt out are still bound by the Terms' other provision and can bring those claims in "court."  Finally, there is a separate provision that accounts for instances in which the arbitration agreement does not apply: "For any dispute not subject to arbitration you and FanDuel agree to submit to the personal and exclusive jurisdiction of and venue in the federal and state courts located in New York, NY."  (*Id.* ¶ 15.)  Here, too, a court and not an arbitrator would decide the Terms' enforceability.

It is fundamental that the Court interpret FanDuel's Terms as a whole and give a reasonable, effective meaning to all provisions.  Plaintiffs' interpretation renders the delegation

---

[12] *See* No. 16-35386 (9th Cir. appeal filed May 6, 2016).

and the severability provisions dissonant.  FanDuel's interpretation reads them in harmony.

### 2.    Plaintiffs' "Format" Argument Also Fails.

Plaintiffs' only other challenge to delegation concerns the manner in which the delegation provision is presented to FanDuel users.  According to Plaintiffs, the delegation provision is "buried" within the Terms and not "separately labeled, highlighted or bolded."  Plaintiffs do not cite to a single case mandating any heightened requirements for "calling out" a delegation provision.  Nor could they.  Such a test would establish a different rule for arbitration agreements than other contracts and would be preempted by the FAA.  *Concepcion*, 563 U.S. at 339 (barring invalidation of arbitration agreements "by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitration is at issue").

Moreover, Plaintiffs' alleged failure to notice the delegation provision does not matter.  They agreed to it just the same.  *Baldeo v. Darden Rests., Inc.*, No. 04-CV-2185, 2005 WL 44703, at *4 (E.D.N.Y. Jan. 11, 2005) (generally, "a party who signs or accepts a written contract is conclusively presumed to know its contents and to assent to them").[13]

### C.    Plaintiffs' Challenges to the Arbitration Provision Are for the Arbitrator.

Even if the Court declines to delegate to the arbitrator—as the parties expressly agreed—FanDuel has satisfied all gateway issues for enforcement of the arbitration clause itself.  *See Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 5-7 (1st Cir. 2014).  As discussed above, the parties entered into a valid agreement to arbitrate, and Plaintiffs do not dispute that their claims fall within the scope of that agreement.  Thus, Plaintiffs are left with their four attacks on the arbitration agreement.  FanDuel addresses each in turn.

**Illusoriness**.  Plaintiffs do not dispute that the agreement to arbitrate is bilateral and mutually binding.  Nor do they dispute that arbitration fees are paid for by FanDuel for claims less than $75,000.  Nevertheless, they assert that the arbitration provision is "illusory" because of

---

[13] That FanDuel bolded and highlighted various provisions, including the delegation provision, in its opening brief proves nothing.  Added emphasis for purposes of advocacy does not change the meaning of the underlying contract.

a "Limitation on liability" provision located elsewhere in the Terms, which, they argue, prevents them from recovering anything meaningful in arbitration.  Although Plaintiffs characterize it as a specific challenge to the arbitration provision, this is, in reality, a challenge to the Terms as a whole and, therefore, reserved for the arbitrator.  Nothing in the Limitation on liability provision purports to restrict the scope of FanDuel's liability *exclusively* in the context of arbitration.  The limitation applies regardless of the forum.[14]

**Fraudulent Scheme**.  Plaintiffs argue that FanDuel's arbitration clause is unenforceable because it is part of a "fraudulent scheme."  Though unclear, Plaintiffs appear to describe this "scheme" as a re-bundled version of Plaintiffs' "formation" challenge (i.e., the way in which the Terms are presented to users), combined with the very fact that FanDuel is now seeking to enforce the Terms against those who assented to them.  Plaintiffs' argument should be rejected outright.  Plaintiffs offer no facts to support this purported scheme.  To the extent Plaintiffs' fraud argument relates to their underlying claims, it is a merits issue for the arbitrator.

