**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: DAILY FANTASY SPORTS LITIGATION | 1:16-md-02677-GAO |

**DEFENDANT FANDUEL, INC.'S REPLY TO PLAINTIFFS' "SUPPLEMENTAL BRIEFING REGARDING FANDUEL ARBITRATION FORMATION" AND ADDRESSING *MEYER V. UBER TECHNOLOGIES, INC.***

Pursuant to the Court's August 21, 2017 Order (ECF No. 357), Defendant FanDuel, Inc. ("FanDuel") submits this Reply to Plaintiffs' "Supplemental Briefing Regarding FanDuel Arbitration Formation" ("Plaintiffs' Brief") and to address the Second Circuit's recent decision in *Meyer v. Uber Technologies, Inc.*, --- F.3d ----, 2017 WL 3526682 (2d Cir. Aug. 17, 2017).

**ARGUMENT**

In their original brief opposing FanDuel's motion to compel arbitration, Plaintiffs relied heavily on the district court's decision in *Meyer v. Kalanick*, asserting that the case involved a "sign-in [that] ***used much the same method and general layout as FanDuel's here***." (*See* ECF No. 332 at 8-12 (emphasis added) (citing *Meyer v. Kalanick*, 15 Civ. 9796, 2016 WL 4073071 (S.D.N.Y. July 29, 2016)).)  Now, unable to avoid the Second Circuit's ***reversal*** of that decision (discussed further below), Plaintiffs seek to *distinguish* the two registration screens and contort *Meyer* into a series of self-serving, hyper-granular "bright line rules" for constructive notice and mutual assent that revolve around, among other things, the specific form of font for a hyperlink. (*See* ECF No. 358 at 1.)  *Meyer **does not*** establish any such "bright line rules" for the format and presentation of hyperlinks or web-based registration processes more generally.  And, the Second Circuit certainly never said that hyperlinks are recognizable to the reasonable consumer only if

1

the text is blue and underlined.[1]  (*See* ECF No. 358.)  Far from it.  *Meyer* expressly states that "there are ***infinite*** ways to design a website or smartphone application," and "the enforceability of a web-based agreement is clearly a fact-intensive inquiry" focused on whether terms are "reasonably conspicuous" and sufficient to place the "reasonably prudent" internet or smartphone user on notice.  *Meyer*, 2017 WL 3526682, at *6-7 (emphasis added) (citation omitted).

FanDuel's registration process, including the presentation of its Terms of Use, is substantially similar to the process reviewed in *Meyer*.  Like Plaintiffs when they registered for FanDuel, Meyer was presented with a screen that required him to provide certain information and click a button marked "REGISTER."  *Id.* at *2.  Below the input fields and registration button was text that informed users that, "By creating an Uber account, you agree to the TERMS OF SERVICE."  *Id.* at *6.  Meyer clicked on a button that said "REGISTER."[2]  *Id*. at *7.  On these facts, the Second Circuit held:  "[T]he design of the screen and language used render the notice provided reasonable as a matter of California law."[3]  *Id.* at *8.  FanDuel's registration process mirrors Uber's:

- *"[Uber's] Payment Screen is uncluttered, with only fields for the user to enter his or her credit card details, buttons to register for a user account or to connect the user's pre-existing PayPal account or Google Wallet to the Uber account, and the warning that 'By creating an Uber account, you agree to the TERMS OF*

---

[1] In fact, Plaintiffs have cited no case mandating a specific format for hyperlinks.  (*See* ECF No. 336 at 3 n.5.)

[2] Plaintiffs also take issue with the fact that FanDuel's button says "Play Now," rather than "Register."  Again, these are distinctions without a difference.  The point is that the reasonably prudent internet or smartphone user who just entered their information, and are engaging in the process of registering for an account and providing all the usual details associated with that process, understands that they are "signing up" or "joining" and agreeing to terms by affirmatively clicking the button.

[3] Although *Meyer* looked to California law, it noted that New York's law on mutual assent was substantially similar.  *Meyer*, 2017 WL 3526682, at *4.

*SERVICE & PRIVACY POLICY*.'" *Id.* (emphasis added). As demonstrated in Appendix A, FanDuel's screen is equally "uncluttered," displaying similar fields for the consumer to complete, a "Play Now" button the consumer must click in order to proceed further, and an advisory below the button informing the consumer that "By signing up, you confirm that you are at least 18 years of age and agree to the **Terms of Use**." (*See* ECF No. 336-1; Decl. of Dylan Kidder ¶ 8 and Ex. A, ECF Nos. 318-1, 318-2.)

- *"[Uber's] entire screen is visible at once, and the user does not need to scroll beyond what is immediately visible to find notice of the Terms of Service."* *Meyer*, 2017 WL 3526685, at *8. FanDuel's screen similarly does not require a user to scroll "below the fold" to find notice of the Terms of Use. (*See* Appx. A.)

- *Uber's notice to the consumer of its Terms of Service was "in small font," but it was in "dark print [that] contrasts with the bright white background, and the hyperlinks are in blue and underlined."* *Meyer*, 2017 WL 3526685, at *8. FanDuel's notice is similar. The text of the notice is prominent, displayed directly below the "Play Now" button, and the words "**Terms of Use**" are bolded and contrast with the lighter background—enough to draw the attention of the "reasonably prudent" internet user in 2015. (*See* Appx. A.)

After a holistic review of the foregoing factors, the court held that "Meyer unambiguously manifested his assent to Uber's Terms of Service," including its arbitration clause, when he registered for Uber's ride-sharing service. *Meyer*, 2017 WL 3526682, at *9. The result here should be no different.

*Meyer* is strong support for FanDuel's motion to compel arbitration and severely undermines Plaintiffs' arguments against notice and mutual assent. The decision confirms that the content and format of FanDuel's registration process was sufficient to put Plaintiffs on notice that they "would be subject to [FanDuel's] contractual terms." *Id.* at *8. The Court should grant FanDuel's motion to compel arbitration.

Dated: August 30, 2017

Respectfully submitted,

/s/ David F. McDowell

DAVID F. McDOWELL
DMcDowell@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

KAI S. BARTOLOMEO
Kbartolomeo@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive Suite 100
San Diego, CA 92130-2040
Telephone: (858) 720-5100
Facsimile: (858) 720-5125

***Attorneys for Defendants FanDuel, Inc.***

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 30th day of August 2017, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), pursuant to Local Rule 5.4(C).

                                  /s/  David F. McDowell
                                  David F. McDowell