**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE DAILY FANTASY SPORTS LITIGATION | 1:16-md-02677-GAO |

**DEFENDANTS' JOINT MOTION TO DISMISS THE COMPLAINT**
**AND MEMORANDUM OF REASONS IN SUPPORT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS .................................................................................... 3

STANDARD OF REVIEW .................................................................................. 6

ARGUMENT ................................................................................................... 7

   I.   Family Member Plaintiffs Fail to State a Claim Under Any State Loss Recovery Act....... 7

      A.   LRA Claims Must Be Brought Against Gambling Winners,
           Not Against Defendants............................................................................. 10

      B.   Family Member Plaintiffs Fail to Specify the Losses They
           Seek to Recover or Establish Such Losses Were the Result of Gambling. ................ 12

      C.   Family Member Plaintiffs Cannot Allege That the Related
           Players Failed to Seek Recovery of Their Own Losses............................................. 15

   II.   Certain Family Member Plaintiffs' Claims Must Be Dismissed
       Because They Lack Article III Standing............................................................. 16

   III.  Steiner's Claim Must Be Dismissed Because He Lacks Article III Standing.................. 18

CONCLUSION................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Acosta-Vega v. Brown*,
  107 F.3d 1 (1st Cir. 1996) .................................................................................... 16

*Air Sunshine, Inc. v. Carl*,
  663 F.3d 27 (1st Cir. 2011) ............................................................................... 6, 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 6

*Boast v. DraftKings, Inc.*,
  No. 1:15-cv-01129-RB-KBM (D.N.M. filed Dec. 14, 2015) ................................. 18

*Boast v. FanDuel, Inc.*,
  1:15-cv-01127-KBM-KK (D.N.M. filed Dec. 14, 2015) ....................................... 18

*Crawley v. Clear Channel Outdoor, Inc.*,
  No. 8:10-CV-01238, 2011 WL 748162 (M.D. Fla. Feb. 24, 2011) ........................ 19

*Garvin v. Hudson*,
  1966-NMSC-108, 76 N.M. 403 ............................................................................ 11

*Gillespie v. Schomaker*,
  191 F. Supp. 8 (E.D. Ky. 1961) ........................................................................... 11

*Gustavsen v. Alcon Labs., Inc.*,
  903 F.3d 1 (1st Cir. 2018) .................................................................................... 16

*Hardin v. NBC Universal, Inc.*,
  660 S.E.2d 374 (Ga. 2008) .................................................................................. 11

*Hartlieb v. Carr*,
  94 F. Supp. 279, 281 (E.D. Ky. 1950) ................................................................. 13

*Hodge v. DraftKings, Inc.*,
  1:15-cv-03951-RWS (N.D. Ga. filed Nov. 12, 2015) ........................................... 18

*Hodge v. FanDuel, Inc.*,
  1:15-cv-03950-TWT (N.D. Ga. filed Nov. 12, 2015) ........................................... 18

*Humphrey v. Viacom, Inc.*,
  No. 06-2768 (DMC), 2007 WL 1797648 (D.N.J. June 20, 2007) .................................... passim

*In re First Capital Holdings Corp. Fin. Prod. Sec. Litig.*,
   33 F. 3d 29 (9th Cir. 1994) ................................................................. 18

*Justice v. The Pantry*,
   335 S.C. 572 (1999) .......................................................................... 9

*Langone v. Kaiser*,
   No. 12 C 2073, 2013 WL 5567587 (N.D. Ill. Oct. 9, 2013) ...................... 8, 9, 11, 13

*Lillard v. Mitchell*,
   37 S.W. 702 (Tenn. Ch. App. 1896) .................................................... 10

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .......................................................................... 19

*McCurry v. Keith*,
   325 S.C. 441 (Ct. App. 1997) ............................................................. 18

*Monahan v. Dorchester Counseling Ctr. Inc.*,
   961 F.2d 987 (1st Cir. 1992) .............................................................. 6

*Mullinax v. J.M. Brown Amusement Co.*,
   485 S.E.2d 103 (S.C. Ct. App. 1997), *aff'd*, 508 S.E.2d 848 (1998) ............ 15

*Norkunas v. Sandeep Partners, LLC*,
   No. CV 17-12089-PBS, 2018 WL 2727899 (D. Mass. June 5, 2018) ............. 6

*Phillips v. Double Down Interactive LLC*,
   173 F. Supp. 3d 731 (N.D. Ill. 2016) .................................................... 11

*Salamon v. Taft Broadcasting Co.*,
   475 N.E.2d 1292 (Ohio Ct. App. 1st Dist., 1984) ................................... 8

*Salsitz v. Peltz*,
   210 F.R.D. 95 (S.D.N.Y. 2002) ........................................................... 18

*Sanchez v. Pereira-Castillo*,
   590 F.3d 31 (1st Cir. 2009) ................................................................ 9

*Sonnenberg v. Amaya Group Holdings (IOM) Ltd.*,
   810 F.3d 509 (7th Cir. 2016). ............................................................. 11

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ...................................................................... 16

*State v. Am. Holiday Ass'n, Inc.*,
   727 P.2d 807 (Ariz. 1986) (en banc) ................................................... 15

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ............................................................................................. 6

*Thompson v. Ledbetter*,
  39 S.E.2d 720 (Ga. Ct. App. Div. 2, 1946) ......................................................... 9

*Trumbo v. Finley*,
  18 S.C. 305 (1882) ............................................................................................. 13

*Van Wagner Boston, LLC v. Davey*,
  770 F.3d 33 (1st Cir. 2014)) ................................................................................ 6

*Watterson v. Page*,
  987 F.2d 1 (1st Cir. 1993) ................................................................................... 6

**Statutes**

§ 849.27, Fla. Stat. (1973) (repealed 1974) ............................................................ 19

2016 Tennessee Laws Pub. Ch. 978 (S.B. 2109) .................................................... 15

Ga. Code Ann. § 13-8-3 ............................................................................... 7, 12, 14

