**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE:  DAILY FANTASY SPORTS LITIGATION<br><br>This Document Relates to:<br>All Cases | MDL No. 1:16-md-02677-GAO |

**BRIEF IN SUPPORT OF PLAINTIFFS' AND DEFENDANT DRAFTKINGS INC.'S
JOINT MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT
AND APPROVAL OF THE PROPOSED NOTICE OF THE SETTLEMENT**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

STATEMENT OF FACTS ....................................................................................... 2

    I.     PROCEDURAL HISTORY OF THE ACTION..................................................... 2

    II.    SETTLEMENT OF THE ACTION...................................................................... 3

        A.     Negotiations Producing Settlement............................................................ 3

        B.     The Material Terms Of The Proposed Settlement. ..................................... 4

            1.    Settlement Class........................................................................... 4

            2.    Settlement Relief........................................................................... 5

                a.    Financial Benefits To Settlement Class Members. ............. 5

               b.    Incentive Payment To The Proposed Class Representative Plaintiffs. ....................................................... 5

               c.    Injunctive Relief................................................................. 6

            3.    Released Claims........................................................................... 7

ARGUMENT ............................................................................................................. 8

    I.     THE LEGAL STANDARDS FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT ARE SATISFIED. ......................................... 8

        A.     Legal Standards For Preliminary Approval Of A Class Action Settlement. ................................................................................................. 8

        B.     The Settlement Here Is Fair, Reasonable And Adequate. ........................ 10

            1.    Plaintiffs And Class Counsel Have Adequately Represented The Class..................................................................................... 10

            2.    The Settlement Proposal Was Negotiated At Arm's Length. ....... 11

            3.    The Relief Provided For The Settlement Class Is Adequate, Taking Into Account Relevant Factors. ....................................... 11

                a.    The Settlement Relief Is Adequate. ................................... 11

                   i    Injunctive Relief..................................................... 11

ii      Financial Relief. .................................................... 12

b.      The Complexity, Expense, And Duration Of the Litigation Favor Settlement. ............................... 12

c.      The Risks Of Establishing Liability And Damages Favor Settlement. ................................................ 13

d.      The Proposed Attorneys' Fees Are Fair And Reasonable. ...................................................... 14

4.      The Proposed Settlement Treats Class Members Equitably Relative To Each Other. ................................................. 14

II.      THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS FOR PURPOSES OF SETTLEMENT. ................................................. 15

A.      The Requirements Of Rule 23(a) Are Satisfied. ....................................... 15

1.      The Class Is So Numerous That Joinder Of All Members Is Impracticable. ................................................................ 15

2.      There Are Questions Of Law And Fact Common To All Class Members. ............................................................ 16

3.      Plaintiffs' Claims Are Typical Of Those Of The Class. ............... 17

4.      The Proposed Class Representative Plaintiffs Have And Will Continue To Fairly And Adequately Protect The Interests Of The Class. ................................................. 17

B.      The Requirements of Rule 23(b) Are Satisfied. ....................................... 18

1.      Common Issues Predominate Because Legal And Factual Questions Involve Proof Common To Plaintiffs And Class Members. ................................................................ 18

2.      Class Treatment Is Superior To Individual Resolutions. .............. 19

III.      THE PROPOSED CLASS NOTICE IS CONSISTENT WITH FIRST CIRCUIT STANDARDS AND PROVIDES ADEQUATE NOTICE TO CLASS MEMBERS FOR CLAIMS, OBJECTIONS AND OPT OUTS. ............ 20

IV.      THE PROPOSED CLASS REPRESENTATIVE PLAINTIFFS SHOULD BE PRELIMINARILY APPOINTED AS CLASS REPRESENTATIVES AND PLAINTIFFS' COUNSEL SHOULD BE PRELIMINARILY APPOINTED AS CLASS COUNSEL. ............................................................. 22

V.      A FINAL APPROVAL HEARING SHOULD BE SCHEDULED. ..................... 22

CONCLUSION ................................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Woodward*,
    521 U.S. 591 (1997) ................................................................................................. 19

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (2013) ............................................................................................. 18

*Andrews v. Bechtel Power Corp.*,
    780 F.2d 124 (1st Cir.1985) ..................................................................................... 17

*Bezdek v. Vibram USA Inc.*,
    79 F. Supp. 3d 324 (D. Mass.), aff'd, 809 F.3d 78 (1st Cir. 2015) ................................. 8, 9

*Brown v. Am. Honda (In re New Motor Vehicles Canadian Exp. Antitrust Litig.)*,
    522 F.3d 6 (1st Cir. Me. 2008) ............................................................................ 15, 18

*Bussie v. Allmerica Fin. Corp.*,
    50 F.Supp.2d 59 (D. Mass. 1999) .............................................................................. 8

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
    100 F.3d 1041 (1st Cir.1996) .................................................................................... 9

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir.1974) ...................................................................................... 9

*Elkins v. Equitable Life Ins. of Iowa*,
    No. Civ A96-296-Civ-T-17B, 1998 WL 1333741 (M.D. Fla. Jan 27, 1998) ................... 19

*In re Evergreen Ultra Short Opportunities Sec. Litig.*,
    275 F.R.D. 382 (D. Mass. 2011) .............................................................................. 17

*Gintis v. Bouchard Transp. Co.*,
    596 F.3d 64 (1st Cir. 2010) ..................................................................................... 19

*Gulbankian v. MW Mfrs., Inc.*,
    2014 WL 7384075 (D. Mass. 2014) ........................................................................... 9

*Hochstadt v. Bos. Sci. Corp.*,
    708 F. Supp. 2d 95 (D. Mass. 2010) ........................................................................ 18

*In re Initial Pub. Offering Sec. Litig.* ("*In re IPO*"),
    471 F.3d 24 (2d Cir. 2006) ...................................................................................... 17

*Lannan v. Levy & White*,
    186 F. Supp. 3d 77 (D. Mass. 2016) ................................................................ 15, 16, 19

