UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In re: DAILY FANTASY SPORTS
LITIGATION

This Document Relates to:

    All Cases

MDL No. 16-02677-GAO

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' COUNSEL'S FEE APPLICATION**

### I.    Introduction

Class Counsel[1] and counsel for Class Representative Plaintiffs submit this Memorandum in Support of their Motion For Approval of Counsel's Fee Application in connection with the settlement of the Class' claims against DraftKings ("DraftKings" or "Defendant") in this matter. After the parties had reached settlement on the claims of the Class, Class Counsel and DraftKings proceeded to mediate the issue of an agreed upon award of fees and expenses. After a contentious mediation, Class Counsel and DraftKings reached agreement on payment of the fee by DraftKings of $1,900,000 and payment of expenses by DraftKings totaling $100,000 subject to approval of the Court.

As fully documented in this Memorandum and the Joint Declaration of counsel submitted herewith ("Joint Decl."), the agreed upon fee and expense awards are fully justified and should be approved by this Court. Class Counsel's lodestar significantly exceeds the requested award of

---

[1] Capitalized terms are used based on the definitions contained in the Settlement Agreement attached to the Affidavit of Jasper Ward unless otherwise specifically defined (Document No. 437).

1

fees and Class Counsel have incurred expenses in this matter well beyond those that the parties have agreed DraftKings will pay, subject to the Court's approval.

Further, if the Court looks to a "percentage of the fund" analysis to validate the reasonableness of the requested fees, the requested fees total 20% of the available monetary benefits to the Settlement Class Members.  This percentage is below the "benchmark" of many courts of 25%, and well below the customary tort standard of 33%.

For the reasons set forth in detail herein, Class Counsel respectfully request that their fee application and request for reimbursement of expenses be approved.

II.   **The Fee Request Herein Is Fair and Reasonable, Given the Efforts of Counsel, the Successful Results, and the Lodestar Incurred**

A.  **Factors Considered by Courts in the First Circuit Confirm that the Requested Fee Is Fair and Reasonable**

While "[t]he First Circuit has not endorsed a specified set of factors to be used in determining whether a fee request is reasonable," *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 79 (D. Mass. 2005), courts in this Circuit consider several factors when considering an award of attorneys' fees, including:

> "(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any."

*Hill v. State Street Corp.*, No. 09-12146-GAO, 2015 WL 127728 (D. Mass. Jan. 8, 2015), at *17 (quoting *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 458 (D.P.R. 2011)); *Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at *8 (D.R.I. Feb. 17, 2016) (same). Courts also have considered whether lead plaintiffs support the requested fee and the reaction of the

class. *See Hill*, *supra*, at \*19-\*20; *In re TJX Cos. Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 401 (D. Mass. 2008) (considering "the reaction of the class members to the settlement and proposed attorneys' fees" as one of the relevant factors). As set forth below, these factors weigh strongly in favor of finding that the requested award of $1,900,000 for fees and $100,000 for expenses, is reasonable.

### 1. The Amount of the Recovery and the Number of Class Members Who Will Benefit from the Settlement Support the Requested Fee

Under the terms of the Settlement Agreement, the Settlement Class Members[2] will receive up to $8,000,000 in U.S. Dollars and DK Dollars.  Settlement Agreement at p. 10 attached to Affidavit of Jasper Ward (Document No. 437).  The class consists of 3,158,234 members, all of whom will obtain a financial benefit from the settlement if they choose to participate.  Settlement Agreement at p. 15.  Although payments to class members will depend on the number of participants in the settlement, based on traditional participation rates in consumer class action settlements of this type, it is projected that participants will receive at least half of their initial deposit and up to 1.75 times the upper end of the bracket in which their initial deposit, up to a cap of $1,050 per participant.

When requested fees and expenses are added to the fund available to Settlement Class Members, the total value of the settlement to be paid by DraftKings is $10,000,000. Accordingly, proposed fees and expenses are 20% of the total amount to be paid by DraftKings and are substantially less than the more traditional contingent fee standard of one third (33%) plus expenses.

---

[2] This term is defined at Paragraph 18 of the Settlement Agreement.

In addition, the injunctive relief achieved through the settlement provides a further significant benefit to the Settlement Class Members.  The injunctive relief is primarily intended to correct several of the inequities in the structure of the DraftKings contests and to provide avenues of help for those suffering from a gambling addiction arising out of participation in DraftKings contests.[3]  Settlement Agreement at p. 10-14.