**Vindication**.  Plaintiffs contend that the arbitration provision is unenforceable because it does not permit them to "vindicate" their right to treble damages under RICO.[15]  This very argument was considered and rejected by the Supreme Court in *PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401, 407 (2003), which declined to find an arbitration provision's prohibition on punitive damages conflicted with RICO's treble damages.  538 U.S. at 405.  The Court held that "the preliminary question whether the remedial limitations at issue here prohibit an award of RICO treble damages is not a question of arbitrability," *id.* at 407 n.2, because there is ambiguity as to whether a punitive damages prohibition would preclude an arbitrator from awarding treble

---

[14] Further, Plaintiffs ignore multiple caveats in the provision, which make clear that the limitation applies only "TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW."  (Kidder Decl. Ex. D ¶ 9.)  Indeed, the provision expressly states in a separate paragraph that some of the "limitations may not apply."  (*Id.*)

[15] A "vindication of statutory rights" challenge does not raise a question of arbitrability unless the proponent can "show both that a direct conflict exists and that the conflict, without doubt, must be resolved in his favor.  If an ambiguity exists, the arbitrator—not the court—must decide the question."  *Escobar-Noble v. Luxury Hotels Int'l of Puerto Rico, Inc.*, 680 F.3d 118, 124 (1st Cir. 2012) (citations omitted).  Thus, Plaintiffs challenge must be arbitrated if there is *any* ambiguity as to whether a conflict exists.  *Id.*

damages under RICO, which are "remedial in nature," *id.* at 405-06.  The Court cautioned that "we should not, on the basis of 'mere speculation' that an arbitrator might interpret these ambiguous agreements in a manner that casts their enforceability into doubt, take upon ourselves the authority to decide the antecedent question of how the ambiguity is to be resolved."  *Id.* at 406-07.  Further, Plaintiffs' "vindication" argument again relies on the "limitation on liability" provision located outside of the arbitration agreement.  Thus, this is, in fact, a challenge to the Terms as a whole that must be decided by the arbitrator.[16]

**Fraudulent Inducement**.  Plaintiffs' fraudulent inducement challenge can be summarily rejected.  Plaintiffs' theory is, indisputably, a merits question regarding the contests themselves, not the arbitration provision.  Nor can Plaintiffs premise fraudulent inducement on language that is expressly stated and explained in the Terms themselves.  Lastly, Plaintiffs' assertion that FanDuel failed to disclose prior arbitration outcomes is no basis for fraud.  Plaintiffs identify no duty to disclose such information and, in any case, individual outcomes of prior arbitrations are fact-specific and have nothing to do with Plaintiffs' contractual obligations here and now.

**D.      Non-Signatory Plaintiffs Also Are Obligated to Arbitrate Their Claims.**

**1.      Family Member Plaintiffs.**

Under ordinary principles of contract law, Family Member Plaintiffs are equitably estopped from avoiding arbitration.  Their conclusory claim that they "sustained only losses" as a result of their relatives' agreement with FanDuel ignores the direct and tangible benefit they received as a consequence of that agreement.  As spouses of certain Player Plaintiffs, Family Member Plaintiffs shared in the economic winnings their spouses obtained by playing FanDuel's contests.  These winnings constituted a tangible financial benefit that flowed directly to Family

---

[16] *Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006), is inapposite because, unlike here and in *PacifiCare*, the *Kristian* contract expressly excluded <u>treble</u> damages—creating an unambiguous direct conflict with the Clayton Act. *Id.* at 44-45.  FanDuel's Terms, on the other hand, make clear that some of the limitations may not apply and also recognize that attorney's fees are available in certain cases under the AAA Rules.  (*See, e.g.*, Kidder Decl. Ex. C ¶¶ 9, 15.)  Moreover, here—and unlike *Kristian*—the presence of the delegation clause means that any threshold question of whether a conflict with RICO rendered the arbitration provision unenforceable would be reserved for the arbitrator in any event.

Member Plaintiffs as a result of their spouses' agreement with FanDuel, and are sufficient to stop them from avoiding the agreement's arbitration clause. *See McKenna Long & Aldridge, LLP v. Ironshore Specialty Ins. Co.*, Nos. 14-cv-6633, 14-cv-6675, 2015 WL 144190, at *9 (S.D.N.Y. Jan. 12, 2015) (A non-signatory "directly benefits from an agreement . . . if it enables that party to receive a tangible benefit, typically a financial" one).  Family Member Plaintiffs do not dispute that their Player Plaintiff relatives netted winnings from their FanDuel contests.  And, while they claim that they do not seek to "recover gambling winnings" from FanDuel, they do not likewise claim that they have a duty to disgorge their spouses' winnings.  Thus, they are attempting to maintain all direct economic benefits from their relatives' agreement with FanDuel, while repudiating any losses and avoiding arbitration.  The law does not countenance this "tails I win; heads you lose" approach.