Ga. Code Ann. § 13-8-3(b) ....................................................................................... 10

Ga. Code Ann. § 13-8-4 ............................................................................................ 11

Ky. Rev. Stat. Ann. § 372.010 .................................................................................. 14

Ky. Rev. Stat. Ann. § 372.020 .................................................................................... 7

Ky. Rev. Stat. Ann. § 372.040 ...................................................................... 7, 10, 12

N.M. Stat. Ann. § 44-5-1 ............................................................................... 7, 12, 14

N.M. Stat. Ann. § 44-5-11 ........................................................................................ 11

N.M. Stat. Ann. § 44-5-13 ................................................................................... 7, 12

N.M. Stat. Ann. § 44-5-3 ............................................................................... 7, 10, 12

S.C. Code Ann. § 32-1-10 ................................................................................. passim

S.C. Code Ann. § 32-1-20 ............................................................................... 7, 12, 15

Tenn. Code Ann. § 29-19-104 ........................................................................ 7, 12, 14

Tenn. Code Ann. § 29-19-105 ............................................................................. 7, 12

Tenn. Code Ann. § 29-19-106 .................................................................................... 7

**Other Authorities**

5A Charles A. Wright and Arthur R. Miller,
    *Federal Practice and Procedure* § 1350 (2d ed. 1990) ........................................................... 16

Tenn. Op. Att'y Gen. No. 04-046 (Mar. 18, 2004) ......................................................................... 9

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................................................. 6

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 6

Defendants DraftKings Inc. ("DraftKings") and FanDuel, Inc. ("FanDuel") (collectively "Defendants") respectfully move this Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for an order dismissing the First Amended Master Class Action Complaint and Jury Demand, dated September 2, 2016 (ECF No. 269) ("Complaint").

## PRELIMINARY STATEMENT

The plaintiffs whose claims remain before this Court following its order compelling arbitration are family members of daily fantasy sports players ("Family Member Plaintiffs") who sued to recover so-called "gambling losses" under the Loss Recovery Acts ("LRAs") of five states. These antiquated statutes allow a third party to recover gambling losses suffered by others under specific, narrow conditions. But Family Member Plaintiffs—who are suing alongside the players themselves for the same purported losses—come nowhere close to satisfying those conditions, and their threadbare allegations fail to state a claim for relief.

*First*, LRA claims are actionable only against the ***winner*** of the money allegedly lost at gambling. Family Member Plaintiffs do not identify the winners of the money they seek to recover. Clear legal authority and Family Member Plaintiffs' own allegations definitively establish that fantasy sports operators like FanDuel and DraftKings are neutral contest organizers—not gambling winners—and therefore not appropriate defendants.

*Second*, Family Member Plaintiffs fail to specify the particular losses they seek to recover, as each LRA requires. The Complaint merely parrots elements of each statute, without providing ***any*** specific, non-conclusory facts to support them. Family Member Plaintiffs fail to include even basic factual information about their ***own relatives'*** participation in Defendants' contests—for instance, what contests they entered and how much money they lost. Family Member Plaintiffs also fail to establish that those losses were the result of illegal gambling under

the LRAs at issue.  To the contrary, the Complaint itself alleges that DFS contests are contests of skill—a determination confirmed by legislative findings and regulation across the country.  Even setting that aside, the Complaint again provides no factual allegations to support (and many allegations to contradict) its conclusory assertions of illegality.

*Third*, Family Member Plaintiffs do not allege that their relatives failed to seek recovery of their ***own*** losses, a necessary element to establish Family Member Plaintiffs' entitlement to those losses in a *qui tam* capacity.  Indeed, the players themselves ***are*** seeking recovery at the same time under the same LRAs in the same operative Complaint.

Each of these pleading deficiencies is fatal.  Because LRAs permit multiple third parties to bring claims for another's gambling losses, a third-party plaintiff cannot state a claim without identifying with specificity the precise contests, loss amounts, and participants at issue—this is necessary to provide adequate notice to defendants and other prospective parties, and to resolve conflicts among competing claims.[1]

Separately, five of the six the Family Member Plaintiffs lack Article III standing because their fantasy sports player relatives, whose purported losses form the basis of these LRA claims, have not suffered any cognizable injury.  According to Defendants' records, three of the six players at issue ***do not even have identifiable FanDuel and/or DraftKings accounts***, and two more either ***did not play any contests or did not lose money on FanDuel and/or DraftKings*** during the period for which their family members now ask to recover losses.  Absent any actual injury, the Court lacks subject matter jurisdiction over those claims.

---

[1] For this reason, LRA claims are not amenable to class treatment, for which there is no precedent. Accordingly, even if these claims survived a motion to dismiss, the proposed classes could not be certified.

The one remaining plaintiff other than the Family Member Plaintiffs—Nelson Steiner—also fails to state a claim to recover losses suffered by unknown individuals on behalf of the state of Florida.  Steiner's claim fails because (1) he alleges no injury; (2) the portion of the Florida statutes permitting suits by individuals as "private attorneys general" has been repealed; and (3) he fails to allege any of the elements of such a claim.

Given Plaintiffs' failure to plead the required elements of their claims and certain Plaintiffs' lack of Article III standing, the Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

Defendants offer online Daily Fantasy Sports ("DFS") contests that customers can enter with friends, family, or other fantasy sports enthusiasts.  Compl. ¶ 142.  Defendants' DFS contests require contestants to use their sports knowledge and skill to assemble a "fantasy" team of athletes from multiple real-world sports teams.  *Id.*  Each contestant's fantasy team competes against other contestants' teams to accumulate the most points, based on the selected athletes' statistical performance in actual sporting events.  *Id.*  Defendants offer both free and fee-based DFS contests.  *Id.*  For fee-based DFS contests, contestants pay an entry fee and compete for pre-announced cash prizes.  *Id.*  Defendants themselves do not participate in any DFS contests—DFS contestants compete only against one another.  *Id.* ¶ 143.  As the contest organizer, Defendants' revenue is not dependent—in any respect whatsoever—on which contestant wins any given contest.