*In re Lupron Mktg. and Sales Practices Litig.*,
    228 F.R.D. 75 (D. Mass. 2005) ................................................................................ 18

iv

*Moore v. Painewebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002) ................................................................................ 18

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .......................................................................................... 20

*Nat'l Ass'n of Chain Drug Stores v. New Engl. Carpenters Health Benefits Fund*,
   582 F.3d 30 (1st Cir. 2009) ................................................................................... 8

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
   602 F.Supp.2d 277 (D. Mass. 2009) ....................................................................... 8

*Payne v. Goodyear Tire & Rubber Co.*,
   216 F.R.D. 21 (D. Mass. 2003) ............................................................................ 15

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   588 F.3d 24 (1st Cir. 2009) ................................................................................... 8

*In re Relafen Antitrust Litig.*,
   231 F.R.D. 52 (D. Mass. 2005) ............................................................................ 18

*Reppert v. Marvin Lumber & Cedar Co.*,
   359 F.3d 53 (1st Cir. 2004) ............................................................................ 20, 21

*Rolland v. Cellucci*,
   191 F.R.D. 3 (D. Mass. 2000) ................................................................... 10, 11, 14

*Smilow v. Southwestern Bell Mobile Sys., Inc.*,
   323 F.3d 32 (1st Cir. 2003) ............................................................................ 17, 18

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir.2001) ................................................................................ 15

*Tardiff v. Knox Cty.*,
   365 F.3d 1 (1st Cir. 2004) ................................................................................... 19

*In re TelexFree Sec. Litig.*, __ F.Supp.3d __, No. 4:14-MD-2566-TSH, 2020 WL
   4340966
   (D. Mass. July 28, 2020) ............................................................................ 9, 20, 21

*In re Volkswagen & Audi Warranty Extension Litig.*,
   273 F.R.D. 349 (D. Mass. 2011) .......................................................................... 16

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ....................................................................................... 15

*In re Wireless Facilities*,
   253 F.R.D. 607 (S.D. Cal. 2008) ......................................................................... 14

**Statutes & Rules**

Class Action Fairness Act of 2005 ................................................................... 21, 22

Fed. R. Civ. P. 23 ............................................................................................................... *passim*

L.R. 5.4(C) ............................................................................................................................. 24

**Other Authorities**

4 Herbert B. Newberg, *Newberg on Class Actions*
    § 11.25, and § 13.64 (4th ed. 2002 and Supp. 2004) ....................................................... 9, 10

*Manual for Complex Litigation* (Fourth)
    (Fed. Judicial Center 2004) § 21.632 ............................................................................... 10

**INTRODUCTION**

Defendant DraftKings Inc. ("DraftKings") and the plaintiffs listed on Exhibit A to the

Settlement Agreement, acting individually and in their capacity as proposed class representatives

for the proposed Settlement Class ("Class Representative Plaintiffs") submit this memorandum

in support of the Joint Motion for Preliminary Approval of Proposed Settlement and Approval of

the Proposed Notice of Settlement.  The settlement is a result of a two-day mediation with

Thomas Maffei, Esq. of Sherin and Lodgen LLP in June and July of 2020, which followed

previously unsuccessful mediation efforts with the Honorable Layn R. Phillips in 2018 and 2019,

and numerous other settlement discussions between the parties during the years that this case has

been litigated.

The settlement provides significant injunctive relief by effectuating changes to

DraftKings' online platform and also provides valuable monetary relief, in the form of

"DK Dollars" or U.S. Dollars, to Settlement Class Members[1] who made a first-time deposit into

their DraftKings Daily Fantasy Sports account prior to January 1, 2018, and who are not net

lifetime winners on DraftKings.  The settlement requires that DraftKings send the Class Notice

to Settlement Class Members via email using the email address in DraftKings' records, and that

the Class Notice also be published on the Settlement Website.

While the Class Representative Plaintiffs are confident of a favorable determination on

the merits, they have determined that the settlement provides significant benefits to the

Settlement Class Members and is in the best interests of the Settlement Class.  The Class

Representative Plaintiffs also believe that the settlement is appropriate given the expense and

---

[1] Unless otherwise defined herein, capitalized terms used in this memorandum shall have the same meaning ascribed to them in the Settlement Agreement.

amount of time required to continue to pursue the litigation, as well as the uncertainty, risk, and difficulties of proof inherent in such claims.

Similarly, DraftKings believes that it has substantial and meritorious defenses to the claims in this Action, but has determined that it is desirable to settle the litigation on the terms set forth in the Settlement Agreement.

The parties believe that the settlement satisfies all criteria for preliminary approval and therefore jointly move this Court for an order preliminarily approving the settlement, provisionally certifying the Settlement Class pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) for settlement purposes, directing dissemination of the Class Notice, appointing Class Representatives and Class Counsel, and scheduling a Final Approval Hearing.

## STATEMENT OF FACTS

I. **PROCEDURAL HISTORY OF THE ACTION.**

On February 4, 2016, the Judicial Panel on Multidistrict Litigation ("JPML") created *In re Daily Fantasy Sports Litigation*, MDL 2677 (the "Action"), which consolidated a number of related cases separately filed against, among other Defendants, the nation's two largest operators of online daily fantasy sports ("DFS") contests—DraftKings Inc. ("DraftKings") and FanDuel, Inc ("FanDuel").  ECF No. 1.  The JPML transferred the related DFS cases to the District of Massachusetts and appointed the Honorable George A. O'Toole to oversee the Action.  *Id.*

On June 30, 2016, Plaintiffs filed a consolidated class action complaint (the "Complaint" or "Compl.") alleging that Defendants engaged in advertising campaigns that misrepresented the difficulty of DFS contests and the terms of certain promotional offers.  Compl. ¶ 1, ECF

No. 227.  Plaintiffs filed an amended master class action complaint on September 2, 2016 (the "Amended Complaint" or "FAC").  ECF No. 269.