### 2.    The Skill and Experience of Counsel Support the Requested Fee

The prosecution and management of a complex Multi-District Litigation ("MDL") class action requires unique legal skills and abilities.  The co-leads on behalf of the Plaintiffs are Hunter Shkolnik of Napoli Shkolnik PLLC, Jasper Ward of Jones Ward PLC and Melissa Emert of Kantrowitz, Goldhamer & Graifman, P.C., formerly of Stull, Stull & Brody.  Christopher Weld, Jr. of Todd & Weld LLP is Liaison Counsel and a member of the Executive Committee (collectively "Leadership Counsel").  As demonstrated by their experience as detailed in their prior affidavits (*see* Document Nos. 437, 439 440 and 441), these counsel have extensive litigation, MDL and class action experience.  The effort was further strongly supported by the Executive Committee ("EC"), many members of which took on significant assignments and added substantial value.  Leadership Counsel's and the EC's willingness and ability to undertake complex and difficult cases such as this and their commitment to this litigation added valuable leverage in the settlement negotiations. *See Hill*, 2015 WL 127728, at *17 (noting plaintiffs' counsel's "experience and expertise contributed to the achievement of the Settlement"); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 350 (D. Mass. 2015), *aff'd* 8098 F. 3d 78 (1st Cir. 2015)

---

[3] Class Representative Plaintiffs will also receive an Incentive Payment of $1,250 each. Settlement Agreement at p. 19.

(finding skill of lawyers "nationally known for and greatly experienced in representing plaintiffs" in class action lawsuits weighed in favor of fee award).

The quality of the work performed by class counsel in attaining the settlement should also be evaluated in light of the quality of the opposition. *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) ("Defendants' attorneys . . . consistently put plaintiffs' counsel through the paces. All counsel consistently demonstrated considerable skill and cooperation to bring this matter to an amicable conclusion."). Here, Defendant has been represented by highly experienced lawyers throughout the Litigation in Damien Marshall and Leigh Nathanson, currently at King & Spaulding LLP and formerly at Boies Schiller Flexner LLP and formerly David Boies of Boies Schiller Flexner LLP.

Accordingly, this factor further supports the requested award of attorneys' fees.

### 3. The Complexity and Duration of the Litigation Support the Requested Fee

As the Court is aware, this Litigation has been extremely hard fought over a six-year period. The most dominant and time-consuming component of litigating this matter was the focus on the Defendants' motions to dismiss to refer the Plaintiffs' claims to arbitration before the American Arbitration Association.[4] The stakes relating to those motions were very significant in that if DraftKings' terms and conditions were deemed enforceable by the Court, each Plaintiff would be relegated to an individual arbitration and the use of class vehicles or groups of arbitrations would be prohibited. A tremendous amount of effort was put into researching, briefing, and arguing those motions. Counsel engaged in exhaustive research and analysis of the law including an unusual number of United States Supreme Court cases that address nuanced elements of the issue of arbitrability and in what forum that issue is to be

---

[4] The efforts of counsel are detailed in the Joint Decl. at Paragraph 4.

decided.  Moreover, the several relevant decisions of Courts of Appeal are complex, somewhat conflicting, and difficult to reconcile.  During the time that the Court had these motions under advisement, several U.S. District Courts and Courts of Appeal issued additional opinions, many of which were relevant to the issue before this Court.  This required further briefing of supplemental authorities.  In addition to an exhaustive argument on the original motions, replete with detailed graphics and analysis of concepts such as click wrap, browse wrap and related electronic contracting methods, the Court held several status conferences concerning the evolution of the law with regard to electronic contracting, including a second argument on the motions themselves.  Counsel engaged in exhaustive preparation for these arguments that included not only Leadership Counsel but the EC in attempting to decipher this difficult area of the law.