Family Member Plaintiffs next attempt to avoid arbitration by claiming that they cannot be bound by the arbitration provision because they did not know about it until "recently."  This argument is without merit. *See Selden*, 2016 WL 6476934, at *5.  Indeed, Family Member Plaintiffs cite no authority to support it.  Whether they knew the exact terms of their spouses' agreement with FanDuel is irrelevant—the question is whether they received a direct benefit from the agreement.  Regardless of their knowledge of its exact terms, Family Member Plaintiffs knowingly exploited the agreement by accepting its economic benefits, which were a direct consequence of their relatives' assent to FanDuel's Terms.  Certainly, Family Member Plaintiffs do not claim knowledge of the precise terms of the agreement was necessary in order to accept its tangible benefits; by the same token, it cannot be required to accept its obligations.

### 2.  DraftKings Plaintiffs.

Similarly, DraftKings Plaintiffs are estopped from avoiding the arbitration agreement in DraftKings' Terms of Use for two reasons: (1) their civil conspiracy claims against FanDuel rely on DraftKings' Terms of Use, and (2) they allege concerted misconduct by FanDuel (a non-

14

signatory) and DraftKings (a signatory).  *See Machado v. System4 LLC*, 28 N.E.3d 401, 409 (Mass. 2015).[17]  Either reason is sufficient to require arbitration.  *Id.* at 409 n.15.

Plaintiffs admit, as they must, that the conspiracy claim is based on alleged concerted misconduct between FanDuel and DraftKings.  (*See* Opp. at 35.)  Nonetheless, they argue that DraftKings Plaintiffs are not estopped from avoiding the arbitration agreement in DraftKings' Terms of Use based solely on their assertion that "DraftKings' Terms of Use are not a component of the DraftKings Plaintiffs' conspiracy claim against FanDuel and the alleged conspiracy does not relate in any way to DraftKings's Terms of Use."  (*Id.*)  But their own characterization of the conspiracy claim belies that assertion—Plaintiffs themselves claim that the arbitration agreement in DraftKings' Terms of Use was *in furtherance of* the purported conspiracy.  (*See* Pls.' Opp. to DraftKings' Mot. at 4, ECF No. 330 ("DraftKings . . . acted in concert with [FanDuel] to allow employees to use inside information to further defraud its own customers on each other's websites. . . .  DraftKings' purported arbitration agreement was in furtherance of this fraudulent scheme through concerted activity with FanDuel.").)

DraftKings Plaintiffs cannot both rely on DraftKings' Terms of Use to establish their conspiracy claim *and* seek to avoid the arbitration agreement it contains—even the authorities Plaintiffs rely on recognize that this is the textbook situation giving rise to equitable estoppel.  *See Denney v. Jenkens & Gilchrist*, 412 F. Supp. 2d 293, 298 (S.D.N.Y. 2005) (purpose of equitable estoppel is "to prevent a plaintiff from . . . 'rely[ing] on the contract when it works to [his] advantage [by establishing the claim], and repudiat[ing] it when it works to [his] disadvantage [by requiring arbitration].'"  (citation omitted)).  DraftKings Plaintiffs therefore are required to arbitrate their claims against FanDuel.

---

[17] Plaintiffs ignore controlling Massachusetts law on this issue despite the parties' stipulation that "DraftKings' user agreements are to be interpreted in accordance with Massachusetts law."  Stipulation and [Proposed] Scheduling Order ¶ 5, ECF No. 283 (filed Sept. 28, 2016).  Plaintiffs do not dispute, however, that a non-signatory can compel a signatory to arbitrate when the signatory's claims "are intertwined with the agreement that the estopped party has signed." (Opp. at 33-34.)  Nor do they dispute that DraftKings Plaintiffs agreed to arbitrate threshold questions of arbitrability.  *See Contec Corp.*, 398 F.3d at 210-11.

sd-693420

Dated: January 30, 2017

Respectfully Submitted,

/s/ David F. McDowell

DAVID F. McDOWELL
DMcDowell@mofo.com
BENJAMIN DAVID WILLIAMS
BWilliams@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

KAI S. BARTOLOMEO
Kbartolomeo@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive Suite 100
San Diego, CA 92130-2040
Telephone: (858) 720-5100
Facsimile: (858) 720-5125

*Attorneys for Defendant FanDuel, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of January 2017, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), pursuant to Local Rule 5.4(C).

/s/  Benjamin D. Williams
Benjamin D. Williams

sd-693420