Plaintiffs filed the operative Complaint against Defendants on September 2, 2016, alleging that Defendants engaged in advertising campaigns that misrepresented the difficulty of DFS contests and the terms of certain promotional offers.  Compl. ¶ 1.  Plaintiffs fall into three categories: (1) the "Player Plaintiffs," who assert claims against one or both Defendants with

which they have accounts; (2) the "Crossover Plaintiffs," who have accounts with only one Defendant but assert a civil conspiracy claim against both Defendants; and (3) the "Family Member Plaintiffs," who assert claims against the Defendants under the loss recovery acts ("LRAs") of Georgia, Kentucky, Tennessee, New Mexico, and South Carolina.  In addition, Plaintiff Nelson C. Steiner ("Steiner") asserts claims against Defendants as a "concerned citizen of the State of Florida" despite the fact that he "has never had an account with" either Defendant and alleges no other connection to or loss caused by Defendants.  Compl. ¶ 50.

Defendants moved to compel individual arbitration of all the above claims, other than those brought by Steiner, based on arbitration clauses in Defendants' respective Terms of Use.[2] ECF Nos. 317, 318.  On November 27, 2019, this Court granted Defendants' motion to compel arbitration as to the Player Plaintiffs and the Crossover Plaintiffs but denied the motion as to the Family Member Plaintiffs.  ECF No. 406.  Therefore, the only claims currently before this Court are those brought by the Family Member Plaintiffs and Steiner.

There are six named Family Member Plaintiffs—each of whom asserts claims against FanDuel, and three of whom also assert claims against DraftKings.[3]  Compl. ¶¶ 89–94.  Each Family Member Plaintiff contends that (1) he or she has a family member who played in Defendants' DFS contests (the "Related Players"), (2) such Related Player lost money, and (3) the Family Member Plaintiff is entitled to recover under the relevant state LRA, both on behalf of their Related Player and as a representative of all other similarly situated residents of

---

[2] FanDuel did not move to compel arbitration against three named plaintiffs who opted out of FanDuel's arbitration clause.  ECF No. 312.  The Court has stayed briefing on those claims pending the result of arbitration filings on behalf of other Player Plaintiffs.  ECF No. 412.  FanDuel intends to move to dismiss those claims as well, when it is permitted to do so.

[3] Only the Family Member Plaintiffs residing in Georgia, Kentucky, and New Mexico bring claims against DraftKings.

their state (including spouses, children, next-of-kin, heirs, and creditors of DFS contestants). Compl. ¶¶ 89-94, 499-503, Counts XX–XXIV.

Apart from reciting the bare elements of each state's LRA, the Complaint contains no factual allegations about the Related Players' participation in DFS contests or their purported losses, on which the Family Member Plaintiffs' claims are based.  For example, the Complaint does not identify which contest(s) each Related Player entered, the date(s) such contest(s) took place, the amount(s) the Related Player allegedly lost, and/or who the winners of such contests were.  The Complaint does not even allege that the Related Players suffered any actual injury by losing more money in DFS contests during the relevant time period than they won.  The Complaint also does not allege that the Related Players failed to file claims on their own behalf within the statutory time limit (a perquisite to third-party claims under the LRAs)—to the contrary, in the same Complaint, the Related Players seek parallel recovery for the same losses under the same statutes (although those claims are now subject to arbitration).  *See* Compl. ¶¶ 710-11.  The Family Member Plaintiffs similarly fail to allege that no claim was previously brought against the winners of the contests (by the losers or otherwise), nor could they because the winners have not been identified.

Defendants now move to dismiss Family Member Plaintiffs' LRA claims and Steiner's claims as a representative of the State of Florida.

## STANDARD OF REVIEW

Challenges to a complaint based on lack of jurisdiction, including challenges based on standing, are properly brought under Federal Rule of Civil Procedure 12(b)(1). *Norkunas v. Sandeep Partners, LLC*, No. CV 17-12089-PBS, 2018 WL 2727899, at *2 (D. Mass. June 5, 2018) (citing *Van Wagner Boston, LLC v. Davey*, 770 F.3d 33, 36 (1st Cir. 2014)) ("Standing is among the requirements of subject-matter jurisdiction, and lack of standing may lead to dismissal under Rule 12(b)(1)."). On a motion to dismiss for lack of subject-matter jurisdiction, a plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

A court may also dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss, "a court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (citing *Monahan v. Dorchester Counseling Ctr., Inc.*, 961 F.2d 987, 988 (1st Cir. 1992)). However, the court does not have to take conclusory allegations as true. *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 33 (1st Cir. 2011) ("[A] court does not accept as true allegations that while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual.") (internal citations and quotation marks omitted). To avoid dismissal of a claim under Rule 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). It is not enough to speculate as to the facts or simply allege the elements of a claim. *Id.*

## ARGUMENT

I.      **FAMILY MEMBER PLAINTIFFS FAIL TO STATE A CLAIM UNDER ANY STATE LOSS RECOVERY ACT.**

Family Member Plaintiffs assert claims under the LRAs of Georgia, Kentucky, Tennessee, New Mexico, and South Carolina to recover losses allegedly sustained by their relatives in contests hosted by DraftKings and FanDuel.  While there are some variations among the various LRAs at issue (*e.g.*, the applicable limitations period), the core elements that must be alleged are the same.  *See, e.g.*, *Humphrey v. Viacom, Inc.*, No. 06-2768 (DMC), 2007 WL 1797648, at *2 (D.N.J. June 20, 2007) (finding "there are no substantial differences" between the LRAs of Georgia, Kentucky, South Carolina, and five other states).  Under each statute, a plaintiff suing in a *qui tam* capacity to recover the losses of a relative must plead facts showing that the relative (1) lost specific amount(s) of money in particular transaction(s) (in some cases subject to a minimum threshold), (2) to a specific winner, (3) in a gambling transaction,[4] *and* that the relative (4) failed to file suit for recovery of his or her own losses within the statutorily prescribed time period.[5]