Plaintiffs generally fall into three categories: (1) the "Player Plaintiffs," who assert claims against one or both Defendants with which they have accounts; (2) the "Crossover Plaintiffs," who have accounts with only one Defendant but assert a civil conspiracy claim against both Defendants, and (3) the "Family Member Plaintiffs," who assert claims against the Defendants under the loss recovery acts ("LRAs") of Georgia, Kentucky, Tennessee, New Mexico, and South Carolina.  In addition, Plaintiff Nelson C. Steiner ("Steiner") asserts claims against Defendants as a representative of the State of Florida.  Compl. ¶ 50.

Defendants moved to compel individual arbitration of all the above claims, other than those brought by Plaintiff Steiner, based on arbitration clauses in Defendants' respective Terms of Use.[2]  ECF Nos. 317, 318.  On November 27, 2019, this Court granted Defendants' motion to compel arbitration as to the Player Plaintiffs and the Crossover Plaintiffs but denied the motion as to the Family Member Plaintiffs.  ECF No. 406.  On March 9, 2020, Defendants moved to dismiss the Family Member Plaintiffs' LRA claims and Steiner's clams as a representative of the State of Florida.  ECF No. 417.  That motion remains pending.

## II.   SETTLEMENT OF THE ACTION.

### A.   Negotiations Producing Settlement.

Since Plaintiffs filed the Complaint, the parties have engaged in formal and informal settlement discussions in an effort to resolve the Action and avoid unnecessary expense, *see, e.g.,* ECF Nos. 365, 367.  Initial discussions, which began in early 2017, involved both DraftKings and FanDuel.  In June 2018, the parties participated in a mediation before the Honorable Layn R.

---

[2] FanDuel did not move to compel arbitration against three named plaintiffs who opted out of FanDuel's arbitration clause.  ECF No. 312.  The Court stayed briefing on those claims pending the result of arbitration filings on behalf of other Player Plaintiffs.

Phillips in which they made substantial progress toward a potential settlement agreement.  After continuing to engage in discussions over the course of several months, the parties exchanged settlement proposals in a formal process facilitated by Judge Phillips from September through November of 2019.

Following the Court's ruling on Defendants' motion to compel arbitration, Plaintiffs and DraftKings agreed to continue separate settlement discussions without FanDuel.  Following further discussions and exchange of information between counsel in early 2020, Plaintiffs and DraftKings participated in two subsequent mediation sessions lasting more than two full days with Thomas Maffei, Esq. of Sherin and Lodgen LLP in June and July 2020, during which the two sides reached an agreement to settle Plaintiffs' claims against DraftKings (the "Settlement Agreement").  (*See* Declaration of Thomas F. Maffei at ¶ 9, Affidavit of Christopher Weld, Jr. at ¶ 10, Affidavit of Hunter Shkolnik at ¶ 11, Affidavit of Jasper Ward at ¶ 9, and Affidavit of Melissa R. Emert at ¶ 9.)  The Settlement Agreement is the product of arm's-length negotiations between experienced and informed attorneys and is a strong result for the Settlement Class, assuring meaningful reimbursement and injunctive relief and avoiding significant uncertainties, risks (*e.g.*, appellate risks), and extended delays of continuing to litigate this Action.

> **B.** **The Material Terms Of The Proposed Settlement.**
>
> **1.** **Settlement Class.**

The Settlement Class is defined as "all Persons in the United States who made a first-time deposit into their DraftKings Daily Fantasy Sports account prior to January 1, 2018, and who are not net lifetime winners on DraftKings as determined by DraftKings' business records not later than 48 hours prior to the Agreement Execution Date."  Settlement Agreement, § 17.

2.      **Settlement Relief.**

a.      **Financial Benefits To Settlement Class Members.**

As part of the Settlement Agreement, DraftKings will create two (2) settlement funds. The first will consist of 7,280,000.00 "DK Dollars"[3] and will be subject to claims by Settlement Class Members who have an open account with DraftKings and who submit a complete, timely and duly executed Claim Form and Declaration.  The second fund will consist of $720,000.00 U.S. Dollars and will be subject to claims by Settlement Class Members whose account at DraftKings has been closed and who submit a complete, timely and duly executed Claim Form and Declaration.  Settlement Agreement, § IV.A. & B.  The settlement funds will be allocated to the Settlement Class Members according to eight levels which are based upon the amount of the first deposit made by the Settlement Class Member into their DraftKings DFS account.  *Id.*  In general, the maximum amount of settlement funds available to each Settlement Class Member will be equal to the highest amount of the first deposit in their applicable level multiplied by 1.75.  *Id.* at § IV.C.  For example, the maximum amount of settlement funds available to any Settlement Class Member in the highest level of initial deposits will be $1,050.00 or 1,050.00 DK Dollars, respectively.  *Id.*

b.      **Incentive Payment To The Proposed Class Representative Plaintiffs.[4]**

Subject to Court approval, DraftKings has agreed to pay the 35 proposed Class Representative Plaintiffs up to $1,250.00 each as incentive compensation for their efforts as

---

[3] DK Dollars are cash-equivalent site credits that authorized players can use for entry into any real money contest on DraftKings' DFS platform.  DK Dollars cannot be withdrawn, and can only be used to enter contests.  Payouts in contests are paid out in U.S. Dollars which may be used as cash.

[4] The proposed Class Representative Plaintiffs are  Thomas Berg, Tony Cantamaglia, Eric Champagne, Lamart Clay, Alan Cordover, Matt Deady, Michael Desabato, Jamie Facenda, Richard Famiglietti, Alicia Ferdula, Ryan Franco, James Gardner, Tom Guarino, Paul Guercio, Jimmy Grundy, Nate Jackson, Jeff Kaufman, Aissa Khirani, Ryan Leonard, Scott Levin, Roderick Lizardo, Jared Lokeitz, Samuel Lozada, Brian Martinelli, John McDaid, Karl

named plaintiffs and proposed Class Representative Plaintiffs in the Action.  Settlement

Agreement, § VI.B.

c.      **Injunctive Relief.**

For a period of two years, DraftKings will implement the following measures with

respect to the offering of DFS contests on DraftKings' platform:  (i) limit each authorized player

to one active and continuously used account; and prevent prohibited DraftKings Employees from

entering public daily fantasy sports contests for which an entry fee is required on DraftKings'

platform; (ii) enable authorized players to exclude themselves from contests and prevent such

players from entering a contest from which they have excluded themselves; (iii) enable

authorized players to:  (1) set limits on the amount of funds an authorized player can deposit;