In addition to the arbitrability issue, Leadership Counsel and the EC engaged in many litigation tasks, some of which were visible to the Court and some of which were not.  These tasks included, in summary fashion, the following:

- Development of a comprehensive Master Complaint.  This included extensive research concerning M.G.L. ch. 93A claims and related claims pursuant to New York law as well as complex class issues.  The Master Complaint had to merge several theories of liability including, but not limited to, illegality, misrepresentation, unfair competition, payment processor claims, and family member claims into one pleading which also involved the analysis of differing state laws that impacted not only the definition of illegal gambling, but also the availability of family member claims;

- Informal discovery with the Defendants concerning the number of class members, the participation patterns relating to class members, the amount of money deposited into the players' accounts and related documentation necessary to understand and create damage models;

- An initial attempt at mediation in New York City with the Honorable Layne Phillips (United States District Court – Ret.) including extensive exchange of documents to develop damage models and drafting and review of mediation statements;

- A second attempt at mediation with Judge Phillips;

- Briefing of the family member claims and issues in response to additional motions to dismiss by the Defendants including research in five states concerning statutory requirements;

- A third round of settlement negotiations leading to mediation beginning in the Winter of 2020 with meetings with DraftKings' counsel in New York City;

- Participating in a successful mediation beginning in the Spring of 2020, culminating in an agreement in principle during the Summer of 2020. The mediation before Thomas F. Maffei began with submission of mediation statements. Class Counsel also engaged in extensive development of a damage models that would provide an approach to settlement that would fairly compensate the Plaintiffs but have features that would make administration of the plan feasible;

- After the Plaintiffs and DraftKings had reached an agreement in principle, Class Counsel participated closely with counsel for DraftKings in creating appropriate settlement documents, affidavits of support and related documentation. Class

7

Counsel also worked with DraftKings to develop the parameters of the notice campaign as well as defining the mechanics of the settlement itself.

In sum, Class Counsels' effort in this case spanned over six years and included a significant expenditure of effort to navigate the complex issues raised by the various claims and differing state law.

Accordingly, the magnitude and complexity of this Litigation support the conclusion that the requested fee is fair and reasonable.

### 4. The Risk of Non-Payment Was Extremely High in This Case

In a case undertaken on a contingent fee basis, the risk of the litigation is a key factor in determining an appropriate fee award. *See Roberts v. TJX Cos., Inc.*, No. 13-cv-13142-ADB, 2016 WL 8677312, at *13 (D. Mass. Sept. 30, 2016) ("[M]ost importantly, Class Counsel took the case on a contingency fee basis, assuming significant risk in litigating the case."); *Hill*, 2015 WL 127728, at *18 ("consider[ing] . . . contingency risk in awarding attorneys' fees" when counsel "litigated the Action on a fully contingent basis and were exposed to the risk that they might obtain no compensation for their efforts on behalf of the class"). Where, as here, Class Counsel "undertook this action on a contingency basis and faced a significant risk of non-payment, this factor weighs more heavily in favor of rewarding litigation counsel." *CVS*, 2016 WL 632238 at *9.

Class Counsel understood that they were undertaking expensive and complex litigation with no guarantee of receiving compensation for the enormous investment in time and money that the case would require. Plaintiffs faced very significant challenges to establishing liability and damages. Thus, there was a significant risk that the case could be litigated for many years

8

but result in no recovery for the Class and no payment for its counsel. Specifically, Class

Counsel faced substantial risks and uncertainties in, among other things, proving class-wide

reliance on alleged misrepresentations. There was also a risk (which materialized) that

Defendant would succeed in compelling arbitration of the claims of over 3,000,000 Settlement

Class Members requiring each case to be arbitrated on an individualized basis. There were also

major challenges in proving that the Defendant's contests constituted illegal gambling,

particularly given the variation in the definition of illegal gambling from state to state. Finally,

throughout a significant part of this litigation, the Defendant was incurring very significant

annual losses with uncertain sources of future funding, making collection risk a serious concern

if the Plaintiffs prevailed.

**5. The Amount of Time Devoted to the Litigation by Class Counsel Supports the Requested Fee**

The extensive time and effort expended by the Leadership Counsel and the EC in

prosecuting the Litigation and achieving the settlement over the last nearly six years also

establish that the requested fee is justified and reasonable. *See Hill*, 2015 WL 127728, at *19.

The Joint Decl. details the substantial efforts of Class Counsel in prosecuting Class

Representative Plaintiffs' claims. Here, Class Counsel devoted 3,670.30 hours[5] post

appointment of the leadership team to the prosecution of this action against DraftKings resulting

in a lodestar of $2,727,533.45 (see Joint Decl. at 9). Out-of-pocket expenses for this matter total

$164,340.05. Joint Decl. at ¶15-17; Exhibit C. In the Fee Application, counsel are requesting

---

[5] As detailed in the Joint Declaration, hours and billing rates were collected from the Class Counsel. Insofar as the Litigation involved two primary defendants – DraftKings and FanDuel – most counsel recorded their time to one matter. Where DraftKings time was easily segregated, that has been done. As to the time recorded that applied to both Defendants, time has been allocated fifty percent (50%) to DraftKings in calculating the lodestar for the Fee Application. Joint Decl. at Paragraph 7.

fees totaling $1,900,000, or approximately 70% of the post-appointment lodestar. The substantial time and effort devoted to this case, and Class Counsel's efficient and effective management of the Litigation, were critical in obtaining the favorable result achieved by the Settlement which further confirms that the fee request here is reasonable.