It is particularly essential that a third person seeking to recover based on ***someone else's losses*** adequately plead ***every*** element, including: "a specific loser," "the date of a loss," "the

---

[4] S.C. Code Ann. § 32-1-10 (person who loses fifty dollars or more "at any time or sitting, by playing at cards, dice table or any other game whatsoever or by betting on the sides or hands of such as do play at any of the games aforesaid" can sue "the respective winner or winners thereof" for the lost amount within three months); Ky. Rev. Stat. Ann. § 372.020 (person who loses five dollars or more "at one (1) time, or within twenty-four (24) hours" in a gambling transaction can sue to recover it "from the winner" within five years); Ga. Code Ann. § 13-8-3 (person may sue "the winner" to recover "[m]oney paid or property delivered upon a gambling consideration . . . within six months after the loss"); Tenn. Code Ann. § 29-19-104 (person who lost money "upon any game or wager" may sue within ninety days to recover it); N.M. Stat. Ann. § 44-5-1, § 44-5-13 (person who loses "money or property at any game at cards, or at any gambling device" may sue to recover it "within one year from the time such action accrued").

[5] S.C. Code Ann. § 32-1-20; Ky. Rev. Stat. Ann. § 372.040; Ga. Code Ann. § 13-8-3; Tenn. Code Ann. §§ 29-19-105, 29-19-106; N.M. Stat. Ann. § 44-5-3 (action can only be brought by spouse, children, heir, executor, administrator, or creditor).

amount of money lost," a "specific winner," and "whether the relevant loser has failed to bring a claim" within the specified period.  *See Langone v. Kaiser*, No. 12 C 2073, 2013 WL 5567587, at *4 (N.D. Ill. Oct. 9, 2013) (analyzing statutory language in Illinois's substantially similar LRA); *Humphrey*, 2007 WL 1797648, at *4 ("While *qui tam* plaintiffs often have not personally suffered a loss, they are not excused from the obligation to allege specific facts demonstrating that their claims are within the narrow confines of the statutes under which they seek relief.").

Courts have repeatedly made clear that LRAs—originally enacted in the eighteenth and nineteenth centuries and "directed at deterring traditional gambling"—must be narrowly construed through strict adherence to their requisite elements.  *Humphrey*, 2007 WL 1797648, at *3 (analyzing the LRAs of Georgia, Kentucky, South Carolina, Illinois, Massachusetts, New Jersey, Ohio, and District of Columbia).  The purpose of these statutes was "to supplement states' general anti-gaming provisions in an era when local governments' own regulatory and enforcement powers were much less effective" and "to prevent gamblers and their families from becoming destitute due to gambling losses."  *Id.*  In the modern era, these cases are rarely brought—apart from *Humphrey*, there are few or no published decisions addressing most of the LRAs at issue in half a century.

In light of the "ancient and arguably anachronistic nature of *qui tam* actions" to recover gambling losses, courts have warned against "extend[ing] the coverage of a 200-year old statute to an activity far removed from the traditional gaming it was never intended to cover."  *Id.* at *5, *11 (citing *Salamon v. Taft Broadcasting Co.*, 475 N.E.2d 1292, 1298 (Ohio Ct. App. 1st Dist., 1984) (noting that courts should not enforce LRAs in a way that extends their reach beyond the narrow scope originally intended)).  Moreover, courts have long held that the *qui tam* statutes must be narrowly construed because they are penal in nature.  *See, e.g.*, *id.* at *4; *Justice v. The*

*Pantry*, 335 S.C. 572 (1999) (South Carolina statute is penal and must be strictly construed); *Langone*, 2013 WL 5567587, at *2 (same with regard to Illinois's LRA).  Courts have also narrowly construed such statutes because they provide a remedy in derogation of common law. *See, e.g.*, *Humphrey*, 2007 WL 1797648, at *4; *Thompson v. Ledbetter*, 39 S.E.2d 720, 721 (Ga. Ct. App. Div. 2, 1946); Tenn. Op. Att'y Gen. No. 04-046 (Mar. 18, 2004) (recognizing that Tennessee's LRA, which adopts the principles "set forth in the [1710] Statute of Anne regarding gambling-related contracts," is a departure from rights available at common law).

Accordingly, it is essential that Family Member Plaintiffs plead specific, plausible facts establishing each element of the relevant LRAs—it is not sufficient to simply "[p]arrot[]" the legal standard.  *See Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009) ("This is precisely the type of 'the-defendant-unlawfully-harmed-me' allegation that the Supreme Court has determined should not be given credence when standing alone.") (citation omitted). "[P]rinciples of strict and narrow construction are particularly appropriate . . . where Plaintiff seeks to recover unspecified losses" on behalf of others.  *Humphrey*, 2007 WL 1797648, at *4. However, the Family Member Plaintiffs fail to (1) identify the winner(s) of the contest(s) for which they seek to recover losses; (2) plead any details about those losses; or (3) allege that the losers failed to seek recovery for their own losses within the applicable time period.  These pleading deficiencies require dismissal of Plaintiffs' claims.[6]

---

[6] Even if the claims were adequately pled, the individualized inquiries necessary to analyze each claim and identify the appropriate third-party claimant would make them inappropriate for class treatment.

A.      **LRA Claims Must Be Brought Against Gambling Winners, Not Against Defendants.**

All of the LRAs under which Family Member Plaintiffs seek relief allow for recovery only *from the gambling winner*.[7]  In addition to the Complaint's other fundamental pleading deficiencies, Family Member Plaintiffs' claims must be dismissed independently for failure to identify the winners of the amounts they seek to recover, who are the proper defendants to an LRA claim.  The law is clear that DraftKings and FanDuel are not "winners" under any construction of those statutes.