(2) set limits on the number of entries an authorized player can enter each week and/or (3) set

limits on an authorized player's maximum entry fee per contest; (iv) provide a hyperlink on

DraftKings' daily fantasy sports platform to make information available to customers about

responsible play; (v) provide a hyperlink on DraftKings' daily fantasy sports platform to make

statistics available to consumers about the percentage of all authorized players who are net

winners, breakeven, and net losers over the previous 30 days (to be calculated as of the last

updated date); (vi) permit any authorized player to permanently close an account registered to

such player on DraftKings' platform at any time and for any reason; (vii) identify all highly

experienced players in any contest by a symbol attached to such players' usernames, or by other

easily visible means, on DraftKings' platform; (viii) disclose the number of entries a single

authorized player may submit to each contest; (ix) use a hyperlink on DraftKings' platform

directing users to information concerning assistance for compulsive players, including a toll-free

---

Medina, Michael Moton, Scott Murphy, Cooper Ogburn, Christine Parks, Jodi Siegel, Steven Siler, Peter
Triantafylidis, Scott Walters, David White.  *See* Settlement Agreement. Ex. A.

number directing callers to reputable resources containing further information; (x) ensure the value of any prizes and awards offered to authorized players are established and determinable prior to the start of the contest; (xi) ensure no winning outcome shall be based solely on the score, point spread, or performance of a single sports team; and (xii) ensure no winning outcome shall be based solely on any single performance of an individual athlete.  Settlement Agreement, § III.A.4.  In addition, DraftKings will use commercially reasonable efforts to:  (i) not permit the use of unauthorized scripts that give an authorized player an unfair advantage over another authorized player in a paid daily fantasy sports contest and shall use commercially reasonable efforts to monitor for and prevent the use of such scripts; and (ii) ensure that commercially reasonable measures are in place to deter, detect and, to the extent reasonably possible, prevent cheating, including collusion, and the use of automated means that:  (1) are not available to all players, and (2) provide a competitive advantage.  *Id*.

### 3. Released Claims.

Class Representative Plaintiffs and each Settlement Class Member[5] will release DraftKings[6] from, among other things described in the Settlement Agreement, all claims (i) that were or could have been asserted in the Action or (ii) in connection with, arising out of, or

---

[5] In addition, the Settlement Agreement defines "Releasing Person" to  mean, "the Class Representative Plaintiffs, each Settlement Class Member and his, her or their attorneys, agents, administrators, devisees, assignees, executors, successors, predecessors, or other representatives  Settlement Agreement, § 16.

[6] The Settlement Agreement will also release the following persons and entities only as to claims involving DraftKings:  the Payment Processor Defendants as defined in the Complaint:  Paysafecard.com USA Inc. and Vantiv, Inc.; the Non-Defendant Banks as defined in the Complaint:  JP Morgan Chases & Co. and Capital One Financial Corporation; the Non-Defendant Facilitators as defined in the Complaint:  Visa Inc., Mastercard Incorporated and American Express Credit Corporation; the Non-Defendant Enterprise DraftKings Investors as defined in the Complaint:  21st Century Fox; Atlas Ventures Associates III, Inc.; BDS Capital Management LLC; Mail.ru Group, formerly known as DST Global, also known as Digital Sky Technologies; Fox Sports Interactive Media LLC; GGV Capital; Jason Robins; Hub Angels Management LLC; Jordan Mendell; Kraft Group; Legends Hospitality LLC; MSG Sports & Entertainment, LLC; Major League Baseball Ventures; Major League Soccer LLC; M7 Tech Partners LLC; NHL Enterprises, Inc.; NHL Enterprises, L.P.; Redpoint Ventures LLC; The Raine Group LLC; and Wellington Management Company LLP.  *See* Settlement Agreement, § 15(b)-(e).

relating in any way to the facts and circumstances alleged in the Action.  *See* Settlement

Agreement, §§ 14, X.A-E.

<u>**ARGUMENT**</u>

I.      <u>**THE LEGAL STANDARDS FOR PRELIMINARY APPROVAL OF A CLASS**</u>
        <u>**ACTION SETTLEMENT ARE SATISFIED.**</u>

      A.      <u>**Legal Standards For Preliminary Approval Of A Class Action Settlement.**</u>

Court approval is required for settlement and dismissal of a class action.  Fed. R. Civ.

P. 23(e).  Prior to final approval, the Court must find that a settlement that will bind all class

members is "fair, reasonable, and adequate."  *Id.*  The First Circuit has not established a fixed

test for evaluating the fairness of a settlement.  *New England Carpenters Health Benefits Fund v.*

*First Databank, Inc.*, 602 F.Supp.2d 277, 280 (D. Mass. 2009).  "There is no single litmus test

for a settlement's approval; it is instead examined as a gestalt to determine its reasonableness in

light of the uncertainty of litigation."  *See Bussie v. Allmerica Fin. Corp.,* 50 F.Supp.2d 59, 72

(D. Mass. 1999).

There are numerous specific factors that courts may look to when evaluating whether a

settlement satisfies Rule 23(e).  Most of these factors are "intuitively obvious and dependent

largely on variables that are hard to quantify."  *Nat'l Ass'n of Chain Drug Stores v. New Engl.*

*Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009).  In the end, they all concern

the "question of the reasonableness of the settlement in light of the uncertainties of litigation."

*Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343 (D. Mass.), aff'd, 809 F.3d 78 (1st Cir.

2015).  The court "enjoys considerable range in approving or disapproving a class settlement,

given the generality of the standard and the need to balance [a settlement's] benefits and costs."

*In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 33 (1st Cir. 2009) (*quoting*

*Nat'l Ass'n of Chain Drug Stores*, 582 F.3d at 45.)