In addition to the time summarized above, the Leadership Counsel and EC devoted 2,705.85 hours prior to the appointment of the leadership team investigating and filing the various complaints that preceded the MDL, participating in the MDL proceedings and working on the appointment of the leadership team. Joint Decl. at 9; Exhibit B. The pre-appointment lodestar is $1,752,711.83. *Id*.

### 6. Awards in Similar Cases Support the Requested Fee

The requested fee award is consistent with awards approved by courts in similar cases when measured by the percentage of the amount to be paid by the Defendant, which in this case is 20% ($2 million out of $10 million).[6] That is the appropriate way to measure the fee in comparison to percentages awarded in other cases. As the Supreme Court stated in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980), in upholding an award of attorneys' fees based on the total amount of the judgment, including unclaimed awards, class members' "right to share the harvest of the lawsuit upon proof of their identity, *whether or not they exercise it*, is a benefit in the fund created by the efforts of the class representatives and their counsel..." (emphasis added).[7]

---

[6] In addition, counsel's hourly rates, on which their lodestar is based, are consistent with those approved in similar cases. *See* Section III.2, *infra.*

[7] *Boeing* was distinguished in *Roberts v. TJX Companies, Inc.*, No. 13-CV-13142-ADB, 2016 WL 8677312, at *11 (D. Mass. Sept. 30, 2016), on two grounds. First, unlike *Roberts*, the judgement in *Boeing* "adjudicate[d] the rights of absent class members even if they choose not to make a claim on the common fund." This case is like *Boeing* in that regard. Unless they opt out,

Looked at this way, the percentage that counsel is requesting is at the lower end of what courts generally approve. McLaughlin on Class Actions states:

> Many courts have recognized 25% of a common fund recovery as a benchmark against which the reasonableness of a fee application may be measured regardless of the method employed. … Regardless of whether 25% is adopted as a formal benchmark, most courts have approved fee applications approximating that figure, but awards in the 20 to 30% range are not uncommon.

2 McLaughlin on Class Actions, Award of attorney's fees—Common fund and lodestar methods, § 6:24 (17th ed.).

According to Newberg on Class Actions, a study from 1993-2008 found the mean percentage award in common fund cases in the First Circuit to be 20%. 5 Newberg on Class Actions, Applying the percentage method—Reasonableness of percentage—Empirical data on percentages awarded, § 15:83 (5th ed.). However, two other studies, one from 2006-2007 and another from 2006-2011, found the mean award in the First Circuit to be 27% and 26.4% respectively (*id.*), so the percentages apparently increased in the early 2000s. In addition, the latter two studies found that, nationwide, the mean percentage awards in consumer cases were 23.5% and 28.7% respectively. *Id.* Judge Saris cited the 2006-6007 study, which also found the median award in the First Circuit to be 25%, in reducing a 33% request to 28%. *In re Neurontin Mktg. & Sales Pracs. Litig.*, 58 F. Supp. 3d 167, 172 (D. Mass. 2014).

Later cases in this District are consistent. In *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, (1st Cir. 2015), the First Circuit upheld a 25% award in a consumer case, commenting,

---

absent class members are bound by the judgment even if they do not make a claim. Second, the fee in *Boeing* was awarded after trial, not settlement. However, in determining whether the requested fee in this case is consistent with those in other cases, a comparison of this case to other settlements is appropriate. Indeed, *Roberts* itself approved a fee that was 33 1/3% of the total available to be claimed even though much less was actually claimed and that in addition was nearly twice counsel's lodestar.