In each DFS contest, Defendants are neutral parties—they are not contestants and are certainly not contest winners.  DFS contestants compete against one another, and Defendants earn the same revenue *regardless of which contestant wins*.  Compl. ¶ 143.  In *Humphrey*, the court evaluated whether the fantasy sports operator defendants could be "winners" for purposes of an LRA claim.  2007 WL 1797648, at *1-2.  It found that because such operators—like DraftKings and FanDuel—are "neutral parties in the fantasy sports games" who "do not compete for the prizes and are indifferent as to who wins the prizes," they were not winners, and accordingly dismissed plaintiffs' LRA claims under eight different statutes (including Georgia, Kentucky, and South Carolina).  *Id.* at *7.  The *Langone* court reached the same conclusion as to FanDuel under Illinois's similar LRA, holding FanDuel was not a "winner" because, even though it takes a "commission" from entry fees paid by participants, it does not "participate[] in

---

[7] Specifically, the Georgia statute provides that "[m]oney paid or property delivered upon a gambling consideration may be recovered *from the winner*."  Ga. Code Ann. § 13-8-3(b) (emphasis added).  The Kentucky statute also allows "any other person [to] *sue the winner*."  Ky. Rev. Stat. Ann. § 372.040 (emphasis added).  The Tennessee statute similarly limits liability to gambling winners.  *Lillard v. Mitchell*, 37 S.W. 702, 704 (Tenn. Ch. App. 1896) ("A stakeholder of a gambling bet, paying it to the winning party, in good faith, before notice not to do so, will not be held liable therefor to the loser.").  The South Carolina statute provides for recovery from "the respective *winner or winners* thereof."  S.C. Code Ann. § 32-1-10 (emphasis added).  Finally, the New Mexico statute similarly provides family members with a "remedy *against the winner*."  N.M. Stat. Ann. § 44-5-3 (emphasis added).

the games itself" and does not "participate[] in the risk of the trade or 'wager.'"  2013 WL

5567587, at *6 (explaining that "FanDuel risks nothing when it takes entry fees from participants

in its fantasy sports games"); *see also Phillips v. Double Down Interactive LLC*, 173 F. Supp. 3d

731, 740 (N.D. Ill. 2016) (operator is not a winner where it has no stake in the contest and does

not participate directly).  And, as the Seventh Circuit explained, "charging a fee for engaging in

gambling is not the same as winning a gamble; a croupier who supervises a casino's poker game

is not a gambler, let alone a winner."  *Sonnenberg v. Amaya Group Holdings (IOM) Ltd.*, 810

F.3d 509, 511 (7th Cir. 2016).

There is no authority warranting departure from the reasoning in *Humphrey*, *Langone*,

and numerous other courts here.  Other authorities in the relevant states compel the same

conclusion: that organizers with no contingent stake in the outcome are not "winners."  *See, e.g.*,

*Gillespie v. Schomaker*, 191 F. Supp. 8, 10 (E.D. Ky. 1961) (refusing to recognize event

organizers as gambling winners for purposes of Kentucky's LRA, noting such an outcome would

be "a distortion of the plain meaning of the statute"); S.C. Code Ann. § 32-1-10 (explicitly

defining winner as someone who wins "***by playing*** at cards, dice table or any other game

whatsoever ***or by betting*** on the sides or hands of such as do play") (emphasis added); *Lillard*, 37

S.W. at 702 (stakeholder that merely holds and pays gambling bet to winner is not liable under

Tennessee LRA); Ga. Code Ann. § 13-8-4 (stakeholder of "money risked on a wager" who has

paid it to "the winner" is not liable under Georgia LRA); N.M. Stat. Ann. § 44-5-11 (same

provision under New Mexico LRA); *see also Hardin v. NBC Universal, Inc.*, 660 S.E.2d 374,

375-76 (Ga. 2008) (no LRA claim where neither plaintiff nor defendants were "certain to lose"

and the contract's consideration "never hangs in the balance"); *Garvin v. Hudson*, 1966-NMSC-

108, ¶ 8, 76 N.M. 403, 406 ("One of the conditions in a gambling or wagering contract is there is

no opportunity for both sides to make gains.  One must gain and the other must lose.") (citation

omitted).

Even if Defendants could be considered "winners" under the relevant state LRAs, which

is incorrect, Family Member Plaintiffs did not even plead that they were—a plain defect that

requires dismissal of their claims.  *See* Compl. ¶ 502.  Instead, Family Member Plaintiffs string

together a handful of undeveloped, conclusory allegations that DraftKings and FanDuel used

"bots" or fake accounts to win contests, risked their own money in "overlay," or are "brokers that

are paid commissions," so therefore are "winners."  *Id.*  These "threadbare [and] speculative"

assertions "fail to cross the line between the conclusory and the factual," and should be

disregarded by the Court.  *Air Sunshine, Inc.*, 663 F.3d at 33.