Consistent with Rule 23(e)(2), in determining the fairness of a settlement, the Court considers factors such as: (1) the Class Representative Plaintiffs and Class Counsel have adequately represented the Settlement Class; (2) the settlement was negotiated at arm's-length; (3) the relief provided for the Settlement Class is adequate, taking into account the costs, risks, and delay of trial and appeal; and (4) the settlement treats all Settlement Class Members equitably. *See In re TelexFree Sec. Litig.*, __ F.Supp.3d __, No. 4:14-MD-2566-TSH, 2020 WL 4340966, at *2 (D. Mass. July 28, 2020).

Courts in the First Circuit, including this district, have also relied on factors such as:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Bezdek*, 79 F. Supp. 3d at 343-344 (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.1974); *see also Gulbankian v. MW Mfrs., Inc.*, 2014 WL 7384075, at *2 (D. Mass. 2014).

At the preliminary approval stage, there is a "presumption in favor of settlement" "[w]hen sufficient discovery has been provided and the parties have bargained at arms-length." *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir.1996); *see also Bezdek*, 79 F. Supp. 3d at 343.  The purpose of the Court's preliminary evaluation of the settlement is to determine whether it is within the "range of reasonableness" and thus whether notice to the class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile.  *See* 4 Herbert B. Newberg, *Newberg on Class Actions* § 11.25 *et seq.*, and § 13.64 (4th ed. 2002 and Supp. 2004).  The Court need not undertake an in-depth consideration of the relevant factors for final approval.  Rather, the Court need only "make a

preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of the notice of the certification, proposed settlement, and date of the final fairness hearing." *Manual for Complex Litigation* (Fourth) (Fed. Judicial Center 2004) § 21.632. Preliminary approval should be granted if, as here, there are no "reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys." *Id.*, § 21.632, at 321 (4th ed. 2004).

Based on these standards, and for the reasons set forth below, the Court should preliminarily approve the proposed settlement as fair, reasonable and adequate.

### B.  The Settlement Here Is Fair, Reasonable And Adequate.

#### 1.  Plaintiffs And Class Counsel Have Adequately Represented The Class.

Plaintiffs are represented by counsel experienced in complex class action litigation. Class Counsel has extensive experience in class actions, including expertise in class actions relating to deceptive advertising and consumer protection. (*See* Declaration of Thomas F. Maffei at ¶ 5, Affidavit of Christopher Weld, Jr. at ¶ 13, Affidavit of Hunter Shkolnik at ¶ 2, Affidavit of Jasper Ward at ¶ 2, and Affidavit of Melissa R. Emert at ¶ 2) Class Counsel believes that under the circumstances, the proposed settlement is fair, reasonable and adequate and in the best interests of the class members. "When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight." *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000).

**2.      The Settlement Proposal Was Negotiated At Arm's Length.**

This settlement is the result of intensive arms-length negotiations spanning years of litigation, multiple rounds of settlement discussions, and two separate mediations with two different mediators.  *See, supra,* Section II.A.  The most recent mediation—with Thomas Maffei, Esq. of Sherin and Lodgen LLP in June and July 2020—lasted more than two full days and ultimately resulted in settlement of the Action.  *Id.*  The settlement discussions and mediations between the parties involved the exchange of settlement proposals and information that allowed the parties to intelligently evaluate their respective claims and defenses and come to a resolution that accounts for the risks and uncertainties of continued litigation.  *Id.*  The time and effort spent by the parties examining, investigating, and litigating the claims—and their ultimate agreement on a resolution through multiple mediations—weigh in favor of preliminary approval of the proposed settlement, as the process strongly indicates there was no collusion.

**3.      The Relief Provided For The Settlement Class Is Adequate, Taking Into Account Relevant Factors.**

**a.      The Settlement Relief Is Adequate.**

The proposed settlement provides significant benefits to the Settlement Class Members because it provides both important injunctive relief and valuable financial relief.

**i      Injunctive Relief.**

As part of the settlement, DraftKings has agreed to use commercially reasonable efforts to implement extensive injunctive relief over a two-year period.  *See, supra,* Section 2.B.2.c.  Among other things, the injunctive relief allows players on DraftKings' platform to exclude themselves from certain contests, set limits on the amount of funds deposited and the number of entries played each week, identify highly experienced players in any contest, and permanently close their account at any time for any reason.  *Id.*  The injunctive relief also includes efforts to promote responsible play on DraftKings' platform and provides information and assistance for

compulsive players.  *Id.*  The injunctive relief also targets unauthorized scripts on DraftKings'

platform that gives certain players unfair advantages over other players and promotes measures

to deter, detect and prevent cheating and other unfair play.  *Id.*  The injunctive provisions go to

the very heart of combating the allegedly deceptive and unfair practices which were the bases of

Plaintiffs' Complaint and provide the Settlement Class Members with substantial benefits.  *See*

FAC ¶¶ 531-642.

**ii      Financial Relief.**

In addition to the injunctive relief set forth above, DraftKings has agreed to create one

settlement fund consisting of 7,280,000 DK Dollars (for class members with open DraftKings

accounts) and a second settlement fund consisting of U.S. $720,000 (for class members with

closed DraftKings accounts) to be allocated to Settlement Class Members pursuant to a claims

procedure based upon the amount of their first deposit in their DraftKings' account.  *See, supra,*

Section II.b.2.a.  The financial relief provides significant and meaningful reimbursement to

Settlement Class Members.

**b.      The Complexity, Expense, And Duration Of the Litigation
            Favor Settlement.**

The claims at issue in this case have been litigated for years and, absent settlement, are

likely to continue for several more years.  DraftKings has successfully compelled some, but not

all, claims to be brought in individual arbitrations, while motions to dismiss other claims remain

pending.  *See, supra,* Section I.  The parties face years of potential further litigation and/or

arbitration of all the claims in this Action, as well as potential appeals, with both sides subject to

risk and exposure based on the uncertainty of pending and future rulings.  The complexity of the

case and the claims at issue, as well as the time and expense already incurred by the parties, in

addition to what will be incurred should the case not settle, weigh strongly in favor of preliminary approval of the proposed settlement.