11

"Applying the percentage of the fund method, the district court found that twenty-five percent of the fund is consistent with what other district courts found to be reasonable." *Id.* at 84. In *Bettencourt v. Jeanne D'Arc Credit Union*, No. 17-CV-12548-NMG, 2020 WL 3316223 (D. Mass. June 17, 2020), the court found that "[s]tandard awards in the First Circuit range from 20% at the low end to 33% at the high end.  More commonly, courts in this Circuit award fees between 25% (the benchmark) and 30%." *Id.*, 2020 WL 3316223, at *2; *see also Carlson v. Target Enter., Inc.*, 447 F. Supp. 3d 1, 5 (D. Mass. 2020) (reducing 33 1/3% request to 23%); *Bacchi v. Massachusetts Mut. Life Ins. Co.*, No. CV 12-11280-DJC, 2017 WL 5177610, at *3 (D. Mass. Nov. 8, 2017) (approving request of 25%); *Gordan v. Massachusetts Mut. Life Ins. Co.*, No. 13-CV-30184-MAP, 2016 WL 11272044, at *2 (D. Mass. Nov. 3, 2016) (approving request of one-third); *Courtney v. Avid Tech., Inc.*, No. 1:13-CV-10686-WGY, 2015 WL 2359270, at *1 (D. Mass. May 12, 2015) (approving a 30% request).

One decision in which a lower percentage was awarded is this Court's grant of 17% in *Hill*, 2015 WL 127728, at *2. However, that was the requested amount. Moreover, the settlement, which gave class members a total of $60 million, was very large. The Manual for Complex Litigation, states that "in 'mega-cases' in which large settlements or awards serve as the basis for calculating a percentage, courts have often found considerably lower percentages of recovery to be appropriate." Federal Judicial Center, The Manual for Complex Litigation, Fourth, § 14.121, at 194.

For these reasons, the request for an award amounting to 20% of the fund to be paid by DraftKings, is consistent with similar cases.

### 7.    Public Policy Considerations Support the Requested Fee

Public policy supports rewarding counsel for prosecuting consumer protection class actions, especially where, as here, "counsel's dogged efforts – undertaken on a wholly contingent basis – result in satisfactory resolution for the class." *CVS*, 2016 WL 632238 at *9 (quoting *In re Tyco Intern'l, Ltd.*, 535 F.Supp.2d 249, 270 (D.N.H. 2007)). Courts have repeatedly emphasized the importance of incentivizing lawyers to represent plaintiffs in consumer class actions on a contingent basis, particularly in cases of large numbers of claimants and small individual damage amounts. "It would hardly be an improvement to have in lieu of this single class action 17 million suits each seeking damages of $15 to $30… *The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or fanatic sues for $30.*" *Carnegie v. Household Intl, Inc.*, 376 F. 3d 656, 661(7th Cir. 2004), cited favorably in *Bais Yaakov of Spring Valley v. ACT, INC.*, 798 F. 3d 46, 48 (1st Cir. 2015). The purpose of class actions is not only to compensate victimized groups but also deter violations of the law. *Waithaka v. Amazon.com, Inc.*, 404 F. Supp. 3d 335, 346-7 (D. Mass. 2019), aff'd, 966 F. 3d 10 (1st Cir. 2020), *cert. denied*, No. 20-1077, 2021 WL 2519107 (U.S. June 21, 2021) (citations omitted).  Fair compensation to counsel willing to take on these high-risk cases on a contingent-fee basis is certainly an incentive to enforce this important public policy.

### 8.    The Reaction of the Class and Class Representatives Supports the Requested Fee

The reasonableness of the requested fee may be affected by the participation of Lead Plaintiffs and the reaction of the Class. *See, e.g.*, *Hill*, 2015 WL 127728, at *19 ("The endorsement of the Lead Plaintiffs and the favorable reaction of the class both support approval of the requested fees.").  Class notice has only recently been sent so the reaction of the Class is

13

not yet known.  However, thirty Class Representative Plaintiffs have executed the Settlement

Agreement thereby evidencing their agreement with the requested fees and expenses.

In sum, Class Counsel respectfully submit that the $2,000,000 for both attorneys' fee and

expenses, is justified and reasonable, and should be awarded.

### III.    The Lodestar Method Is the Presumptive Basis For Calculating the Attorneys Fee Request Herein

Since this case does not involve a defined fund as the amount of the total payment will

depend on the level of class member participation in light of the cap on individual claims, it is

appropriate to consider the lodestar approach to determining the reasonableness of the fee.  *See,*

*In re Volkswagen and Audi Warranty Extension Litig.*, 692 F.3d 4, 16-17 (1st Cir. 2012).  ("The

common fund method should apply only where attorneys seek compensation from a discernable

pot of money won by the plaintiffs."). In addition, as this case was proceeding on the basis of

state consumer protection laws, such as M.G.L. c. 93A and New York GBL §349, and such

statutes contain statutory fee-shifting provisions, the First Circuit in *In re Thirteen Appeals*

*Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F3d 295, 305 (1st Cir. 1995)

("*Thirteenth Appeals*"), has held:

> When statutory exceptions pertain, we have directed district courts, for the most part, to compute fees by using the time-and-rate-based lodestar method. [internal citations omitted]; *see also City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 2641, 120 L.Ed.2d 449 (1992) (acknowledging, in the statutory fee-shifting context, "a strong presumption that the lodestar represents the reasonable fee") (citation and internal quotation marks omitted).