**B.      Family Member Plaintiffs Fail to Specify the Losses They Seek to Recover or Establish Such Losses Were the Result of Gambling.**

Family Member Plaintiffs' failure to plead any specific details of their relatives' losses is

in itself fatal to their claims.  All of the LRAs require that a *qui tam* suit be brought within a

certain time period after a specific type of loss—and the Complaint must include facts

establishing that element.[8]  For example, the South Carolina LRA requires a third-party plaintiff

to plead that an identified person lost fifty dollars or more at one "time or sitting" in a gambling

transaction, identify the "winner or winners thereof," and plead the loser's failure to "file suit to

recover such loss within three months."  S.C. Code Ann. §§ 32-1-10, 32-1-20.  Disregarding (as

---

[8] *See* S.C. Code Ann. §§ 32-1-10, 32-1-20 (allowing a loser to bring suit within three months of the loss and allowing a relative to bring suit within one year of the loss); Ky. Rev. Stat. Ann. § 372.040 (allowing a loser to bring suit within six months of the loss and allowing a relative to bring suit within five years of the loss); Ga. Code Ann. § 13-8-3 (allowing a loser to bring suit within six months of the loss and allowing a relative to bring suit within four years of the loss); Tenn. Code Ann. §§ 29-19-104, 29-19-105 (allowing a loser to bring suit within ninety days of the loss and allowing a relative to bring suit within twelve months of the loss); N.M. Stat. Ann. §§ 44-5-1, 44-5-3, 44-5-13 (allowing a loser to bring suit within one year of the loss and allowing a relative to bring suit within one year of the loss).

the Court must) the Complaint's conclusory recitation of those elements in Count XXIV, the

South Carolina Family Member Plaintiff's only assertion regarding these elements is the

following sentence:

> DFS Player William Walker . . . did lose over fifty dollars or more at any time
> [*sic*] FanDuel.com during the time period between the filing of this Complaint
> and one year prior to the filing of this Complaint.

Compl. ¶ 89.  The Complaint does not identify the date or amount of any eligible loss for which

the South Carolina Family Member Plaintiff now seeks recovery.  In fact, it does not allege Mr.

Walker lost anything more than three months before filing.  The other Family Member Plaintiffs'

allegations are equally threadbare.  *See* Compl. ¶¶ 90-94.  Indeed, the Tennessee Family Member

Plaintiff's allegations are internally contradictory as to where the Related Player purportedly lost

money, asserting in one paragraph that it was DraftKings and in another that it was FanDuel.

*Compare id.* ¶ 79 *with id.* ¶ 93.

Courts have made clear that such pleadings do not state a claim—including specifically

in the fantasy sports context.  In *Humphrey*, the court dismissed LRA claims against a fantasy

sports operator—under the laws of Georgia, Kentucky, South Carolina, and five other states—for

failure to plead, *inter alia*, "the amount of each loser's loss" and "when the loss occurred."

*Humphrey*, 2007 WL 1797648, at *6 (noting that "the Complaint lacks the most basic factual

allegations necessary to support Plaintiff's claim").  The *Langone* court reached the same

conclusion in dismissing an LRA claim ***against FanDuel specifically***, and its analysis applies

equally to DraftKings.  *See Langone*, 2013 WL 5567587, at *4.  Other courts outside the fantasy

sports context have reached the same conclusions, dating back more than a century.  *See, e.g.*,

*Trumbo v. Finley*, 18 S.C. 305 (1882) (affirming dismissal of LRA claim where complaint failed

to identify specific losses occurring "at one time or sitting"); *Hartlieb v. Carr*, 94 F. Supp. 279,

281 (E.D. Ky. 1950) (dismissing LRA claim where "[t]he complaint [wa]s too vague and

indefinite as to the time of the alleged losses").  This is no mere technical requirement—each statute allows different third parties to recover for gambling losses and provides **no means** for determining priority of conflicting claims.  Identifying the precise contest, loss amount, winner, and loser is essential to place the defendant and other prospective plaintiffs on notice of the amount sought to be recovered and to determine whether another party has already sought recovery, including the loser themselves.

The Complaint also fails to allege any facts establishing that the unspecified losses at issue were the result of gambling, as required by the relevant statutes.[9]  Apart from the bare recitation of statutory elements (*see* Compl., Counts XX–XXIV)—which are legal conclusions not entitled to any weight—there are no factual allegations plausibly showing that Defendants' fantasy sports contests are gambling under each of the relevant LRAs.  To the contrary, the Complaint extensively argues that Defendants' contests required skill, and therefore that a limited number of skilled players were the most consistent winners.  *See, e.g.*, Compl. ¶¶ 340-359.  The only allegations regarding the applicability of gambling laws to DFS contests concern legal opinions by attorneys general in a handful of states—but none of those are states in which Family Member Plaintiffs have asserted LRA claims.  *See* Compl. ¶¶ 311-338.  This pleading failure provides an independent basis for dismissing Family Member Plaintiffs' claims.  *See, e.g.*,

---

[9] *See* S.C. Code Ann. § 32-1-10 (loss must be "at cards, dice table or any other game whatsoever or by betting on the sides or hands of such as do play at any of the games aforesaid"); Ky. Rev. Stat. Ann. § 372.010 (money must be "lost or bet in any game, sport, pastime or wager"); Ga. Code Ann. § 13-8-3 (loss must be "upon a gambling consideration"); Tenn. Code Ann. § 29-19-104 (loss must be "upon [a] game or wager"); N.M. Stat. Ann. § 44-5-1 (loss must be at a "game at cards, or at any gambling device").

*Humphrey*, 2007 WL 1797648, at *5 (dismissing LRA claim for failure to "identify the nature of the 'wager' or 'bet' made between [the] individual and either of the Defendants").[10]

### C.     Family Member Plaintiffs Cannot Allege That the Related Players Failed to Seek Recovery of Their Own Losses.

Family Member Plaintiffs also fail to plead that the Related Players whose losses they seek to recover did not file an action within the prescribed period—a necessary prerequisite to prevent double recovery by both the gambling losers and their family members.  *See Humphrey*, 2007 WL 1797648, at *6 (dismissing LRA claim for failure to plead, *inter alia*, that "a 'loser' failed to bring suit within six months of losing").  This is unsurprising because the Related Players have filed such an action—seeking recovery for those same losses under the same statutes in the same Complaint.  *See* Compl. ¶¶ 710-11 (seeking recovery on behalf of Player Plaintiffs under state LRAs for all "monies paid [to Defendants] . . . over the course of the past four (4) years").[11]  The fact that each Related Player is simultaneously pursuing his own claim