> **c.      The Risks Of Establishing Liability And Damages Favor Settlement.**

This litigation has been contentious.  Plaintiffs claim that DraftKings' advertising misrepresented the fairness and ease of play and the likelihood of winning in violation of consumer protection statutes and under common law fraud, negligent misrepresentation and unjust enrichment theories, and that DraftKings induced consumers to lose money through a deceptive deposit bonus program.  FAC ¶¶ 533-659.  DraftKings denies any wrongdoing and claims that Plaintiffs' claims suffer from critical deficiencies and enormous litigation risk, including that Plaintiffs cannot prove that DraftKings made any actionable misstatements or that any advertisements could have actually induced Plaintiffs to compete and lose money in DraftKings' contests, which each class member would have to establish through individualized proof in order to recover damages.  Moreover, DraftKings has successfully moved to compel arbitration of the Player Plaintiffs and the Crossover Plaintiffs and has moved to dismiss the remaining claims, which motion remains pending.  *See, supra,* Section I.

Accordingly, while DraftKings faces the possibility of significant liability should Plaintiffs be able to maintain and establish their claims, Plaintiffs face procedural challenges and difficult issues of proof of liability and damages, as well as having to establish and maintain class certification status for any claims that survive.  While both sides strongly believe in the merits of their respective cases, the proposed settlement avoids substantial risks and costs, providing a positive outcome in the face of costly and uncertain litigation.

> **d.     The Proposed Attorneys' Fees Are Fair And Reasonable.**

The proposed settlement provides that DraftKings will not oppose an application by Class Counsel for a fee in the amount of $1,900,000, and for reimbursement of expenses in the amount of $100,000.  Settlement Agreement § VI.A.  Given the costs and expenses of litigating this action for five years, these fees and expenses are reasonable.  DraftKings has also agreed not to oppose an application by the Class Representative Plaintiffs for an incentive payment of up to $1,250.00 each.  *Id.* § VI.B.

> **4.     The Proposed Settlement Treats Class Members Equitably Relative To Each Other.**

The proposed settlement is fair to class members relative to each other because the allocation of settlement funds is directly tied to the amount of the Settlement Class Members' first deposit into their DraftKings' account and will be paid equally within each deposit level based on the number of Settlement Class Members who provide a complete, timely and duly executed Claim Form and Declaration in each level.  Settlement Agreement § IV.A. & B.  Moreover, while Settlement Class Members who still have an open account with DraftKings will receive DK Dollars that they can use on DraftKings' website, Settlement Class Members who do not have an open account may seek benefits in U.S. dollars, which are also allocated by first deposit amount and will be paid equally based on the number of Settlement Class Members who provide a complete, timely and duly executed Claim Form and Declaration.  *Id.*  The settlement treats Settlement Class Members fairly and equitably based on their deposit amount and account status.

II.     **THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS FOR PURPOSES OF SETTLEMENT.**

A.     **The Requirements Of Rule 23(a) Are Satisfied.**

Class certification for purposes of a class action settlement is proper where the requirements of Rule 23 are met.  *See In re Wireless Facilities*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes.").  Rule 23(a) of the Federal Rules of Civil Procedure requires Plaintiffs to show (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy).  Fed. R. Civ. P. 23(a)(1)-(4).  All of these elements are satisfied here.

1.     **The Class Is So Numerous That Joinder Of All Members Is Impracticable.**

Class certification is proper under Rule 23(a)(1) where a class contains so many members that joinder of all would be impracticable.  "As a general matter, 'if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.'"  *Lannan v. Levy & White*, 186 F. Supp. 3d 77, 85 (D. Mass. 2016) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir.2001).)  This case easily satisfies the numerosity requirement.  The Settlement Class includes "all Persons in the United States who made a first-time deposit into their DraftKings Daily Fantasy Sports account prior to January 1, 2018, and who are not net lifetime winners on DraftKings as determined by DraftKings' business records not later than 48 hours prior to the Agreement Execution Date."  Settlement Agreement, § 17.  DraftKings' records indicate that the Settlement Class includes approximately 3.15 million individuals.  *Id.*§ III.B.2-3.

2.      **There Are Questions Of Law And Fact Common To All Class Members.**

With respect to the commonality requirement of Rule 23(a)(2), numerous common issues and questions exist.  The commonality requirement has been aptly characterized as a "low bar" given "'permissive application.'"  *Brown v. Am. Honda (In re New Motor Vehicles Canadian Exp. Antitrust Litig.)*, 522 F.3d 6, 19 (1st Cir. Me. 2008).  It does not "require that class members' claims be identical."  *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003).  Commonality may be satisfied by the presence of only a single issue common to the class.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).  Class members must have "the same injury," and key elements of the cause of action should be the same for the entire class.  *Lannan*, 186 F. Supp. 3d at 86.

Here, the claims of all Settlement Class Members arise from the same factual allegations and involve the same legal theories, namely:  (1) that DraftKings' online contests constitute illegal gambling under applicable state and federal statutes; (2) that DraftKings promulgated false and misleading advertisements that emphasized the ease of play and likelihood of winning, in violation of consumer protection statutes and under common law fraud, negligent misrepresentation and unjust enrichment theories; (3) that DraftKings induced consumers to lose money through a deceptive bonus program; and (4) that DraftKings allowed its employee to participate in competitors' fantasy sports contests using non-public information that gave them an unfair advantage over other contestants.  *See* FAC ¶¶ 533-747.

Thus, questions of law that are common to all class members include, *inter alia,* whether DraftKings' online contests constituted illegal gambling and whether DraftKings' advertisements and other statements about their contests and their deposit bonus program were deceptive, untrue or misleading.  All Settlement Class Members participated in DraftKings' online contests,

deposited money into a DraftKings' account, and are not net lifetime winners on DraftKings. Settlement Agreement, § 17.  Under these circumstances, the commonality requirement is satisfied for purposes of certifying a settlement class because the key elements of the class members' claims are the same.  *Lannan*, 186 F. Supp. 3d at 86.