As that passage indicates, the First Circuit recognizes the "lodestar" method for

calculating attorneys' fees.  *See Bezdek v. Vibran USA Inc.*, 79 F.Supp.3d at 350; *Thirteen*

*Appeals,* 56 F.3d at 306–07; *Garcia-Rubiera v. Fortuno*, 727 F.3d 102, 117 (1st Cir. 2013).

Under that method, the court "determine[s] the number of hours reasonably expended multiplied

by a reasonable hourly rate for attorneys of similar skill within that geographic area." *Relafen,* 231 F.R.D. at 77; *see Spooner v. EEN, Inc.,* 644 F.3d 62, 68 (1st Cir.2011). This calculation is further "subject to a multiplier or discount for special circumstances, plus reasonable disbursements .... " *In re Compact Disc Minimum Advertised Price Antitrust Litig.,* 216 F.R.D. 197, 215-16 (D. Me. 2003). Although the lodestar serves as a base figure, the court may modify it by subtracting hours that are excessive in light of the legal task, not recorded with sufficient specificity as to the tasks performed, or redundant to hours of another lawyer without justification for the need for duplicity. *See Walsh v. Boston Univ.,* 661 F.Supp.2d 91, 105–07 (D. Mass.2009). The lodestar calculation may be used alone or as a check on the appropriateness of a percentage-of-fund calculation. *Compact Disc,* 216 F.R.D. at 215–16; *see* Manual for Complex Litigation (Fourth) § 14.122.

1.    **The Hours Incurred Herein Are Reasonable Given The Depth and Intensity of the Litigation**

Here, the lodestar of Class Counsel post appointment of the leadership team is $2,727,533.45. See Joint Decl. at ¶9; Exhibit A. The work engaged in, as described *supra* and in the Joint Decl., involved six years of litigation of complex issues that required extensive briefing and interpretation of complex United States Supreme Court decisions and rapidly evolving decisions from District Courts and Courts of Appeals, as well as multiple mediations and development of complex damage models, support the conclusion that the hours incurred are reasonable. The fee to which Class Counsel agreed in this matter and which they seek herein is approximately 70% of the post-appointment lodestar. When the pre-appointment lodestar is included in the calculation, the requested fee is approximately 35% of the total lodestar, resulting in a multiplier of approximately .35.

15

2.  **The Hourly Rates Requested Are Reasonable And Consistent with Those Awarded in Other Matters**

The hourly rates herein are also reasonable and in line with those awarded to counsel with particular expertise in consumer class action litigation.   Here, counsel have litigated numerous MDL and class action cases to successful conclusion and generally have been awarded fees based on similar hourly rates.

The hourly rates billed by counsel as part of their lodestar, range from $350 for associates to $975 for senior attorneys/partners' time. For example, for Leadership Counsel, the hourly rates for them and their firms have either been adopted by other courts in the class action context, constitute usual and customary billing rates charged to and paid by clients, or are derived from court approval of awards for attorneys of comparable skill and experience in unrelated cases. For example, Kantrowitz partner, Melissa Emert's billing rate was accepted by the court in *In Re: Apple, Inc. Device Performance Litigation*, 5:18cv-02827 (M.D. Ca. 2018). Gary S. Graifman's billing rate is $895 per hour.   An hourly rate for Mr. Graifman of $850 per hour was approved in the Order granting Final Approval in *In re VW Timing Chain Litig.*, in 2018, in which Mr. Graifman was co-lead counsel.

Similarly, Ms. Emert's former colleague, Howard T. Longman's hourly rate is $895. Rates equal to or greater than these have been approved for Mr. Longman. See *In re Anthem, Inc. Data Breach Litig.* (N. D. Cal. Aug. 17, 2018, No. 15-MD-02617-LHK) 2018 WL 3960068 at *16.