---

[10] Defendants vigorously contest the allegation that DFS contests are gambling.  DFS contests lack the key attributes that define "gambling" because DFS contests are undeniably skill-based and do not involve bets or wagers.  *See, e.g.*, *Humphrey*, 2007 WL 1797648, at *10 ("fantasy leagues are not gambling").  "Courts throughout the country . . .  have long recognized that it would be 'patently absurd' to hold that 'the combination of an entry fee and a prize equals gambling,' because if that were the case, countless contests engaged in every day would be unlawful gambling, including 'golf tournaments, bridge tournaments, . . . and the like,' and contest participants and sponsors could all be subject to criminal liability."  *Id.* at *7 (quoting *State v. Am. Holiday Ass'n, Inc.*, 727 P.2d 807, 809, 812 (Ariz. 1986) (en banc)).  Accordingly, numerous states have explicitly recognized the distinction between DFS contests and gambling through legislation and regulation.  *See, e.g.*, 2016 Tennessee Laws Pub. Ch. 978 (S.B. 2109) (legislative finding that "fantasy sports leagues [requiring team selection by contestants] involve games that are driven primarily based on skill, rather than chance").  Although whether a particular game constitutes unlawful gambling is in some cases a question of fact, the Court need not defer that question here given the facial inadequacy of Family Member Plaintiffs' allegations under the relevant LRAs.

[11] South Carolina's LRA specifically bars third persons from asserting a claim if the loser's decision not to sue on his or her own behalf was not "bona fide" or the result of "covin or collusion"—in order to prevent a gambling loser and their family member from conspiring to recover treble damages only available to non-losers.  *See* S.C. Code Ann. § 32-1-20.  In a case such as this, where the Related Player pursues a broad set of claims on his own behalf and adds a family member as co-plaintiff solely to pursue treble damages, the latter claim is collusive on its face and should be dismissed.  *See Mullinax v. J.M. Brown Amusement Co.*, 485 S.E.2d 103, 107 (S.C. Ct. App. 1997) ("[S]ome suits are so obviously tainted

means that the Family Member Plaintiffs cannot possibly allege the third element of a *qui tam*

LRA claim.  This fact alone compels dismissal of the Family Member Plaintiff claims.

## II.    CERTAIN FAMILY MEMBER PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE THEY LACK ARTICLE III STANDING.

It is axiomatic that if the Family Member Plaintiffs' LRA claims are based on the losses

of Related Players who lost no money, the Family Member Plaintiffs have no standing to pursue

those claims in federal court.  Article III standing, a fundamental requirement of federal subject

matter jurisdiction, requires a plaintiff to have "suffered an injury in fact" that is "fairly traceable

to the challenged conduct of the defendant" and "is likely to be redressed by a favorable judicial

decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (collecting cases).  "Article III

standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549.  In a

putative class action, the standing analysis looks to the status of the named plaintiff(s), not the

standing of unidentified class members.  *See Gustavsen v. Alcon Labs., Inc.*, 903 F.3d 1, 7 (1st

Cir. 2018).  On a Rule 12(b)(1) motion, a court may consider affidavits and other matters outside

the pleadings, and the burden of proof is on the party asserting jurisdiction.  *Acosta-Vega v.*

*Brown*, 107 F.3d 1, 1 (1st Cir. 1996) (per curiam) (citing 5A Charles A. Wright and Arthur R.

Miller, *Federal Practice and Procedure* § 1350 (2d ed. 1990)).

FanDuel and DraftKings conducted inquiries to identify the user accounts belonging to

the Related Players whose losses form the basis of the Family Member Plaintiffs' LRA claims.

*See* Decl. of Nicholas Matthews in Support of Defendants' Mot. to Dismiss, filed herewith

("Matthews Decl.") ¶ 7; Decl. of Jason Park in Support of Defendants' Mot. to Dismiss, filed

herewith ("Park Decl.") ¶¶ 4-5.  For each Related Player, the Complaint identifies their first and

---

by covin and collusion that they cannot be countenanced by the court . . . ."), *aff'd*, 508 S.E.2d 848
(1998).

last name, their state of residence, and the approximate date they first signed up for FanDuel and/or DraftKings.  *See* Compl. ¶¶ 51, 54, 55, 66, 78, 79, 89-94.  After comparing that information to its account records, FanDuel was unable to locate ***any*** account matching the provided information for three of the Related Players:  Ryan Williams and Dustin Turner of Kentucky, and William Walker of South Carolina.[12]  Matthews Decl. ¶ 9.  While DraftKings was able to locate accounts for an Aaron Hodge of Georgia and a Dustin Turner of Kentucky, these accounts do not match the Complaint's allegations regarding dates of play.  Park Decl. ¶¶ 4-5.  Plaintiffs' failure to allege which contests they seek recovery for also prevents Defendants from locating those contest records.  Accordingly, those individuals either did not register for accounts with Defendants or registered for an account using incorrect identifying information—and absent contrary evidence of a duly registered account for each of those Related Players, their family members lack standing to pursue LRA claims on their behalf.

As to the remaining Related Players, Defendants' records reveal that two of those individuals—Aaron Hodge of Georgia and Brad Boast of New Mexico—did not suffer ***any*** cognizable losses with respect to at least one Defendant.  Matthews Decl. ¶ 10-11; Park Decl. ¶ 6.  Specifically, during the time periods for which Ms. Hodge and Ms. Boast now seek recovery, Mr. Hodge neither deposited any money nor entered (or lost) any entry fee contests on FanDuel during the relevant period—and Mr. Boast made a net profit of $18,718.67 on FanDuel, and also made a net profit on DraftKings during the relevant period.  Matthews Decl. ¶¶ 10-11; Park Decl.

---

[12] Defendants' counsel notified lead counsel for Plaintiffs regarding this finding on March 4, 2020, and asked for any additional information relevant to locating these accounts by the end of the day on March 6.  As of this morning, Defendants' counsel have not received any response.  Unless Plaintiffs can promptly provide verifiable information identifying these Related Players' accounts, dismissal is appropriate.