### 3.      Plaintiffs' Claims Are Typical Of Those Of The Class.

Rule 23(a)(3) requires that the claims and defenses of the class representatives be typical of the class, such that the interest of absent class members will be fairly and adequately protected.  *Lannan*, 186 F. Supp. 3d at 86; *see also In re Volkswagen & Audi Warranty Extension Litig.*, 273 F.R.D. 349, 352 (D. Mass. 2011) (named plaintiff's incentives must align with those of the class).  "The typicality requirement is fulfilled when the plaintiffs' claims arise from the same course of conduct and are based on the same legal theory as the class claims." *In re Evergreen Ultra Short Opportunities Sec. Litig.*, 275 F.R.D. 382, 389 (D. Mass. 2011). Here, Class Representative Plaintiffs' claims are typical because they arise from the same factual basis and are based on the same legal theories regarding DraftKings' alleged deceptive and/or misleading advertisements and the fairness and legality of DraftKings' online contests.  Thus, the typicality requirement is satisfied for purposes of certifying the Settlement Class.

### 4.      The Proposed Class Representative Plaintiffs Have And Will Continue To Fairly And Adequately Protect The Interests Of The Class.

"The moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir.1985).  Class Representative Plaintiffs' interests are co-extensive with the interests of the Class Members, and neither Class Representative Plaintiffs nor Class Counsel have a conflict of interest with other

Class Members.  Additionally, Class Counsel has extensive experience in the successful prosecution of class actions on behalf of consumers and is qualified to represent the interests of the class members. (*See* Declaration of Thomas F. Maffei at ¶ 5, Affidavit of Christopher Weld, Jr. at ¶ 13, Affidavit of Hunter Shkolnik at ¶ 2, Affidavit of Jasper Ward at ¶ 2, and Affidavit of Melissa R. Emert at ¶ 2). Class Representative Plaintiffs and Class Counsel have been prosecuting this Action vigorously on behalf of the Class Members for years.  Rule 23(a)(4) is therefore satisfied from purposes of certifying the Settlement Class.

**B.**      **The Requirements of Rule 23(b) Are Satisfied.**

To obtain class certification, in addition to establishing the four elements of Rule 23(a), plaintiff must also establish "one of several elements" of Rule 23(b).  *Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003); *In re Initial Pub. Offering Sec. Litig.* (*"In re IPO"*), 471 F.3d 24, 41 (2d Cir. 2006).  Under Rule 23(b)(3), the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members" (predominance) and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (superiority).  Fed. R. Civ. P. 23(b)(3).  *See also In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6 at 18.

**1.**      **Common Issues Predominate Because Legal And Factual Questions Involve Proof Common To Plaintiffs And Class Members.**

"The threshold of commonality is not a difficult one to meet," and is satisfied here.  *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 69 (D. Mass. 2005).  Plaintiffs' claims and those of other Settlement Class Members all arise from the same body of facts, as they all allege injury by a common course of conduct by DraftKings.  Rule 23(a) "does not require that every class member share every factual and legal predicate of the action."  *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 102 (D. Mass. 2010) (quoting *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D.

75, 88 (D. Mass. 2005)).  Common questions need only predominate; the existence of some

individualized questions does not defeat the predominance of common questions.  Fed. R. Civ. P.

23(b)(3); *Smilow*, 323 F.3d at 39.  The Court's inquiry under the predominance standard is not

whether Plaintiffs' case has merit but, rather, whether "the ***questions*** of law or fact common to

the class will 'predominate over any questions affecting only individual members' as the

litigation progresses." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195

2013) (emphasis in original); *see also Moore v. Painewebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir.

2002).

As set forth in Section II.A.2 above, common questions regarding legal and factual issues

predominate here.

## 2.       Class Treatment Is Superior To Individual Resolutions.

Class treatment for the claims at issue is superior to individual actions.  The question of

the superiority of bringing a class claim, while it must be separately considered, "is addressed by

many of the considerations that inform a trial court's judgment call about how clearly

predominant the common issues must be." *Gintis v. Bouchard Transp. Co.*, 596 F.3d 64, 67 (1st

Cir. 2010).  A class action is preferable to individual claims if it will "achieve economies of time,

effort, and expense," will result in a "uniform[] decision as to persons similarly situated," and

avoids procedural unfairness.  *Lannan*, 186 F. Supp. 3d at 90 (D. Mass. 2016).  Additionally,

courts may consider whether class claims are superior because a large portion of the individual

claims "would never be brought unless aggregated because provable actual damages are too

small." *Tardiff v. Knox Cty.*, 365 F.3d 1, 7 (1st Cir. 2004); *see also id.* (class actions enable

plaintiffs to "pool claims which would be uneconomical to litigate individually" and reduce the

per-person cost of litigation).  In deciding whether to certify a settlement class, a court "need not

inquire whether the case, if tried, would present intractable management problems." *Amchem*

*Prods. Inc. v. Woodward,* 521 U.S. 591, 620 (1997). "With settlement in hand, the desirability

of concentrating the litigation in one forum is obvious . . . ." *Elkins v. Equitable Life Ins. of*

*Iowa*, No. Civ A96-296-Civ-T-17B, 1998 WL 1333741, at \*20 (M.D. Fla. Jan 27, 1998).

Here, class treatment is clearly superior to individual lawsuits. Moreover, any Settlement

Class Member who wishes to pursue a separate action can opt out of the settlement.

## III.     THE PROPOSED CLASS NOTICE IS CONSISTENT WITH FIRST CIRCUIT STANDARDS AND PROVIDES ADEQUATE NOTICE TO CLASS MEMBERS FOR CLAIMS, OBJECTIONS AND OPT OUTS.

For classes certified under Rule 23(b)(3) based on common questions of law or fact, the

court must order "best notice that is practicable under the circumstances, including individual

notice to all members who can be identified through reasonable effort." Fed. R. Civ. P.