Likewise, Jasper Ward's rate is $600.  His hourly rate was derived from the Laffey matrix which is used in the Washington, DC and Baltimore, MD areas to determine reasonable rates.  See http://www.laffeymatrix.com/history.html. .  Finally, Christopher Weld's hourly rate

16

is $675 per hour.  Mr. Weld devotes approximately 80% of his time to hourly, as opposed to contingent fee, cases.  This is a standard rate charged to clients and generally paid.

Attorneys Cornfeld and Flannery and their respective firms played significant roles in the Litigation as members of the EC.  Attorney Cornfeld had important roles in two recent class actions where the courts used his lodestar, which was based on the same hourly rate as in this case, $825, as a cross-check of his fee calculated as a percentage of the recovery.  See *Pizozzi v. Massage Envy Franchising, Inc.* No. 4:19-cv-807 CDP (E.D. Mo.), Judgment and Order of Final Approval of Class Action Settlement, Doc. # 53 (11/13/2020); *McAllister v. The St. Louis Rams, LLC*, No. 4:16-cv-00172-SNLJ (E.D. Mo.), Plaintiffs' Application for Attorneys' Fees and Incentive Awards and Memorandum in Support, Docs. # 45 and 46. Attorney Flannery's rate is $895 per hour.  In 2014, Attorney Flannery's then rate of $750 per hour was approved by this Court in *Gulbankian v. MW Manufacturers, Inc.*, 1:30-cv-10392 FEW (D. Mass.).  His partner, Charles LaDuca's rate of $850 was recently adopted by the court in *Gold v. Lumber Liquidators, Inc.*, Civil Action No. 14-cv-05373-RS (N.D. CA) (Order entered Oct. 22, 2020).

Federal and state courts, including those in the First Circuit, have approved hourly rates in this range for plaintiffs' law firms.  By way of example, this Court approved a fee award in a class action settlement in which the billing partners' rates were in the $995-1,000 per hour range and associates were in the $525-625 range.  *See, In re AVEO Pharmaceuticals, Inc. Sec. Litig.*, Civ. Action No. 1:13-cv-111576-DJC.

Accordingly, the rates requested herein by counsel are fair and reasonable and within the range of those typically awarded.  In addition, as noted previously, the lodestar here is reduced to a negative multiple of the fee requested pursuant to the Settlement Agreement.  Further, the

17

highest rate ($975) is reduced by 30% to $682.50 as are all other rates.  If one considers pre-appointment lodestar, rates are discounted by 65%.

A comparison of the percentage of fund calculation to the lodestar confirms that the fee is reasonable. The fees and expenses requested are 20% of the total recovery amount.  See Section II.A.1 infra.  This percentage compares very favorably to similar fee awards.  See Section II.A.6 infra.

**IV.     The Requested Award Is Presumptively Fair and  Reasonable Since It Will Not Diminish the Settlement Fund**

The Federal Rules of Civil Procedure expressly authorize that "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed.R.Civ.P. 23(h).  Federal courts at all levels encourage litigants to resolve fee issues by agreement whenever possible.  As the United States Supreme Court explains, "[a] request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee."  *Hensley v. Echerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1939 (1983); *see also Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees."); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees, ideally the parties will settle the amount of the fee between themselves.").  Accordingly, courts regularly approve agreed-upon attorneys' fees awards paid by the defendant, rather than the class members, especially where that amount does not decrease the benefit obtained for the class.

Because the amount for a fee and expense application by Class Counsel that Defendant agreed to in this case was negotiated by experienced counsel at arm's-length, judicial deference to the parties' fee agreement is warranted. *See In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *18 (D.N.J. Mar. 26, 2010) ("[W]ith regard to attorneys' fees[,] ... the presence of an arms' length negotiated agreement among the parties weighs strongly in favor of approval,' even if it is 'not binding on the court.'") (quoting *Weber v. Gov. Emples. Ins. Co.,* 2009 U.S. Dist. LEXIS 91322, *53 (D.N.J. Sep. 30, 2009)).[8] See Affidavit of Thomas Maffei (Document 438)

Additionally, as explained in *McBean v. The City of New York*, 233 F.R.D. 377 (S.D.N.Y. 2010), a court need not review an application for attorneys' fees with a heightened level of scrutiny where, as here, the parties have contracted for an award of fees that will not be paid from a common fund. "If money paid to the attorneys comes from a common fund, and is therefore money taken from the class," the court reasoned, "then the Court must carefully review the award to protect the interests of the absent class members." *Id*. at 392. "If, however, money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary

---

[8] *See also Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (giving "substantial weight to a negotiated fee amount"); *In re Apple Computer, Inc. Deriv. Litig.*, 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008) ("A court should refrain from substituting its own value for a properly bargained-for agreement."); *Cohn v. Nelson*, 375 F. Supp. 2d. 844, 861 (E.D. Mo. 2005) ("[W]here, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference."); *In re AXA Fin., Inc.*, 2002 WL 1283674, at *7 (Del. Ch. May 22, 2002) ("Where, as here, the fee is negotiated after the parties have reached an agreement in principle on settlement terms and is paid in addition to the benefit to be realized by the class, this court will also give weight to the agreement reached by the parties in relation to fees."); *In re First Capital Holdings Corp. Fin. Prod. Sec. Litig.*, 1992 WL 226321, at *4 (C.D. Cal. June 10, 1992) (stating that the court should be reluctant to disturb agreed-upon attorneys' fees where class counsel negotiated the fee with sophisticated defense counsel who were familiar with the case, risks, amount and value of class counsel's time, and nature of the result obtained for the class).

role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members." *Id*. The *McBean* court concluded that the parties' agreement for attorneys' fees was objectively reasonable because it was the product of arm's-length negotiations. *Id*. In short, Class Counsel's requested award of $1.9 Million in connection with conferring a substantial benefit on the Class is presumptively reasonable where that award will not diminish the settlement fund.

### V.   The Expenses Incurred Are Reasonable and Were Necessary to Achieve the Benefit Obtained

Class Counsel and Defendant have agreed that subject to court approval, Defendant will pay Class Counsel $100,000 on account of expenses funded by Class Counsel. To date, Leadership Counsel have received from Class Counsel summaries of expenses expended in this matter totaling $104,678.05.[9]   Joint Decl. at ¶16; Exhibit C.   In addition, in 2016, the co-lead firms each deposited $25,000 into a common fund held as an escrow account by Todd & Weld LLP. After accounting for earned interest and disbursements, the current balance is $15,573.33. The fund was used to pay expert and mediator fees. The total amount paid from the fund for these expenses is $59,662.  Joint Decl. at ¶15.  Accordingly, the total amount paid by Class Counsel for expenses in this matter is $164,340.05 ($59,662 plus $104,340.05).  Joint Decl. at ¶17.

The non-fund expenses are of the type typically billed by attorneys to paying clients in the marketplace and include such costs as filing fees, copying fees, computerized research, travel in connection with this litigation, and discovery expenses. Joint Decl. at ¶17.  All of the expenses

---

[9] Not all class Counsel have responded.  Accordingly, Leadership Counsel anticipate that this total will increase.

were reasonable and necessary for the successful prosecution of this case. Further, Class Counsel will incur additional expenses on this case going forward, including working with Claims Administrator, communicating with Settlement Class Members, and attending the Final Approval Hearing. Accordingly, Class Counsel requests that the Court approve the parties' agreed upon amount for expenses.

## VI.    Conclusion

For the reasons set forth herein and in the Joint Decl., the Court should approve the request for an award of attorneys' fees and expenses of $2,000,000.

Dated: July 29, 2021                    Respectfully submitted,


/s/ Christopher Weld, Jr.
Christopher Weld, Jr. (BBO#522230)
**TODD & WELD LLP**
One Federal Street, 27th Floor
Boston, MA 02110
Telephone: (617) 720-2626
Facsimile: (617) 227-5777
Email: cweld@toddweld.com

*Liaison Counsel and Executive Committee Member*

Jasper D. Ward
**JONES WARD PLC**
1205 W. Washington Street, Suite 111
Louisville, KY  40206
Telephone: (502) 882-6000
Email:     jasper@jonesward.com

Melissa R. Emer
**KANTROWITZ, GOLDHAMER**
   **& GRAIFMAN, P.C.**
747 Chestnut Ridge Road, Suite 200
Chestnut Ridge, NY  10977
Telephone: (845) 356-2570
Email:     memert@kgglaw.com

21

Hunter Jay Shkolnik
**NAPOLI SHKOLNIK PLLC**
301 Avenue of the Americas
New York, NY  10019
Telephone: (212) 397-1000
Email:     hunter@napolilaw.com

*Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I, Christopher Weld, Jr., hereby certify that on this 29th day of July, this document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), pursuant to Local Rule 5.4(C).

/s/ Christopher Weld, Jr.