¶ 6.[13]  Since neither Mr. Hodge nor Mr. Boast lost money during the relevant time period, their related Family Member Plaintiffs cannot establish Article III standing to pursue LRA claims. *See, e.g.*, *In re First Capital Holdings Corp. Fin. Prod. Sec. Litig.*, 33 F. 3d 29, 30 (9th Cir. 1994) (investor who sold shares for a profit prior to lawsuit lacked standing); *Salsitz v. Peltz*, 210 F.R.D. 95, 99 (S.D.N.Y. 2002) (investor who "actually profited" as a result of alleged misrepresentations lacked standing).  Reinforcing this conclusion, courts have recognized that recovery sought under LRAs must account for offsetting profits.  *See, e.g.*, *McCurry v. Keith*, 325 S.C. 441, 444 (Ct. App. 1997) (proper measure of loss in LRA action includes adjustment for amounts gained, as this measure of damages places injured party in position that existed prior to loss).

Accordingly, the claims of Family Member Plaintiffs Williams, Turner, Walker, Hodge, and Boast should be dismissed for lack of subject matter jurisdiction.

## III.    STEINER'S CLAIM MUST BE DISMISSED BECAUSE HE LACKS ARTICLE III STANDING.

Steiner also has suffered no injury and therefore has no standing.  Steiner brings claims against DraftKings and FanDuel as a "representative for the use and benefit of the State of Florida," where he resides.  Compl. ¶ 50.  Although Steiner acknowledges that he has "never had an account with" either Defendant, he alleges that "illegal gambling is injurious to the citizens of Florida and deprives the state of Florida of tax revenues and lawful employment opportunities and other economic benefits."  *Id.*  Steiner claims that he is authorized by Florida Statutes § 849.12, *et seq.*, to pursue these claims.  *Id.*

---

[13] Ms. Hodge seeks recovery of losses for the period from four years until six months before the filing of her original complaints (Nov. 12, 2015, *see* Case Nos. 1:15-cv-03950-TWT (N.D. Ga.); 1:15-cv-03951-RWS (N.D. Ga.)), and Ms. Boast seeks recovery of losses for the one-year period before the filing of her original complaints (Dec. 14, 2015, *see* Case Nos. 1:15-cv-01127-KBM-KK (D.N.M.); 1:15-cv-01129-RB-KBM (D.N.M.)).  *See* Compl. ¶¶ 90, 94.

*First*, Steiner's claims should be dismissed because he does not allege to have suffered any cognizable injury.  For this reason, Steiner lacks Article III standing to bring any federal or state statutory or common law claims against DraftKings or FanDuel.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements.  First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . .").

*Second*, Steiner's claims should be dismissed because Florida law does not permit him to act as a private attorney general to recover others' losses on the state's behalf.  Steiner cannot bring a claim "for the use and benefit of the State of Florida" under Florida Statutes § 849.12 *et seq.* because the Florida Legislature repealed the private right of action under that section in 1974.  *See Crawley v. Clear Channel Outdoor, Inc.*, No. 8:10-CV-01238, 2011 WL 748162, at *2-3 (M.D. Fla. Feb. 24, 2011) (dismissing claim for recovery of plaintiff's own gambling losses because "[t]here fails to exist a statute within Chapter 849 that creates a cause of action and authorizes a particular suit").  Even before the private right of action was repealed, it was limited to plaintiffs who suffered losses and, under certain circumstances, extended family members, and did not extend to "concerned citizens" with no injury-in-fact.  *See* § 849.27, Fla. Stat. (1973) (repealed 1974) (permitting loser to recover, for his own benefit, the amount of his loss and reasonable attorney's fees and to seek, for the benefit of the State of Florida, an amount equal to the losses, and permitting extended family members to bring claims if the loser does not file within 90 days).

*Third*, even if a private right of action existed for plaintiffs with no injury and no relation to an injured party, Steiner's claims should be dismissed because he fails to state a claim for the

19

recovery of gambling losses by any resident of Florida who lost money on Defendants' respective websites.  Steiner fails to identify the nature, amount, and date of any specific losses he seeks to recover.  *See* Compl. ¶ 50.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice.


Dated: March 9, 2020

Respectfully submitted,


By:     /s/ Damien Marshall _
        Damien Marshall (*pro hac vice*)
        Leigh M. Nathanson (*pro hac vice*)
        BOIES SCHILLER FLEXNER LLP
        55 Hudson Yards
        New York, New York 10001
        Phone: (212) 446-2300
        dmarshall@bsfllp.com
        lnathanson@bsfllp.com

        *Attorneys for Defendant DraftKings Inc.*

By:     /s/ Marc J. Zwillinger _
        Marc J. Zwillinger (*pro hac vice*)
        Jacob A. Sommer (*pro hac vice*)
        Nicholas A. Jackson (*pro hac vice*)
        ZWILLGEN PLLC
        1900 M St. NW, Suite 250
        Washington, DC 20036
        Phone: (202) 296-3585
        Facsimile: (202) 706-5298
        marc@zwillgen.com
        jake@zwillgen.com
        nick@zwillgen.com

        *Attorneys for Defendants FanDuel, Inc. and*
        *FanDuel Deposits, LLC*

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Defendants respectfully request oral argument on this motion.  Oral argument would enable Defendants to address any questions that the Court may have regarding arguments raised by the parties in their briefing.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I, Damien Marshall, hereby certify pursuant to Local Rule 7.1(a)(2) that counsel for Defendants corresponded with counsel for Plaintiffs on numerous occasions via telephone and other means in an attempt to resolve the issues presented by this motion but were unable to do so.

/s/ Damien Marshall
Damien Marshall

## CERTIFICATE OF SERVICE

I, Damien Marshall, hereby certify that on this 9th day of March 2020, this document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), pursuant to Local Rule 5.4(C).

/s/ Damien Marshall
Damien Marshall