23(c)(2)(B). The notice must

> clearly and concisely state in plain, easily understood language:
> (i) the nature of the action; (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses; (iv) that a class member
> may enter an appearance through an attorney if the member so
> desires; (v) that the court will exclude from the class any member
> who requests exclusion; (vi) the time and manner for requesting
> exclusion; and (vii) the binding effect of a class judgment on
> members under Rule 23(c)(3).

*Id.*

Pursuant to Fed. R. Civ. P. 23(e)(1)(B), "[t]he court must direct notice in a reasonable

manner to all class members who would be bound by the proposal." The means of providing

notice need not guarantee that all class members receive actual notice, as long as it is

"reasonably calculated," under the circumstances, "to reach the absent class members" and give

them the opportunity to object. *Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56 (1st

Cir. 2004); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Notice may be provided by electronic means, including email, if appropriate. Fed. R. Civ. P.

23(c)(2)(B); *In re TelexFree Sec. Litig.*, 2020 WL 4340966, at *2 (D. Mass. July 28, 2020) (approving notice by direct email and publication to the settlement website).

Here, the Settlement Agreement provides for notice to class members in forms substantially identical as Exhibits C-1 and C-2 to the Settlement Agreement, to be sent out by DraftKings via email using the email address in DraftKings' records for each Settlement Class Member, no later than 30 days after preliminary approval of the settlement. Settlement Agreement, § V.A.1. The Settlement Agreement also provides for a Settlement Website which will provide access to all relevant settlement documents, including the Class Notice. *Id.*, § V.B.2. Under the Settlement Agreement, DraftKings shall pay all costs associated with preparing and disseminating the Class Notice and shall provide and bear the cost of notice to appropriate federal and state officials as required by the Class Action Fairness Act of 2005 ("CAFA"). *Id.,* § V.A.2-3.

Dissemination of the Class Notice via email and website publication is the best practicable notice under the circumstances given that DraftKings operates an online platform which required all Settlement Class Members to register via an email address, which in turn was the only way Settlement Class Members could participate in a DraftKings DFS contest. The email and website notifications are therefore "reasonably calculated" to reach Class Members and give them the opportunity to object. *Reppert,* 359 F.3d at 56; *In re TelexFree Sec. Litig.*, 2020 WL 4340966, at *2 (approving email and website notice). The Court should approve the form and method of the Class Notice as set forth in the Settlement Agreement. Settlement Agreement, § V.

**IV.**     **THE PROPOSED CLASS REPRESENTATIVE PLAINTIFFS SHOULD BE PRELIMINARILY APPOINTED AS CLASS REPRESENTATIVES AND PLAINTIFFS' COUNSEL SHOULD BE PRELIMINARILY APPOINTED AS CLASS COUNSEL.**

The parties jointly move for the appointment of the Class Representative Plaintiffs, listed on Exhibit A to the Settlement Agreement, to be preliminarily appointed as Class Representatives, and for the appointment of Plaintiffs' Counsel, listed on Exhibit B to the Settlement Agreement, to be preliminarily appointed as Class Counsel.  Class Representative Plaintiffs understand the obligations of serving as class representatives and have adequately represented the interests of the putative class and have retained experienced counsel.

**V.**     **A FINAL APPROVAL HEARING SHOULD BE SCHEDULED.**

The last step in the settlement approval process is the formal fairness or Final Approval Hearing, at which time the Court will hear all evidence and argument, for and against, the proposed settlement.  The parties request that the Court grant preliminary approval of the settlement and schedule a Final Approval Hearing to be held not before 90 days after the date of entry of the Preliminary Approval Order, in order to allow sufficient time for providing the Class Notice, CAFA Notice, and to allow sufficient time for the Settlement Class Members to submit exclusion requests and objections.

## CONCLUSION

For the foregoing reasons, Plaintiffs and DraftKings jointly and respectfully request that the Court enter an Order preliminarily approving the proposed settlement, certifying a class for settlement purposes, directing dissemination of the Class Notice, preliminarily appointing Class Representatives and Class Counsel, and scheduling a Final Approval Hearing.

DATED:  February ___, 2021                      Respectfully submitted,

By:   /s/ Christopher Weld, Jr.
         Christopher Weld, Jr.
         **TODD & WELD LLP**
         One Federal Street
         Boston, MA  02110
         Telephone:    (617) 720-2626
         Email: cweld@toddweld.com

         *Liaison Counsel and Executive Committee*
         *Member*

         Hunter J. Shkolnik
         Salvatore C. Badala
         **NAPOLI SHKOLNIK, PLLC**
         360 Lexington Avenue, 11th Floor
         New York, NY  10017
         Telephone:    (212) 397-1000
         Email: hunter@napolilaw.com
              Sbadala@napolilaw.com

         Jasper D. Ward, IV
         Alexander C. Davis
         **JONES WARD PLC**
         Taylor Building
         312 South Fourth Street, 6th Floor
         Louisville, KY  40202
         Telephone:    (502) 882-6000
         Email: jasper@jonesward.com
              alex@jonesward.com

         Melissa R. Emert
         **KANTROWITZ, GOLDHAMER**
         **& GRAIFMAN, P.C.**
         747 Chestnut Ridge Road, Suite 200
         Chestnut Ridge, NY 10977
         Telephone:    (845) 356-2570
         Email:       memert@kgglaw.com

         *Co-Lead Counsel*

DATED:  March 3, 2021                     Respectfully submitted,


By:   /s/ Damien Marshall
      Damien Marshall (*pro hac vice*)
      Leigh M. Nathanson (*pro hac vice*)
      **KING & SPALDING LLP**
      1185 Avenue of the Americas
      New York, NY 10036
      Telephone:      (212) 790-5357
      Email: dmarshall@kslaw.com
              lnathanson@kslaw.com

      *Attorneys for Defendant DraftKings Inc.*

**CERTIFICATE OF SERVICE**

I, Christopher Weld, Jr., hereby certify that on this 3rd day of March, 2021, this

document was electronically filed with the Clerk of the Court using the CM/ECF system and will

be sent electronically to the registered participants as identified on the Notice of Electronic Filing

(NEF), pursuant to Local Rule 5.4(C).

/s/ Christopher Weld, Jr.
Christopher Weld, Jr.